## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**C.H.** and **R.H.** o/b/o **P.H.**,

      Plaintiffs/Appellants/Petitioners,

v.

**EAST LANSING PUBLIC SCHOOLS**
and **INGHAM INTERMEDIATE
SCHOOL DISTRICT**,

      Defendants/Appellees/Respondents.

Case No. 1:25-cv-680

Hon.

_____

Elizabeth K. Abdnour (P78203)
Megan N. Mitchell (P87312)
Jacquelyn Kmetz (P83575)
ABDNOUR WEIKER LLP
325 E. Grand River Ave. Ste. 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
megan@education-rights.com
jacquelyn@education-rights.com

_____

### APPEAL AS OF RIGHT OF THE MARCH 24, 2025 FINAL ORDER IN THE SPECIAL EDUCATION DUE PROCESS HEARING AGAINST DEFENDANTS EAST LANSING PUBLIC SCHOOLS AND INGHAM INTERMEDIATE SCHOOL DISTRICT

      Plaintiffs/Appellants C.H. and R.H. o/b/o P.H., by and through their attorneys, ABDNOUR WEIKER LLP, hereby appeal the final administrative decision issued after a hearing on the due process complaint they filed against Defendants East Lansing Public Schools and Ingham Intermediate School District under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*

## PARTIES

1.      Plaintiffs C.H. and R.H. are the parents and legal guardians of P.H.

2.      P.H. is an eight year old student with qualifying disabilities under the IDEA and is therefore entitled to receive special education and related services under the IDEA.

3.      At all relevant times, Plaintiffs and P.H. were residents of the City of East Lansing, County of  Ingham, State of Michigan, and P.H. was a student in ELPS and Ingham ISD.

4.      Defendant East Lansing Public Schools (ELPS) was at all relevant times and continues to be a local educational agency in Ingham County, Michigan, subject to the provisions of the IDEA, and responsible for providing a free appropriate public education (FAPE) to P.H. under the IDEA.

5.      Defendant Ingham Intermediate School District (ISD) was at all relevant times and continues to be a local educational agency in Ingham County, Michigan, subject to the provisions of the IDEA,[1] and responsible for providing a FAPE to P.H. under the IDEA.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiffs' IDEA claims under 20 U.S.C. § 1415(i)(2)(A) and (3)(A) and 34 C.F.R. § 300.516 without regard to the amount in dispute.

7.      Plaintiffs have exhausted all administrative remedies required by 20 U.S.C. § 1415(l).

8.      There remains no other forum in which Plaintiffs' claims can be vindicated.

---

[1] "Local Education Agency (LEA): The IDEA definition of LEA includes ESAs. Therefore, in Michigan, an intermediate school district (ISD), regional education service agency (RESA), or educational service agency (ESA) are considered an LEA."  MICH. DEP'T OF ED. OFFICE OF SPECIAL ED., IDEA EQUITABLE SERVICES AT A GLANCE 1 n.1 (Oct. 2023), https://www.michigan.gov/mde/-/media/Project/Websites/mde/specialeducation/funding/IDEA/IDEA-EquitableServices-At-a-Glance.pdf.

9.      This Court has the authority to grant declaratory and injunctive relief and to compel or set aside agency action to address duties arising under the Constitution, laws, or treaties of the United States. 42 U.S.C. § 1983, 28 U.S.C. § 2201 and 5 U.S.C. §§ 702, 704, and 706.

10.     Pursuant to 28 U.S.C. § 1391(b), venue lies in the Western District of Michigan as the events giving rise to this action occurred in and around East Lansing, Michigan.

11.     This Appeal is being filed within 90 days of the date of the decision of the due process hearing officer as required by 20 U.S.C. § 1415(i)(2)(B).

## LEGAL FRAMEWORK

### *The Individuals with Disabilities in Education Act ("IDEA")*

12.     The IDEA requires that qualifying students with disabilities receive a FAPE. 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a).

13.     To achieve this goal, the IDEA requires that local educational agencies (LEAs) design and develop an individualized education program (IEP) for each qualifying child with a disability. 20 U.S.C. §§ 1412(a)(4), 1414(d); 34 C.F.R. §§ 300.112, 300.320-24.

14.     According to the IDEA and its implementing regulations, LEAs include:

> [A] public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

20 U.S.C. § 1401(19)(A); 34 C.F.R. § 303.23(a).

15.     Under the IDEA each state must "ensure" that it provides "special education" and "related services" to all children with disabilities within a specified age range residing in the state. 20 U.S.C. §§ 1401(9), 1412(a)(1). "Special education" means specifically designed instruction that

3

meets the unique needs of a child with a disability. 20 U.S.C. § 1401(29).  "Related services" mean

the supportive services "required to assist a child with a disability to benefit from special

education." 20 U.S.C. § 1401(26). LEAs must ensure that "a reevaluation of each child with a

disability is conducted . . . if the local educational agency determines that the educational or related

service needs, including improved academic achievement and functional performance, of the child

warrant a reevaluation."  20 U.S.C. § 1414(a)(2)(A)(i); 34 C.F.R. § 300.303(a)(1).

16.    In conducting an evaluation, the IDEA and its implementing regulations require

LEAs to:

> use a variety of assessment tools and strategies to gather relevant
> functional, developmental, and academic information, including
> information provided by the parent, that may assist in determining .
> . . the content of a child's [IEP], including information related to
> enabling the child to be involved in and progress in the general
> education curriculum.

20 U.S.C. § 1412(b)(2)(A)(ii); 34 C.F.R. § 300.303(b)(2).

17.    LEAs must provide special education and related services to each eligible student

with a disability by implementing an IEP, an individually tailored statement that is developed,

reviewed, and revised by an IEP "team." 20 U.S.C. § 1414(d).

