UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**C.H.** and **R.H.** o/b/o **P.H.**

    Plaintiffs/Appellants/Petitioners,

v.

**EAST LANSING PUBLIC SCHOOLS**
and **INGHAM INTERMEDIATE
SCHOOL DISTRICT,**

    Defendants/Appellees/Respondents.

Case No. 1:25-cv-680

Chief Judge Hala Y. Jarbou

---

### PLAINTIFFS' OPPOSITION TO DEFENDANT INGHAM INTERMEDIATE SCHOOL DISTRICT'S MOTION TO DISMISS

Plaintiffs C.H. and R.H., suing on behalf of their son, P.H., through undersigned counsel, respectfully submits this Opposition to Defendant Ingham Intermediate School District ("Ingham ISD," "IISD," or "Defendant")'s Motion to Dismiss.  ECF No. 13.  This Court has subject matter jurisdiction over Plaintiffs' appeal, the appeal was timely filed, and Plaintiffs have adequately pled a claim for relief against Ingham ISD.  Thus, Ingham ISD's Motion to Dismiss must be denied.

### STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain a "short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

Fed R. Civ. P. 12(b)(1) allows dismissal of an action for lack of subject matter jurisdiction through a motion that challenges either the "sufficiency of the pleading itself (facial attack) or the factual existence of the subject matter jurisdiction (factual attack)."  *Cartwright v. Garner*, 751

F.3d 752, 759 (6th Cir. 2014), citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)

The Supreme Court has held that a complaint is only properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard is more than a sheer possibility, but it is not a probability requirement.  *See Twombly*, 550 U.S. at 556.  A complaint states a plausible claim for relief, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 987 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In reading the alleged facts, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citations omitted).

## STATEMENT OF FACTS

Plaintiffs C.H. and R.H. are legal guardians of P.H. Compl., ECF No. 1 at ¶ 1.  P.H. is an eight-year-old child with qualifying disabilities under the IDEA and is therefore entitled to receive special education and related services under the IDEA. *Id.* at ¶ 2. P.H. was enrolled in East Lansing Public Schools ("ELPS") from March to August 2021 and from August 2023 to April 2024. Compl. Ex. 1, ECF No. 1-1 at  ¶ 6. Ingham ISD is the intermediate school district ("ISD") of which ELPS is a constituent school district. *Id.* at ¶ 7. ISDs are considered Legal Education Agencies ("LEAs") and therefore responsible for providing FAPE under federal and state law. *Id.* Ingham ISD was responsible for overseeing ELPS and providing services to P.H. from August 2021 to

April 2024. *Id.*

The Individuals with Disabilities in Education Act ("IDEA") requires that qualifying students with disabilities receive a free and appropriate education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a).  To achieve this goal, the IDEA requires that Local Education Agencies ("LEAs") design and develop an individualized education program ("IEP") for each qualifying child. 20 U.S.C. §§ 1412(a)(4), 1414(d); 34 C.F.R. §§ 300.112, 300.320-24. Both ELPS and the instant Defendant, Ingham ISD, are LEAs responsible for ensuring the provision of a FAPE to P.H. Compl., ECF No. 1 at ¶¶ 15-19, 26-27.  ELPS is the primary school district in which C.H., R.H. and P.H. reside.  *Id.* at ¶ 26.

Ingham ISD is an intermediate school district which serves the ELPS school district and provides special education services directly to students through its Special Education Center Programs.  *Id.* at ¶¶ 27-29.  Ingham ISD was responsible for providing a FAPE to P.H. under the IDEA. *Id.* at ¶ 29.  Under M.C.L. 380.1711, ISDs are responsible for developing, establishing, and continually evaluating and modifying a plan for the delivery of special education services for all students under the age of 26 who are residents of constituent districts and who have not graduated from high school. *Id.* at ¶ 39; M.C.L. 380.1711(1)(a), (f).  M.C.L. 380.1711 does not limit an ISD's obligation only to those students that are currently enrolled in one of the ISD programs or classrooms.  *Id.* at ¶ 40.