18.    LEAs also must "ensure that the IEP Team . . . revises the IEP as appropriate to

address any lack of expected progress toward the annual goals and in the general education

curriculum . . . ; the results of any reevaluation conducted . . . ; the child's anticipated needs; or

other matters."  20 U.S.C. § 1414(d)(4)(A)(ii); 34 C.F.R. § 300.324(b)(1)(ii).

19.    To achieve the goal of providing a FAPE to all children with qualifying disabilities,

LEAs must design and develop an IEP for each qualifying child. 20 U.S.C. §§ 1412(a)(4), 1414(d);

34 C.F.R. §§ 300.112, 300.320-24.

4

20.      In *Endrew F. v. Douglas County School District Re-1*, 137 S. Ct. 988, 999 (2017), the Supreme Court of the United States defined a FAPE as an offer of education "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." The Court further clarified that, in designing an IEP, "every child should have the chance to meet challenging objectives," and the IEP team must give "careful consideration to the child's present levels of achievement, disability, and potential for growth." *Id.* at 1000.

21.      FAPE, as defined under 20 U.S.C. § 1401(9), requires special education and related services to be "provided in conformity with" a student's IEP.

22.      When a parent believes an LEA is not providing their child with a FAPE, they can seek redress by filing a due process complaint, which entitles them to an impartial due process hearing.  20 U.S.C. § 1415.

23.      Any party unsatisfied with the outcome of a due process hearing may appeal the decision to federal district court.  20 U.S.C. § 1415(i)(2)(A).

24.      IDEA due process hearing decisions are reviewed under the modified *de novo* standard. *Doe By and Through Doe v. Board of Educ. of Tullahoma City Schs.*, 9 F.3d 455, 458 (6th Cir. 1993). Courts should also give "due weight" to the state administrative proceedings in reaching a decision. *Id.*

## **FACTUAL ALLEGATIONS**

25.      Plaintiffs incorporate their Amended Due Process Complaint and Request for Due Process Hearing (ADPC) filed with the Michigan Office of Administrative Hearings and Rules (MOAHR) on January 10, 2025 by reference.[2]

26.      At all relevant times, ELPS was P.H.'s district of residence and was an LEA.

---

[2] Exhibit 1.

27.     Ingham ISD is an intermediate school district and LEA which serves students and educators in schools throughout Ingham County, including ELPS.

28.     Ingham ISD "serves as a shared community resource that creates networks of support and enhances educational opportunities for all learners in [their] service area."[3]

29.     At all relevant times, ELPS and Ingham ISD were responsible for providing P.H. with a FAPE and the procedural protections required by the IDEA and the Michigan Administrative Rules for Special Education (MARSE).

**The Hearing Officer Improperly Dismissed Ingham ISD as a Respondent in the Due Process Proceeding**

30.     Plaintiffs filed a Due Process Complaint (DPC) against ELPS, Ingham ISD, and Haslett Public Schools[4] on December 2, 2024.

31.     On December 13, 2024, Ingham ISD filed a Motion to Dismiss the DPC.

32.     Ingham ISD's Motion to Dismiss argued that it was not responsible for the identification, placement, or provision of FAPE to P.H. because it was not a LEA.

33.     In support of its Motion, Ingham ISD attached five opinions issued by MOAHR administrative law judges (ALJs) serving as special education due process Hearing Officers, all of which wrongly concluded that ISDs are not LEAs and therefore are not responsible for providing FAPE to students on IEPs.[5]

---

[3] INGHAM INTERMEDIATE SCHOOL DISTRICT: A REGIONAL EDUCATIONAL SERVICE AGENCY, https://www.inghamisd.org/.
[4] Haslett Public Schools was dismissed from the due process proceeding, and Plaintiffs are not appealing its dismissal.
[5] *K.B. & R.B. o/b/o A.B. v. Ontonagon Area Sch. Dist. et al.*, Docket No. 19-003559, Case No. 19-0010 (Jul. 26, 2019); *R.W. o/b/o T.G. v. Ingham ISD et al.*, Docket No. 19-013686, Case No. 19-00042 (Sep. 19, 2019); *D.L. v. Kalamazoo Pub. Sch., et al.*, Docket No. 21-027515, Case No. 21-0038 (Dec. 20, 2021); *H.B. o/b/o K.B. v. Kalamazoo Pub. Sch., et al.*, Docket No. 22-004118, Case No. 22-0012 (Mar. 16, 2022); and *N.F. o/b/o K.S.F. v. Kalamazoo Pub. Sch., et al.*, Docket No. 22-004868, Case No. 22-0017 (Apr. 15, 2022).

34.     On January 30, 2025, the Hearing Officer issued an order ("the January 30 order") improperly dismissing Ingham ISD based on the incorrect legal arguments and wrongly decided prior caselaw cited by Ingham ISD in its Motion to Dismiss. Plaintiffs incorporate the January 30 order by reference.[6]

35.     The January 30 order wrongly held that the responsibility of providing a FAPE resides solely with local school districts.

36.     The January 30 order also erroneously found that an ISD may only be responsible for the provision of a FAPE if it has taken on direct responsibility for the education of a disabled student, such as in a self-contained classroom run by the ISD.

37.     In fact, Michigan law contemplates a shared responsibility between local school districts and ISDs.

38.     M.C.L. 380.1751(1) requires that Michigan school districts "provide special education programs and services designed to meet the individual needs of each student with a disability in its district…for whom an appropriate educational or training program can be provided in accordance with the intermediate school district special education plan."

39.     Under M.C.L. 380.1711, ISDs are responsible for developing, establishing, and continually evaluating and modifying a plan for the delivery of special education services for all students under the age of 26 who are residents of constituent districts and of the special education programs and services in which each student participates.