During the 2022-2023 and 2023-2024 school years, ELPS and Ingham ISD failed to meet P.H.'s educational needs. Compl. Ex. 1, ECF 1-1 at ¶¶ 4-126.  As outlined in detail in the Complaint, ELPS and Ingham ISD, among other things, failed to address C.H. and R.H.'s concerns about the inadequacy of P.H.'s IEPs and failing to evaluate P.H.s needs under IDEA when appropriate.  Therefore, on December 2, 2024, Plaintiffs filed a Due Process Complaint ("DPC")

against ELPS, Ingham ISD, and Haslett Public Schools.[1] Compl., ECF No. 1 at ¶ 30. On December 13, 2024, Ingham ISD filed a Motion to Dismiss the DPC. *Id.* at ¶ 31. Ingham ISD argued that it was not responsible for the identification, placement, or provision of FAPE to P.H. because it was not a LEA. *Id.* at ¶ 32. In support of its Motion, Ingham ISD attached five opinions attached by MOAHR administrative law judges ("ALJs") serving as special education due process Hearing Officers, all of which wrongly concluded that ISDs are not LEAs and therefore are not responsible for providing FAPE to students on IEPS. *Id.* at ¶ 33. On January 30, 2025, the Hearing Officer issued  an order ("the January 30 order") erroneously dismissing ISD based on incorrect legal arguments and wrongly decided prior caselaw cited by Ingham ISD in its Motion to Dismiss. *Id.* at ¶ 34. The January 30 order wrongly held that the responsibility of providing a FAPE resides solely with local school districts, that an ISD may only be responsible for the provision of FAPE if it has taken on direct responsibility for the education of a disabled student, which is contrary to Michigan law that contemplates a shared responsibility between local school districts and ISDs. *Id.* at ¶¶ 35-41. The due process hearing took place February 10 to 14, 2025. *Id.* at ¶ 66.

On March 24, 2025, the Hearing Officer issued a final decision and order ("the March 24 order") finding that ELPS had not violated the IDEA.  *Id.* at ¶ 75. Plaintiffs timely filed this appeal of that final order.

## ARGUMENT

### I.    Ingham ISD should not have been dismissed from the due process proceeding

Ingham ISD argues, "In Michigan, a student's local district of residence, not the ISD, is responsible for identifying students with disabilities, conducting evaluations, and providing special education programs and services."  Def. IISD's Brief in Supp. of Mot. to Dismiss, ECF No. 13-1,

[1] Haslett Public Schools was dismissed from the due process proceeding, and Plaintiffs are not appealing its dismissal.

PageID.490.  In support of its arguments, it cites to the Revised School Code.  *Id*. at PageID.490-491.    However, Ingham ISD only paints part of the picture, as the Michigan Department of Education, which is responsible for oversight and implementation of the IDEA in Michigan, has stated its position that ISDs are considered LEAs in Michigan, as Plaintiffs argued in the due process proceeding.  The Hearing Officer rejected that argument in his January 30, 2025, order. Compl. Ex. 2, ECF No. 1-2, PageID.75-76.  IISD writes, "[W]ell established precedent emphatically supports the conclusion that the local education agency is the appropriate defendant in instances such as the case at hand. ALJ St. John agreed with this characterization of the law as well." Def. IISD's Brief in Supp. of Mot. to Dismiss, ECF No. 13-1, PageID.492.  That precedent is wrong, for reasons Plaintiffs are entitled to argue before this Court.

The IDEA is clear that its provisions apply to ISDs:

> **Applicability of this part to State and local agencies.**
>
> (a) ***States.*** This part applies to each State that receives payments under Part B of the Act, as defined in § 300.4.
>
> (b) ***Public agencies within the State.*** The provisions of this part—
>
>> (1) Apply to all political subdivisions of the State that are involved in the education of children with disabilities, including:
>>
>>> (i) The State educational agency (SEA).
>>>
>>> (ii) Local educational agencies (LEAs), educational service agencies (ESAs), and public charter schools that are not otherwise included as LEAs or ESAs and are not a school of an LEA or ESA.
>>>
>>> (iii) Other State agencies and schools (such as Departments of Mental Health and Welfare and State schools for children with deafness or children with blindness).
>>>
>>> (iv) State and local juvenile and adult correctional facilities; and

>> (2) Are binding on each public agency in the State that
>> provides special education and related services to children
>> with disabilities, regardless of whether that agency is
>> receiving funds under Part B of the Act.