40.     M.C.L. 380.1711 does not limit an ISD's obligation only to those students that are currently enrolled in one of the ISD programs or classrooms and instead places the responsibility on the ISD for all students for which it is required to maintain records as defined above.

---

[6] Exhibit 2.

41.    Michigan courts have agreed that an ISD's obligation extends to all special education students, not just those in ISD programs. In *Bay City Education Association v. Bay City Public Schools*, the Michigan Supreme Court held:

> In spite of whether the ISD or the local district provides the program or service, however, neither party may completely terminate its statutory obligation to these special education students. The Legislature crafted a statutory scheme that contemplates cooperative decision making and shared responsibility for providing programs and services designed to develop the maximum potential and address the special needs of each handicapped child in this state.

430 Mich. 370, 378-79 (1988).

42.    Earlier this year, in  *L.G. v. Kelloggsville Public Schools, et al.*, this Court denied an ISD's motion to dismiss based on its argument that it was not an LEA. No. 1:24-cv-833 (W.D. Mich. Jan. 25, 2025).

**The Hearing Officer's Improperly Modified and Limited the DPC**

43.    The IDEA specifies what must be included in a due process complaint:

> (I)the name of the child, the address of the residence of the child (or available contact information in the case of a homeless child), and the name of the school the child is attending;

> (II)in the case of a homeless child or youth (within the meaning of section 11434a(2) of title 42), available contact information for the child and the name of the school the child is attending;

> (III)a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem; and

> (IV)a proposed resolution of the problem to the extent known and available to the party at the time.

20 U.S.C. § 1415(b)(7)(A)(ii).

44.    The DPC complied with these requirements.

45.    Pursuant to the IDEA, "The due process complaint notice required under subsection (b)(7)(A) shall be deemed to be sufficient unless the party receiving the notice notifies the hearing officer and the other party in writing that the receiving party believes the notice has not met the requirements of subsection (b)(7)(A)." 20 U.S.C. § 1415(c)(2)(A).  Such notice must occur within fifteen days of service of the complaint. 20 U.S.C. § 1415(c)(2)(C).

46.    Plaintiffs properly served the Respondents with the DPC.

47.    None of the Respondents notified either Plaintiffs or the Hearing Officer that they believed the DPC did not meet the requirements of the IDEA.

48.    On  December 10, 2024, the Hearing Officer held a prehearing conference.

49.    At the prehearing conference, the Hearing Officer instructed Plaintiffs to "identify the issues for hearing."

50.    Plaintiffs were confused, as the DPC identified the following issues for hearing:

a.  Failing to develop an IEP reasonably calculated to allow P.H. to make appropriate progress in light of his unique circumstances in his May 2022, September 2023 and March 2024 IEPs;

b.  Failing to request parent consent for and conduct comprehensive reevaluations, including a functional behavior assessment, to address P.H.'s lack of progress toward his IEP goals and in the general education curriculum, new information provided by C.H., P.H.'s anticipated academic and behavior needs, and P.H.'s ongoing behavior issues resulting in formal or informal removals from the classroom;

c.  Failing to seek C.H.'s consent to conduct a Functional Behavioral Assessment (FBA) within 10 school days of making the request;

d.   Failing to implement positive behavior interventions and supports to support P.H.'s behavioral needs;

e.   Failing to educate P.H. in the least restrictive environment;

f.   Isolating P.H. from his peers;

g.   Failing to review and revise P.H.'s IEP to address his poor academic performance, ongoing and increasing behavior issues, and lack of progress toward his IEP goals and the general education curriculum; and

h.   Failing to consistently provide P.H. with services to allow him to make progress toward his IEP goals and the general education curriculum for all removals after 10 removals within a school year.

51.   The Hearing Officer stated that he was entitled to "modify and clarify" the issues pursuant to Mich. Admin. Code R. 792.11802.

52.   Plaintiffs' counsel reviewed Mich. Admin. Code R. 792.11802 during the prehearing conference and told the Hearing Officer she could find no such language in the statute.

53.   Nevertheless, over Plaintiffs' objection, the Hearing Officer issued an order ("the December 10 order") limiting the issues for hearing as follows:

4. Under Michigan Administrative Hearing [sic] Rule 792.11802, the issues for hearing must be identified and clarified. During the prehearing conference, the following issues were identified:

a. Did the Respondents fail to provide the supports listed in the Student's IEPs?

b. Did the Respondents fail to educate the Student in the LRE?

c. Did the Respondents inappropriately use seclusion and

restraint?

d. Did the Respondent ISD fail to provide appropriate

training and supervision to the LEA Respondents?[7]

54.     The Order included the following footnote: "Petitioner objected to narrowing the

issues beyond whether the Student was provided with a FAPE. That objection is overruled."[8]

55.     Upon receipt of the order, counsel for Plaintiffs contacted the Tribunal, copying

counsel for all Respondents, and renewed her objection to his improper limitation of the issues for

hearing.

56.     Counsel for Plaintiffs wrote:

> Thank you for sending this order. We reviewed [Mich. Admin. Code
> R.] 792.11802, which does not include any language about
> clarifying the issues. [Mich. Admin. Code R.] 792.11802(b) reads,
> in relevant part, "The administrative law judge may require the
> participants in the prehearing conference to do any of the following:
> (i) Identify and simplify the issues." Petitioners renew their
> objection as there does not appear to be any statutory or other legal
> basis for the Tribunal to clarify the issues.
>
> Notwithstanding that objection, Petitioners provide the following
> edits to the Tribunal's summary of the issues:
>
> a.  Did the Respondents fail to provide FAPE to the Student by
>     failing to provide the supports listed in the Student's IEPs?
> b.  Did the Respondents fail provide FAPE to the Student by failing
>     to educate the Student in the LRE?
> c.  Did the Respondents fail to provide FAPE to the Student by
>     inappropriately using seclusion and restraint?
> d.  Did the Respondent ISD fail to provide FAPE to the student by
>     failing to provide appropriate training and supervision to the
>     District Respondents?
>
> It is Petitioners' position that the District Respondents should not be
> identified as the LEA respondents because MDE considers ISDs to

---

[7] Ex. 2 at 2.