34 C.F.R. § 300.2 (emphasis in original).  Further, the IDEA's special education due process

hearing procedural safeguards explicitly contemplate a parent filing a due process complaint

against entities other than LEAs:

>> **Response to complaint**
>>
>> **(i) Local educational agency response**
>>
>> **(I) In general**
>>
>> If the local educational agency has not sent a prior
>> written notice to the parent regarding the subject
>> matter contained in the parent's due process
>> complaint notice, such local educational
>> agency shall, within 10 days of receiving the
>> complaint, send to the parent a response….
>>
>> **(ii) Other party response**
>>
>> Except as provided in clause (i), the non-complaining party
>> shall, within 10 days of receiving the complaint, send to the
>> complaint a response that specifically addresses the issues
>> raised in the complaint.

20 U.S.C. § 1415(c)(2)(B) (emphasis in original).  If Congress had not intended for parents to be

able to file due process complaints against entities other than LEAs, such as ISDs and ESAs, it

would have had no reason to include the language of 20 U.S.C. § 1415(c)(2)(B)(ii) in the IDEA,

as there would be no "other party" to respond to a complaint.

A state that receives funding under IDEA must demonstrate that it has in effect policies

and procedures that ensure "[a] [FAPE] is available to all children with disabilities residing in the

State . . . including children with disabilities who have been suspended or expelled from school."

6

20 USC § 1412(a)(1)(A). The State Educational Agency's ("SEA")[2] responsibilities include ensuring "(i) the requirements of [IDEA] are met" and that "(ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency . . . (II) meet the educational standards of the [SEA] . . . ." *Id.* at § 1412(a)(11)(A). This provision "incorporates by reference state standards, be they substantive or procedural, that exceed the federal basic floor of meaningful, beneficial educational opportunity." *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773, 789 (1st Cir. 1984), *aff'd sub nom Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985), referencing 20 U.S.C. § 1401(18)(B) and *Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 203 (1982).

Michigan has promulgated several legal provisions that "exceed the federal basic floor of meaningful, educational opportunity." Pursuant to 34 C.F.R. § 300.705(a), 815, Michigan Administrative Rules for Special Education ("MARSE") Part 7 requires that each ISD in Michigan submit a plan ("ISD Plan") for special education, which must be approved by the district's superintendent, which corresponds to the assurances that each LEA must provide to receive federal funding. MARSE R. 340.1831. The same part prescribes that:

> (1) The department shall establish monitoring procedures, criteria, and evaluation activities to ensure that minimum standards are being achieved by all public agencies.
>
> (2) Each intermediate school district shall implement monitoring procedures and evaluation methods developed by the department to ensure that the standards and criteria established are being achieved by the intermediate school district, their constituent local school districts, and their public school academies.

MARSE R. 340.1839. Through these additional obligations concerning monitoring and evaluation

---

[2] In Michigan, the SEA is the Michigan Department of Education.

procedures, the State of Michigan demonstrates that it views the ISD, in this case IISD, as an integral part of ensuring that state educational standards are met and thus ensuring that the requirements of IDEA are met.

IDEA's regulations also require that the SEA, as part of its general supervisory responsibilities under 34 C.F.R. §§ 300.149 and 300.600, must adopt written procedures for remedies of an ISD's or local district's denial of appropriate services. 34 C.F.R. § 300.151(a). When a failure to provide appropriate services has been identified, the SEA must address:

> (1) The failure to provide appropriate services, including corrective action appropriate to address the needs of the child (such as compensatory services or monetary reimbursement); and
>
> (2) Appropriate future provision of services for all children with disabilities.