[8] *Id.*

be LEAs and has been providing training to ISDs for several years that they are LEAs. Petitioner's position is therefore that all three respondents are LEAs.

57.    The Hearing Officer did not respond to this message.

58.    The Hearing Officer failed to modify the December 10 order.

59.    The December 10 order also required Plaintiffs to file an Amended Due Process Complaint by January 10, 2025.[9]

60.    As a result, Plaintiffs decided not to continue pursuing the matter of the issues for hearing, as they knew they would be filing an amended complaint and could restate the issues there.

61.    Plaintiffs filed their Amended Due Process (ADPC) against ELPS and Ingham ISD on January 10, 2025.[10]

62.    In the ADPC, Plaintiffs identified the following issues for hearing, to comply with the Hearing Officer's directive that issues be "clarified":

a.    Failing to reevaluate P.H. when his educational or related service needs, including the need for increased emotional, behavioral, and academic supports, warranted a reevaluation, thereby denying him FAPE;

b.    Failing to offer and/or provide P.H. an appropriate IEP (including, but not limited to, an appropriate program, placement, services, and accommodations in the least restrictive environment), by failing to develop an IEP reasonably calculated to provide P.H. FAPE; failing to review and revise P.H.'s IEP when his educational or related service needs warranted a revision; and failing to implement P.H.'s IEP as written, thereby denying him FAPE;

[9] *Id*.
[10] *See* Ex. 1.

    c.   Failing to educate P.H. in the least restrictive environment, thereby denying him FAPE.[11]

63.    Neither ELPS nor Ingham ISD notified either Plaintiffs or the Hearing Officer that they believed the ADPC did not meet the requirements of the IDEA.

64.    The ADPC was the operative complaint as of the date of filing, January 10, 2025.

65.    For reasons unknown to Plaintiffs, the Hearing Officer did not convene another prehearing conference after the ADPC was filed.

**The Hearing Officer Failed to Consider the Amended Due Process Complaint**

66.    The due process hearing took place February 10 to 14, 2025.

67.    During the hearing, it became clear that the Hearing Officer was not properly considering the issues in the ADPC.

68.    Pursuant to the IDEA, "The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7), unless the other party agrees otherwise."  20 U.S.C. § 1415(f)(2)(B).

69.    However, even though Plaintiffs had identified a new set of issues in the ADPC, at the due process hearing, the Hearing Officer stated:

> The petitioner parents and student in this case bear the burden of proof to show by a preponderance of the evidence that the respondent school district failed to provide a free appropriate publication -- public education in one or more of the ways alleged in their due process complaint and narrowed any issues to be decided in the hearing in the order following prehearing conference. Let's see, ours was on December 10, 2024, at least that's when I issued the order. That was when our prehearing conference was.
>
> And our issues were narrowed to: Did the respondent, in this case singular, failed to provide the supports listed in the student's IEP. Did -- and IEPs, I -- this was corrected when there were multiple respondents at the -- at the time. So I'm not -- I'm not sure if there's

---

[11] *Id.* at 36-37.

one IEP at issue or if there are multiple IEPs, but, regardless, the issue is: Did the respondents fail to provide the supports listed in the student's IEP or IEPs, singular or plural; did the respondents -- did the respondent fail to educate the student in the least restrictive environment; and, finally, did the respondent inappropriately use seclusion and restraint? Those are our three issues to be decided in our hearing today.

70.     Plaintiffs were confused and taken utterly off guard, as this was the first time they or their counsel heard that the Hearing Officer had intended via the December 10 order to "narrow" the issues, which is not provided for anywhere in the IDEA; further, they were stunned that he did not seem to realize that they had filed an amended complaint.

71.     Nonetheless, they had to proceed with the hearing.

72.     The hearing took almost five full days, and both Plaintiffs and ELPS presented numerous witnesses and significant evidence.

73.     Both parties submitted lengthy post-hearing briefs.

74.     Plaintiffs incorporate their post-hearing brief filed March 10, 2025 by reference.[12]

75.     On March 24, 2025, the Hearing Officer issued a final decision and order ("the March 24 order") finding that ELPS had not violated the IDEA, incorporated by reference.[13]

76.     The March 24 order did not analyze the issues identified in the ADPC, which was the operative complaint.

77.     The March 24 order analyzed the "clarified" and "narrowed" issues identified in the December 10 order.

78.     There is no provision anywhere in the IDEA allowing for a Hearing Officer to unilaterally modify or ignore the content of a parent's due process complaint.

---

[12] Exhibit 3.
[13] Exhibit 4.

79.     The only process for modification of a due process complaint identified in the IDEA is the notice provision in which a party may notify the hearing officer and the other party in writing that the receiving party believes the due process complaint is insufficient under the requirements of the IDEA, pursuant to 20 U.S.C. § 1415(c)(2)(A).