34 C.F.R. § 300.151(b).

In Michigan, the special education state complaint process requires an ISD's active involvement. The ISD must assist in monitoring and "[t]he public agency shall submit proof of compliance to the department and the intermediate school district documenting that the violation is corrected within the time line specified in the corrective action." MARSE R. 340.1854(3). Further, MARSE provides for reimbursement for special education programs and services in compliance with the MARSE and the ISD Plan approved by the Michigan Department of Education ("MDE"). MARSE R. 340.1809. As a result, IDEA, state law, the corresponding implementing regulations, and practice have created a system where an ISD, such as IISD, is responsible for ensuring a FAPE. Among an ISD's responsibilities are "investigating complaints made about the special education program and services provided by constituent districts" and "maintaining a record of all students who are eligible for special education programs and services within the boundaries of one of its constituent districts." Def. IISD's Brief in Supp. of Mot. to

Dismiss, ECF No. 13-1, PageID.491 (citing M.C.L. 380.1711). ISDs are also responsible for maintaining a "record of…the special education programs or services in which the student with a disability is participating…," M.C.L. 380.1711(1)(f), "[h]ave the authority to place in appropriate special education programs or services a student with a disability for whom a constituent district is required to provide special education programs or services…," M.C.L. 380.1711(1)(g), and operating "the special education programs or services or contract for the delivery of special education programs or services by local school district boards, in accordance with section 1702, as if a local school district under section 1751," M.C.L. 380.1711(1)(i).  IISD cites to M.C.L. 380.1751 to attempt to shirk responsibility but fails to address the clear obligation placed on it by M.C.L. 380.1711(1)(i).  *See* Def. IISD's Brief in Supp. of Mot. to Dismiss, ECF No. 13-1, PageID.490-491.

In addition to the testimony cited in the Complaint, MDE has issued guidance demonstrating its position that ISDs are LEAs in Michigan:

> MDE provides IDEA Part B subgrants to each eligible Intermediate School District (ISDs). <u>IDEA Part B Local Education Agency (LEA) eligibility requirements apply to ISDs or Education Service Agencies as the LEA (subrecipient) receiving the IDEA Part B grant and responsible for ensuring that the requirements of this part are met</u>. A condition of eligibility for an IDEA Part B subgrant, is that in providing for the education of children with disabilities within its jurisdiction, the ISD must have in effect policies, procedures, and programs that are consistent with the State policies and procedures established as required in IDEA §1412(a).

MICH. DEP'T OF EDUC., MICHIGAN DEPARTMENT OF EDUCATION (MDE) AND INTERMEDIATE SCHOOL DISTRICT (ISD) GENERAL SUPERVISION RESPONSIBILITIES at 2 (Mar. 2003), https://training.catamaran.partners/wp-content/uploads/2025/04/Michigan-Department-of-Education-MDE-and-Intermediate-School-District-ISD-General-Supervision-Roles.pdf (emphasis added).

Congress allowed states to determine how they would comply with IDEA. The United States Department of Education, Office of Special Education and Rehabilitative Services has explained, "[a]s part of its general supervisory responsibility, the [State Educational Agency], through its laws, regulations, and policies, establishes which public agencies have the legal and fiscal responsibility to serve children with disabilities." *Letter to Hokenson*, Feb. 4, 2009 (Exhibit 1). Through the structure of ISDs, Michigan has explicitly placed the burden of IDEA compliance upon both individual school districts and ISDs.

For these reasons, IISD's Motion to Dismiss must be denied.