80.     In the March 24 order, the Hearing Officer addressed the Plaintiffs' renewed objection to the narrowing of the issues for the due process hearing. He wrote:

> Petitioner's closing brief lists four alleged violations of FAPE by Respondent: the three issues listed for hearing and additionally that Respondent "failed to reevaluate [Student] when his needs warranted a re-evaluation." Petitioner never requested to add that issue to the hearing – it first became apparent that it was an issue during the hearing when Petitioner's Expert 1 alleged that Respondent failed to reevaluate Student and was first articulated as an issue in Petitioner's post-hearing brief. Petitioner's Closing Brief Argument Section additionally lists "failing to offer and/or provide [Student] an appropriate IEP", another issue that Petitioner failed to identify until that closing brief.
>
> Petitioner never explains why they were unable to articulate this hearing issue at either the prehearing conference, at the time of their amended complaint, or even when they filed their witness and exhibit lists and copies of their exhibits. Petitioner's Exhibit 59, their expert's February 4, 2024 report, includes this alleged failure to evaluate. Petitioner's argument that they are entitled to bring up any issue they desire, in contravention to the listed issues outlined at the prehearing conference is rejected as incorrect. Contrary to Petitioner's argument, 34 CFR 500.11(d)[14] does not stand for this proposition; that regulation provides that a party may not raise issues at hearing that are not included in their complaint, not that Petitioner may raise any issue at hearing that was included in their due process complaint, regardless of whether it was identified as a hearing issue at the prehearing conference. Petitioner was welcome to list these issues at the prehearing conference (or alternatively request to add them later in the hearing process) but failed to do so. Petitioner's failure to identify these issues prior to the hearing has the potential to deprive the Respondent of the opportunity to properly defend the allegations against them. It is not too onerous a burden on Petitioner to articulate their proposed issues prior to the hearing. Petitioner's failure to identify and propose additional issues beyond those

---

[14] No such statute or regulation exists.

15

articulated at the prehearing conference constitutes a waiver of those
additional issues at hearing.[15]

81.     Plaintiffs were shocked at this language, as it made clear that the Hearing Officer
never reviewed the ADPC.

82.     It was not true that Plaintiffs never requested to add the failure to evaluate issue to
the hearing and that it was first articulated in their post-hearing brief—they had included that issue
in the ADPC filed on January 10, 2025.[16]

83.     It was not true that Plaintiffs failed to identify the issue of ELPS failing to offer
and/or provide P.H. an appropriate IEP—they had included that issue in the ADPC filed on January
10, 2025.[17]

84.     It was not true that Plaintiffs were unable to articulate that hearing issue at the
prehearing conference, at the time of their amended complaint, or even when they filed their
witness and exhibit lists and copies of their exhibits—they had included that issue the ADPC filed
on January 10, 2025.[18]

85.     It was not true that Plaintiffs failed to identify these issues prior to the hearing—
they had included the issues the ADPC filed on January 10, 2025.[19]

86.     It was not true that there was any possibility of a potential to deprive ELPS of the
opportunity to properly defend the allegations against them—they had included the issues in the
ADPC filed on January 10, 2025,[20] and served on ELPS that same day.

---

[15] Ex. 4 at 15.
[16] Ex. 1 at 36.
[17] *Id*. at 36-37.
[18] *Id*.
[19] *Id*.
[20] *Id*.

87.    Plaintiffs agree that was not too onerous a burden on them to articulate their proposed issues prior to the hearing—they had included the issues the ADPC filed on January 10, 2025.[21]

88.    Plaintiffs did not fail to identify and propose additional issues beyond those articulated at the prehearing conference and did not waive those additional issues at hearing—they included the issues the ADPC filed on January 10, 2025.[22]

89.    It was not true that Plaintiffs were arguing that they were entitled to "bring up any issue they desire[d]"—their post-hearing brief argued only the issues included in the ADPC filed on January 10, 2025.

90.    The Hearing Officer's assertion that "34 CFR 500.11(d)[23]…provides that a party may not raise issues at hearing that are not included in their complaint, not that Petitioner may raise any issue at hearing that was included in their due process complaint, regardless of whether it was identified as a hearing issue at the prehearing conference" is utterly unsupported by the text of the IDEA—there is no reference whatsoever to a requirement of identifying hearing issues at a prehearing conference anywhere in the IDEA, and Plaintiffs are unable to find any statute identified as 34 C.F.R. § 500.11(d) in the IDEA, its implementing regulations, or anywhere else in the Code of Federal Regulations.[24]

91.    The Hearing Officer's assertion that "Petitioner was welcome to list these issues at the prehearing conference (or alternatively request to add them later in the hearing process) but failed to do so" is utterly illogical—where would a petitioner in a due process proceeding list their

---

[21] *Id.*
[22] *Id.*
[23] Again, no such statute exists.
[24] The IDEA is codified at 20 U.S.C. Chapter 33 and its implementing regulations are codified at 34 C.F.R. Part 300. The Code of Federal Regulations does not include any text at 34 C.F.R. Part 500; it simply notes the following: "Chapter V—Office of Bilingual Education and Minority Languages Affairs, Department of Education [Reserved]."

17

issues other than the due process complaint? And wouldn't listing them elsewhere violate the elusive 34 C.F.R. § 500.11(d), which "provides that a party may not raise issues at hearing that are not included in their complaint"?

**The Hearing Officer Incorrectly Applied the Law**

92.    The provision of a FAPE was first addressed by the U.S. Supreme Court in 1982, where the Court reviewed *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176 (1982), and set forth how FAPE is determined by the courts, in what has been termed the "Rowley standard:" 1) Was a student's IEP developed in adequate compliance with IDEA procedures?; and 2) is the IEP reasonably calculated to enable the student to receive some educational benefit?

93.    In March 2017, the Supreme Court issued its decision in *Endrew F. v. Douglas County School District*, 137 S. Ct. 988 (U.S. 2017).

94.    In *Endrew F.*, the Court discussed its prior decision in *Rowley* but pointed out that the *Rowley* case expressly declined to adopt a test for determining the substantive adequacy of the educational benefits provided in an IEP. *Id*. at 993.

95.    *Endrew F.* created such a test. The Court held that a student's IEP must aim to enable that student to make progress. *Id*. at 994. Further, the Court emphasized the unique needs of each child and stated that "the progress contemplated by the IEP must be appropriate in light of the child's circumstances…." *Id*. at 999. Further, "[t]he adequacy of a given IEP turns on the unique circumstances of the child for whom it is created," *id*. at 1001, and "every child should have the chance to meet challenging objectives," regardless of the severity of a child's disability. *Id*. at 1000.