## II.    Plaintiffs' appeal against Ingham ISD was timely filed and should be permitted to proceed

Defendant asserts that Plaintiffs' appeal challenging the administrative decision on Plaintiffs' IDEA claim against Ingham ISD should be dismissed as untimely under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and under Fed. R. Civ. P. 12(b)(6) due to failure to state a claim under which relief can be granted. Def. IISD's Brief in Supp. of Mot. to Dismiss, ECF No. 13-1, PageID.487, 493. Plaintiffs filed a DPC against ELPS and Ingham ISD on December 2, 2024. Compl., ECF No. 1 at ¶ 30. On December 13, 2024, Ingham ISD filed a motion to dismiss Plaintiffs' due process complaint against it, alleging that it was not responsible for the identification, placement, or provision of FAPE to P.H. because it was not a LEA. *Id.* at ¶ 32; Def. IISD's Brief in Supp. of Mot. to Dismiss, ECF No. 13-1, PageID.489. The Hearing Officer issued a decision granting Ingham ISD's motion to dismiss on January 30, 2025. Compl., ECF No. 1 at ¶ 34. The ALJ issued a final opinion as to Plaintiff's remaining claims against ELPS on March 24, 2025. *Id.* at ¶ 75. Prior to the Hearing Officer's final opinion, Plaintiffs had not yet satisfied the IDEA's exhaustion requirement, and thus the statutory deadline to appeal had not yet begun to run. 20 U.S.C. § 1415(i)(2)(A), (B). Pursuant to 34 C.F.R. § 300.516:

    **(a) General.** Any party aggrieved by the findings and decision made under §§ 300.507 through 300.513 or §§ 300.530 through 300.534 who does not have the right to an appeal under § 300.514(b), and any party aggrieved by the findings and decision under § 300.514(b), has the right to bring a civil action with respect to the due process complaint notice requesting a due process hearing under § 300.507 or §§ 300.530 through 300.532. The action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

    **(b) Time limitation.** The party bringing the action shall have 90 days from the date of the decision of the hearing officer or, if applicable, the decision of the State review official, to file a civil action, or, if the State has an explicit time limitation for bringing civil actions under Part B of the Act, in the time allowed by that State law.

The Hearing Officer's final decision was issued on March 24, 2025. Compl., ECF No. 1 at ¶ 75. The Appeal was filed on June 20, 2025. *See* Compl., ECF No. 1. Thus, the instant civil action was timely filed as to Plaintiffs' IDEA claims against Ingham ISD. Plaintiffs' DPC against Ingham ISD and ELPS (filed as a single complaint) involved overlapping and joint action taken by both entities with respect to their failure to provide a FAPE to P.H., including Ingham ISD and ELPS's joint failure to reevaluate P.H. when his educational or relate service needs warranted a reevaluation and educate P.H. in the least restrictive environment. *Id*. at ¶¶ 62, 108, 159. Accordingly, Plaintiffs waited until the completion of the administrative process as to both entities before filing suit to avoid dismissal based on failure to exhaust and ripeness challenges. 20 U.S.C. § 1415(i)(2)(A).

This Court recently dismissed a similar Motion to Dismiss filed by Kent ISD. *See* Order, *L.G. v. Kelloggsville Public Schools, et al.*, No. 1:23-cv-833 (W.D. Mich. Jan. 28, 2025), ECF No. 26. As another example, in *Mcqueen v. Colorado Springs School District No. 11*, the Tenth Circuit found the plaintiffs' IDEA claim not yet exhausted where the plaintiffs had attempted to appeal a

11

decision by the ALJ on a bifurcated issue.  488 F.3d 868, 874 (10th Cir. 2007).  As the court explained, "[t]he role of the § 1415 process is to resolve a complaint about the education of a specific child."  *Id.*  In that case, an ALJ had issued an opinion as to some, but not all of the issues raised in the plaintiffs' due process complaint, and thus, the question of whether the student had been provided a FAPE was not yet fully resolved.  *Id.*