96.    The Court held that to meet its substantive obligation under the IDEA, an LEA must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the

child's circumstances. *Id*. at 1001. In clarifying the standard, the Court rejected the "merely more than *de minimis*" standard applied by the Tenth Circuit. *Id*. at 999. In determining the scope of FAPE, the Court reinforced the requirement that "every child should have the chance to meet challenging objectives." *Id*. at 1000.

97.     The Hearing Officer's decision turned Supreme Court precedent on its head, relying heavily on *Rowley* and giving *Endrew F.* nothing more than a passing sentence.

98.     He wrote:

> In *Board of Education of Hendrick Hudson Central School District v Rowley*, 458 US 176 (1982), the U.S. Supreme Court articulated the two bases for assessing the provision of FAPE. The first was whether the school district had complied with the procedural requirements of the Act, and the second was whether the student's Individualized Educational Program (IEP) was "reasonably calculated" to enable the student to receive educational benefits. Id. at 206-07. In assessing whether a student's IEP was reasonably calculated to enable the student to receive educational benefits under *Rowley*'s second basis above, the Sixth Circuit Court of Appeals noted that nothing in *Rowley* precludes the setting of a higher standard than the provision of "some" or "any" educational benefit and held that the IDEA requires an IEP to confer a "meaningful educational benefit gauged in relation to the potential of the child at issue." *Deal v Hamilton County Bd of Ed,* 392 F3d 840, 862 (CA 6, 2004).[25]

99.     He then inserted a mere one-line reference to *Endrew F.*—the only reference to *Endrew F.* in the entire 66-page order:

> In *Endrew F. v Douglas County Sch. Dist. RE-1*, 580 U.S. 386; 137 S Ct 988, 999 (2017), the US Supreme Court expanded its explanation of FAPE in *Rowley* and stated that to provide a FAPE, the IDEA requires an educational program "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Id.[26]

100.    The order goes on:

---
[25] Ex. 4 at 4.
[26] *Id.*

> In determining whether the District provided and will continue to provide a free appropriate public education in the least restrictive environment for the student in this case, it must be decided whether the IEP is reasonably calculated to enable the student to receive a meaningful educational benefit gauged in relation to the student's potential. *Rowley*, 458 US at 206-07; *Deal*, 392 F3d at 862.[27]

101.    In *Endrew F.*, the Supreme Court held that if advancement from grade to grade is "not a reasonable prospect for a child, his IEP need not aim for grade-level advancement. But this educational program must be appropriately ambitious in light of his circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom." 137 S. Ct. at 1000. "A reviewing court may fairly expect [school] authorities to be able to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances." *Id.* at 1002.

102.    While the *Rowley* Court refused to adopt a test to determine the adequacy of educational benefits provided in an IEP, the *Endrew F.* Court did.

103.    By focusing on meaningful advancement for students on IEPs, *Endrew F.* overturned and strengthened the standard from the bare bones *de minimis* standard utilized in *Rowley*.

104.    The *Endrew F.* test – whether P.H.'s IEP was reasonably calculated to enable him to make progress appropriate in light of his circumstances – should have been applied.

105.    It is clear from the March 24 order that the Hearing Officer should have applied *Endrew F.* when considering whether ELPS provided P.H. with FAPE. Instead, the Hearing Officer improperly applied the *Rowley* standard.[28]

---

[27] *Id.*
[28] *Id.*

**The Hearing Officer Failed to Apply the Preponderance of the Evidence Standard**

106.    Under the IDEA, hearing officers must decide whether a student received FAPE by a preponderance of the evidence. 34 C.F.R. § 300.516(c)(3).

107.    The March 24 order disregarded much of the ample evidence in the record demonstrating Defendants' denial of a FAPE to P.H.

108.    A preponderance of the hearing evidence demonstrated that ELPS failed to reevaluate P.H. when his behaviors warranted it, failed to properly implement his IEP, and failed to educate him in the least restrictive environment, all of which denied him FAPE.

109.    Plaintiffs provided an expert witness at the hearing, Dr. Cheryl Light Shriner,[29] who testified at length to the ways in which ELPS failed to provide P.H. with FAPE.

110.    ELPS provided no expert witness of their own to challenge Dr. Light Shriner's expert opinions at the due process hearing.

111.    Despite this, the Hearing Officer largely ignored Dr. Light Shriner's testimony – another indication that his decision was not based on a preponderance of the evidence.

**The Hearing Officer Failed to Properly Consider P.H.'s Behaviors Warranting Reevaluation**

112.    Pursuant to the IDEA, a public agency must ensure that a reevaluation of each child with a disability is conducted if the public agency determines that the educational or related services needs, including improved academic achievement and functional performance, of the child warrant a reevaluation.  34 C.F.R. § 300.303(a)(1).

---

[29] Dr. Light Shriner, a Professor of Special Education and Goldstick Scholar at the University of Illinois Urbana-Champaign, has a Ph.D. in Educational Psychology with a Concentration in Special Education/Severe Disabilities. She is also a Board-Certified Behavior Analyst-Doctoral Level (BCBA-D), reflecting substantial training in applied behavior analysis. Dr. Light Shriner has been teaching special education since 1994 and has been training and supervising graduate students, student teachers, and practicum students in special education since 1997. Dr. Light Shriner has published and presented extensively in the areas of special education, behavioral interventions and analysis, and ABA therapy.

113.    Significant facts established in the record show that P.H. struggled with behavioral issues throughout his time at ELPS, including school refusal, elopement, meltdowns and tantrums, hitting, kicking, spitting and property destruction between November 2023 and March 2024.