Likewise, in the instant case, the Hearing Officer's preliminary order granting Ingham ISD's motion to dismiss did not resolve the overriding issue of whether P.H. had been provided a FAPE.  In *Fry v. Napoleon Community Schools*, the Supreme Court addressed this question in detail.  197 L.Ed.2d 46, 137 S.Ct. 74 (2015).  In *Fry*, parents filed litigation in federal court alleging that two school districts had violated Title II of the ADA and § 504 of the Rehabilitation Act alleging that denying their son equal access to programs, refusing to reasonably accommodate their son's use of a service animal, and otherwise discriminating against their son as a person with disabilities.  *Id.* at 752.  The Supreme Court held that, when seeking relief in federal court, plaintiffs must first exhaust the administrative procedure when the "gravamen" of their complaint alleges a violation of FAPE.  *Id.* at 755.  Here, Plaintiff filed a due process complaint under the IDEA alleging that Ingham ISD had denied P.H. FAPE.  The Hearing Officer's January 30, 2025, decision granting Ingham ISD's motion to dismiss did not address the question of whether P.H. had been denied FAPE.  Thus, at the time of the decision, Plaintiffs did not yet meet the IDEA's exhaustion requirement and were therefore not yet entitled to file a direct appeal to federal court.  20 U.S.C. § 1415(i)(2)(A), (B).  Plaintiffs filed a single DPC against both Ingham ISD and ELPS surrounding the singular issue of whether P.H. had been provided a FAPE.  Accordingly, Defendant's argument that Plaintiffs' appeal as to Ingham ISD is untimely is misguided, and Plaintiffs' appeal against Ingham ISD should be allowed to proceed.

Even if this Court finds that Plaintiffs should have filed their appeal against Ingham ISD within 90 days of the date of the Hearing Officer's order granting Ingham ISD's motion to dismiss in the due process proceeding, the IDEA's 90-day deadline to appeal an administrative ruling to federal court is not jurisdictional, and thus, Defendant's attempt to dismiss Plaintiffs' IDEA claims for lack of subject matter jurisdiction and for failure to state a claim should be denied.  The text of § 1415(i)(2)(B) provides that a "party bringing [a civil action] shall have 90 days from the date of the decision of the hearing officer to bring such an action, <u>or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows.</u>"[3] (Emphasis added).  Michigan law establishes its own time limitation providing that a "party aggrieved by a final decision and order issued by an administrative law  judge under this rule may appeal to a court of competent jurisdiction within 90 days after the mailing date of the final decision and order." Mich. Admin. Code R. 340.1724f(4).  There is no provision in the Michigan Administrative Code for any appeal of a special education due process decision to be filed prior to the issuance of a final order.

As the Supreme Court explained in *Bowles v. Russell*, when a deadline to file an appeal in federal court is contained in a federal statute, courts have traditionally considered such time limitations to be jurisdictional in nature.  551 U.S. 205, 209-211 (2007).  By contrast, when a time limitation is derived from another source—such as a court-promulgated procedural rule, for example—the limitation is considered "not jurisdictional."  *Id.* at 211.  This is because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Id.* at 211 (citing

---

[3] Notably, IISD chose to eliminate the underlined clause of this quote from its Brief, with no ellipsis or other indicator to indicate that it had cut the quote short: "Based on the standard set forth in *Bowles*, the same applies to 20 U.S.C. § 1415(i)(2)(B) which unambiguously states that '[t]he party bringing the action shall have 90 days **from the date of the decision** of the hearing officer to bring such an action.' (Emphasis added.)" Def. IISD's Brief in Supp. of Mot. to Dismiss, ECF No. 13-1, PageID.494

U.S. Const., Art. III, § 1).  IISD argues that this Court should not rely on Def. IISD's Brief in Supp. of Mot. to Dismiss, ECF No. 13-1, PageID.494.  This argument is incorrect.