114.    Plaintiffs' expert witness Dr. Cheryl Light Shriner testified that ELPS should have reevaluated P.H. by conducting an FBA at the very latest in January 2024 when the escalation in behavior occurred.

115.    Instead, ELPS never even suggested an FBA.

116.    Rather, ELPS finally granted C.H.'s repeated requests for an FBA in March 2024 following two extreme instances of elopement from school.

117.    In his decision, the Hearing Officer wrote that he found Dr. Light Shriner "mostly credible," but completely disregarded her testimony.[30]

118.    Confusingly, after finding Dr. Light Shriner "mostly credible," the Hearing Officer wrote, "Her misunderstanding of what constitutes seclusion affected her credibility particularly on the issue of whether Respondent inappropriately used seclusion, but also on other issues as well."

119.    It is unclear how the Hearing Officer could have both found that Dr. Light Shriner was "mostly credible" and that her asserted "misunderstanding of what constitutes seclusion affected her credibility…on other issues as well."[31]

120.    The decision does not state which "other issues" her "mostly credible" credibility was affected.

121.    And the following sentence simply makes no sense: "Petitioner's Expert 1's belief that school districts must be held to the (rightfully) very high standards of using seclusion when

---

[30] Ex. 4 at 17.
[31] *Id.*

they are not actually engaging in seclusion is a significant misunderstanding of special education

standards of practice, her qualified area of expertise."[32]

122.    If the Hearing Officer found that Dr. Light Shriner believed that school districts

must be held to rightfully very high standards of using seclusion, it is not logical that the rightfully

very high standards to which she found they must be held also indicated a "significant

misunderstanding of special education standards of practice."

123.    And all this contradicted Dr. Light Shriner's actual hearing testimony, during which

she clarified, in response to the Hearing Officer's own questions, that she did not consider a change

of placement to constitute seclusion.

124.    The Hearing Officer asked: "the student was one-on-one with a special ed teacher

or one of therapists or a parapro[fessional] for -- particularly starting in January. And are you

acquainting [sic] that time to seclusion?"

125.    Dr. Light Shriner responded, "Not necessarily. If they're working one-on-one with

somebody and -- on educational activities, that is not seclusion."

126.    The Hearing Officer then said, in direct contradiction to his findings on Dr. Light

Shriner's credibility, "All right. I'm following. Thank you. And that's my understanding. And I

think maybe just there was a disconnect and I was misunderstanding or -- but I'm understanding

your opinion better now."

127.    Therefore, the Hearing Officer's finding as to Dr. Light Shriner's credibility was

not based in a preponderance of the evidence.

128.    ELPS did not present any expert witnesses at the hearing, so there was no expert

testimony contradicting Dr. Light Shriner's opinions and conclusions.

---

[32] *Id.*

129.    For these reasons, the Hearing Officer's determination that Defendants did not deny P.H. a FAPE was contrary to the preponderance of the evidence.

**Failure to Properly Consider Defendants' Failure to Implement P.H.'s IEP**

130.    The IEP "embodies a binding commitment and provides notice to both parties as to what services will be provided to the student during the period covered by the IEP." *MC by and through MN v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1197 (9th Cir. 2017).

131.    "A material failure occurs when there is more than a minor discrepancy between the services provided to a disabled child and those required by the IEP." *Van Duyn* ex *rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F3.d 811, 811 (9th Cir. 2007).

132.    Defendants failed to implement P.H.'s IEP in numerous ways, including but not limited to the following:

    a.    The speech language pathologist assigned to provide services to P.H., Stephanie Francisco, failed to provide any documentation of what occurred in any session with him throughout the 2023-2024 school year – sessions that were supposed to occur for 25 minutes 4-5 times per month in accordance with P.H.'s IEP.

    b.    Francisco testified that she failed to maintain data sheets, log notes, or other documentation to track P.H.'s progress on his speech goals.

    c.    Mid-hearing, ELPS provided a log that consisted of one page with dates listed, but no substantive notes regarding what occurred at sessions. This provided evidence that Defendants failed to appropriately track P.H.'s participation in speech language services nor did they appropriately track his progress toward his speech language goals.

d.  During her testimony, Ingham ISD ASD Teacher Consultant Kelsey Kujawa testified that she kept log notes of her consultations with P.H.'s special education teacher Kristen Casby beyond the one-page log that had been provided to Plaintiffs discovery.

e.  Kujawa said she would have logged any concerns raised to her by P.H.'s teachers in her notes but that no concerns were raised about P.H. in November or December 2023.

f.  Mid-hearing, ELPS turned over five handwritten notes from Kujawa, each less than a paragraph.

g.  The logs demonstrate that Defendants did not provide ASD teacher consultant services 1-2 times a month for 20 minutes as required in P.H.'s IEP.

h.  Ingham ISD's occupational therapist Stacy Turke was assigned to provide services to P.H. at ELPS in accordance with his IEP for 25 minutes at least 3 times per month.

i.  Turke testified that she kept consistent logs when she met with P.H. and the logs she provided in discovery constituted the full documentation of P.H.'s OT services during the 2023-2024 school year.

j.  However, there are no logs at all for OT services in November 2023, indicating that Defendants failed to provide P.H. with any occupational therapy during the entire month of November 2023, in violation of his IEP.

k.  P.H.'s IEP included a self-regulation goal, yet Defendants failed to document any behavior or information relating to his self-regulation goal, providing no evidence that this goal was addressed in any way.

133.    A state complaint Plaintiffs filed with the Michigan Department of Education (MDE) against ELPS on July 2, 2024, resulted in MDE finding that ELPS violated the IDEA by failing to provide P.H. with appropriate services, based on the same facts at issue in the due process proceeding.

134.    The above points demonstrate ELPS's pattern of failing to make a good faith effort to address P.H.'s needs, implement P.H.'s IEP with fidelity, and appropriately track and document P.H.'s aids and services as required by his IEP.

135.    Defendants' failure to appropriately implement P.H.'s IEP caused him to struggle even more in school, limited his ability to participate in school, and denied him a FAPE.

**Failure to Properly Consider Defendants' Failure Educate P.H. in the Least Restrictive Environment**

136.    The IDEA requires that children with disabilities be educated alongside nondisabled children to the maximum extent possible. 34 C.F.R. § 300.114(a)(2).

137.    The IDEA defines the Least Restrictive Environment (LRE) as a concept – not a place – based on the individual student's needs and their capacity to withstand the regular education environment. 34 C.F.R. § 300.411(a)(2).

138.    According to his IEP, P.H.'s LRE was determined to be the general education classroom.

139.    Despite this, P.H. was primarily educated in the special education environment or given pullout services during two hours per day he was scheduled to be at school.

140.    As ASD teacher consultant Kujawa testified, she met with P.H.'s special education teacher for consultative services – *not* the general education teacher.

141.    This is because P.H. spent far more time in special education and pullout services than he did in general education.

142.    Placing P.H. in ELPS' dedicated ASD classroom would have been *less* restrictive and isolating than the way he was being educated at ELPS: assigned to general education on paper yet left to work separated from peers almost all day in various offices and solitary settings.

143.    Despite this, ELPS refused C.H. and R.H.'s repeated requests to consider placement in the ASD classroom.

144.    For these reasons, Defendants failed to educate P.H. in the appropriate LRE, kept isolated and struggling both inside and outside the classroom, and ultimately denied him access to FAPE.

**The Hearing Decision Contradicts the Hearing Officer's Own Statements at the Hearing**

145.    The Hearing Officer stated throughout the due process hearing that the escalation of P.H.'s behaviors was clear by January 2024.

146.    As discussed *supra,* at the very least, the escalation of P.H.'s behavior in January 2024 should have warranted an FBA, yet Defendants failed to conduct one.

147.    The Hearing Officer explicitly acknowledged the myriad of evidence pointing to the escalation in behaviors around December 2023, stating during the hearing that P.H. seemed to "fall off a cliff" or "flip a switch."

148.    Nonetheless, the Hearing Officer found that ELPS did not deny P.H. a FAPE, contradicting both his own statements at the hearing and a preponderance of the evidence

## CAUSE OF ACTION

### COUNT I
**Violations of the Individuals with Disabilities in Education Act**
**20 U.S.C. § 1400 *et. seq.* and implementing federal regulations**
**(As to All Defendants)**

149.    Plaintiffs incorporate by reference the allegations contained in the previous paragraphs as if fully restated herein.

150.    Defendants failed to provide P.H. with a FAPE in violation of the IDEA.

151.    Under the IDEA, Plaintiffs were entitled to a due process hearing on the claims and issues raised in the ADPC.

152.    The Hearing Officer improperly dismissed Ingham ISD as a respondent based on his incorrect understanding and application of the IDEA and Michigan law and his reliance on incorrect prior due process hearing decisions.

153.    The Hearing Officer improperly "modified," "clarified," and "narrowed" Plaintiffs' initial DPC.

154.    The Hearing Officer failed to consider the Plaintiffs' ADPC, which was filed at the Hearing Officer's own direction via the December 10 order.

155.    The March 24 order's findings are not supported by a preponderance of the evidence.

156.    The March 24 order contains errors of law due to a failure to properly interpret the IDEA and relevant caselaw.

157.    Accordingly, Plaintiffs seek review of the administrative decision as to all issues.

158.    Plaintiffs are entitled to a modified *de novo* review of the March 24 order with respect to their claims against both Defendants.

## RELIEF REQUESTED

159.    For all the foregoing reasons, Plaintiffs seek the following relief:

   a.    Full review of the administrative decision as to all issues presented;

   b.    An order overturning the January 30 order dismissing Ingham ISD as respondent and the March 24 order finding that ELPS did not violate the IDEA;

    c.  An order finding, based on a preponderance of the evidence, that ELPS and Ingham ISD violated the IDEA by failing to provide P.H. with a FAPE from November 2023 through May 2024, analyzing the issues identified in the ADPC:

        i.  Whether Defendants failed to reevaluate P.H. when his educational or related service needs, including the need for increased emotional, behavioral, and academic supports, warranted a reevaluation, thereby denying him FAPE;

        ii.  Whether Defendants failed to offer and/or provide P.H. an appropriate IEP (including, but not limited to, an appropriate program, placement, services, and accommodations in the least restrictive environment), by failing to develop an IEP reasonably calculated to provide P.H. FAPE; failing to review and revise P.H.'s IEP when his educational or related service needs warranted a revision; and failing to implement P.H.'s IEP as written, thereby denying him FAPE;

        iii.  Whether Defendants failed to educate P.H. in the least restrictive environment, thereby denying him FAPE.[33]

    d.  A sufficient compensatory education fund to make P.H. whole for his loss of education during the entire 2023-2024 school year;

    e.  An order finding that Plaintiffs are the prevailing parties;

    f.  Reasonable attorney's fees and costs; and

    g.  Any further relief that this Court may deem just and proper.

---

[33] Ex. 1 at 36-37.

Dated:  June 20, 2025                       Respectfully Submitted,

*s/Elizabeth K. Abdnour*
Elizabeth K. Abdnour (P78203)
Megan N. Mitchell (P87312)
Jaquelyn Kmetz (P83575)
ABDNOUR WEIKER LLP
325 E. Grand River Ave. Ste. 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
megan@education-rights.com
jacquelyn@education-rights.com
*Attorneys for Plaintiffs*