Here, although the first clause of § 1415(i)(2)(B) of the IDEA prescribes a 90-day time limit for filing a civil action in federal court, the second clause gives states the overriding authority to set their own time limitations.  The statute's deference to state law, permitting states to set their own deadlines, strongly suggests that IDEA's 90-day limit is not jurisdictional.  *See Wall Twp. Bd. of Educ. v. C.M.*, 534 F. Supp. 2d 487, 493 (D.N.J. 2008) (finding that the "jurisdictional significance" of the 90-day time limit set forth in the IDEA "is undermined by the later part of the provision, which permits each state to disregard the 90-day time limit and create its own time prescriptions"); *Lejeune G. v. Khepera Charter Sch.*, 327 F. Supp. 3d 785 (E.D. Pa. 2018) (applying same reasoning to find state-established deadline non-jurisdictional; *see also Farzana K. v. Indiana Dep't of Educ.*, 473 F.3d 703, 705 (7th Cir. 2007) (similarly concluding that the time limit in § 1415(i)(2)(B) is a non-jurisdictional "procedural hurdle").  Here, because Michigan law—not Congress—establishes the applicable deadline for parties to file an action in federal court under the IDEA, the deadline cannot be considered jurisdictional.  *Wall Twp. Bd. of Educ.*, 534 F. Supp. 2d at 494.

Defendant's reliance on *Cleveland Heights-University Heights City School District v. Boss By & Through Boss*, 144 F.3d 391, 396 (6th Cir. 1998), treating the deadline to file an appeal of an IDEA administrative decision in federal court as jurisdictional is not persuasive in light of the Supreme Court's guidance in *Bowles*, 551 U.S. at 209-211, clarifying that filing deadlines established by sources other than Congress should be interpreted as non-jurisdictional procedural rules.  Therefore, Defendant's argument for dismissal of Plaintiffs' appeal under Rule 12(b)(1) for lack of subject matter jurisdiction should be rejected.

Non-jurisdictional time limitations function as statutes of limitations, and as such, may be raised as an affirmative defense under Rule 12(b)(6). *See Wall Twp. Bd. of Educ.*, 534 F. Supp. 2d at 494 (denying a defendant's 12(b)(1) motion but leaving open the possibility of the defendant later raising an affirmative defense under Rule 12(b)(6)). Therefore, given Ingham ISD's argument that Plaintiffs have not complied with Michigan's 90-day filing deadline as an affirmative defense under Rule 12(b)(6), Plaintiffs are entitled to equitable tolling. *See id.* (noting that because non-jurisdictional time limitations function as statutes of limitations, they are subject to equitable tolling).

Courts may equitably toll a statute of limitations when a party can show (1) that they have diligently pursued her rights and (2) some extraordinary circumstances prevented timely filing. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "The district court must exercise its equitable powers on a case-by-case basis, with an emphasis on the need for flexibility and for avoiding mechanical rules." *Holland*, 560 U.S. at 649-50. Here, Plaintiffs diligently pursued their IDEA claims and waited to file the instant appeal until their claims were fully exhausted to comply with the IDEA's exhaustion requirement. As discussed at length above, Plaintiffs filed a single due process complaint alleging denial of FAPE by the joint action of Ingham ISD and ELPS. Plaintiffs were prevented from filing an appeal until the Hearing Officer's final ruling on their remaining claims against ELPS. In this case, mechanical application of the 90-day limit to the Hearing Officer's first ruling on Ingham ISD's motion to dismiss would contravene the IDEA's exhaustion requirement and would improperly penalize Plaintiffs for diligently seeking to comply with this statutory requirement. Thus, Plaintiffs are entitled to equitable estoppel.

For these reasons, IISD's Motion to Dismiss must be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant

Ingham ISD's Motion to Dismiss.

Dated: October 20, 2025

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour (P78203)
Megan N. Mitchell (P87312)
Jacquelyn Kmetz (P83575)
ABDNOUR WEIKER LLP
325 E. Grand River Ave., Ste. 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
megan@education-rights.com
jacquelyn@education-rights.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the limits set forth in LCivR 7.2(b)(i). Further,

based on the Word Count function of Microsoft Word for Mac word processing software, applied

to include all include headings, footnotes, citations and quotations, but not to include the case

caption, cover sheets, any table of contents, any table of authorities, the signature block,

attachments, exhibits, and affidavits, I certify that this Brief contains 4752 words.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour

## CERTIFICATE OF SERVICE

I, Elizabeth K. Abdnour, counsel for Plaintiff, certify that on October 20, 2025, I filed this

Notice by use of this Court's ECF system, which will serve copies to all counsel of record.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour
