**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

| | |
|---|---|
| CHRISTI HENKE and RICH HENKE o/b/o P.H., | |
| Plaintiff/Appellants/Petitioners, | Case No. 1:25-cv-680 |
| vs. | Hon. Hala Y. Jarbou |
| EAST LANSING PUBLIC SCHOOLS and INGHAM INTERMEDIATE SCHOOL DISTRICT, | **DEFENDANT INGHAM INTERMEDIATE SCHOOL DISTRICT'S REPLY** |
| Defendants/Appellees/Respondents. | |

---

Elizabeth K. Abdnour (P78203)
Megan N. Mitchell (P87213)
Jacquelyn Kmetz (P83575)
ABDNOUR WEIKER LLP
*Attorneys for Plaintiffs*
325 E. Grand River Ave., Suite 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
megan@education-rights.com
jacquelyn@education-rights.com

Jordan M. Bullinger (P72441)
CLARK HILL PLC
*Attorneys for Defendant Ingham ISD*
200 Ottawa Avenue NW, Suite 500
Grand Rapids, MI 49503
(616) 608-1146
jbullinger@clarkhill.com

Erin H. Walz (P55484)
THRUN LAW FIRM, P.C.
*Attorneys for Defendant*
*East Lansing Public Schools*
2900 West Rd., Suite 400
P.O. Box 2575
East Lansing, MI 48826-2575
(517) 374-8830
ewalz@thrunlaw.com

---

## DEFENDANT INGHAM INTERMEDIATE SCHOOL DISTRICT'S REPLY

NOW COMES Defendant, Ingham Intermediate School District, by and through its attorneys, Clark Hill PLC, and hereby submits this Brief in Reply to Petitioner's Response to Respondent's Motion to Dismiss:

**I.     Plaintiffs' IDEA Claim is Untimely**

Plaintiffs do not dispute the key facts. The Hearing Officer, ALJ St. John ("Hearing Officer"), dismissed Ingham Intermediate School District ("Ingham ISD") from the due process proceeding on January 30, 2025. That dismissal order stated, "a party aggrieved by this decision may seek judicial review…within 90 days of the date of this order." Plaintiffs did not file this civil action naming Ingham ISD until June 20, 2025 — roughly 141 days after the January 30, 2025, dismissal order and 51 days past the April 30, 2025, deadline. 20 U.S.C. § 1415(i)(2)(A), (B). This theory has no footing in the statute, case law, or logic.

**A.     The January 30, 2025, dismissal of Ingham ISD started the 90-day statutory clock**

Plaintiffs' own allegations acknowledge they brought claims against East Lansing Public Schools ("ELPS") and Ingham ISD. Ingham ISD moved to dismiss on December 13, 2024, and on January 30, 2025, the Hearing Officer granted the motion and dismissed Ingham ISD because the ISD was not the entity responsible for identifying, evaluating, placing, or providing FAPE to P.H. The Order expressly permits Plaintiffs to seek judicial review of the determination within 90 days. As of January 30, 2025, Plaintiffs were "aggrieved by the findings and decision of the hearing officer," and Section 1415(i)(2)(B) allowed 90 days "from the date of the decision of the hearing officer to bring such an action." 20 U.S.C. § 1415(i)(2)(A), (B).

Nothing in the IDEA states that Plaintiffs are free to ignore the 90-day statutory clock for one dismissed respondent while litigating against another respondent. The statute intentionally ties the deadline to "the decision of the hearing officer," not the last remaining decision in the entire

2

proceeding. *Id*. Plaintiffs' position would allow a parent to lie in wait regarding an intermediate district's dismissal indefinitely so long as one of Plaintiffs' claims against a respondent limps on.

The Sixth Circuit consistently holds that when a party misses the appeal deadline in an IDEA decision, dismissal for lack of subject-matter jurisdiction is required. *Cleveland Heights–Univ. Heights City Sch. Dist. v. Boss*, 144 F.3d 391, 397 (6th Cir. 1998) (holding that a district court lacked jurisdiction where the appeal was untimely under the applicable IDEA deadline*); see also Northport Pub. Sch. v. Woods*, No. 1:11-CV-982, 2013 WL 435962, at *4 (W.D. Mich. Feb. 4, 2013) (citing *Cleveland Heights* and holding that "[i]f a party does not comply with the applicable deadlines for filing an IDEA appeal, then the district court must dismiss the case for lack of subject-matter jurisdiction"). Plaintiffs filed an appeal in the instant matter 51 days after the statutory deadline. Under *Cleveland Heights* and *Woods*, this Court lacks jurisdiction over their claims against Ingham ISD.

### B.   Plaintiffs' exhaustion argument is irrelevant and inaccurate

Plaintiffs argue they intentionally waited to file their challenge to Ingham ISD's dismissal until after the March 24, 2025, final decision because the entire matter was one unified FAPE dispute and exhaustion was not "complete" until March 24, 2025. This argument fails on multiple grounds.

Exhaustion under the IDEA is a prerequisite to bringing a civil action. *Fry* holds that a plaintiff must exhaust IDEA administrative procedures before suing where the gravamen of the claim is denial of FAPE. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754–55 (2017). *Fry* does not permit a parent to ignore a final adverse ruling dismissing one Defendant, elect not to comply with the 90-day appeal window for the same, and revive that defendant's dismissal months later simply because the hearing continued against another. Plaintiffs cite no controlling or persuasive authority

3

holding that exhaustion pauses, delays, or re-starts Section 1415(i)(2)(B)'s explicit 90-day clock for an adverse "decision of the hearing officer." *Id.*

Further, the January 30, 2025, Order resolved, with prejudice, the only question relevant to Ingham ISD: Whether Ingham ISD was the entity legally responsible for P.H.'s FAPE. The Hearing Officer dismissed Ingham ISD. This holding was a merits determination as to Ingham ISD's role, leaving no other matters related to Ingham ISD. The later March 24, 2025, decision addressed ELPS. The March 24, 2025, decision did not, and cannot, resurrect jurisdiction over Ingham ISD or reopen the dismissal that Plaintiffs already lost.

### C.  Plaintiffs' relied upon precedent is non-binding

Plaintiffs' cited decisions are factually distinguishable and non-binding on the Sixth Circuit. Plaintiffs cite *McQueen*, arguing the parties cannot appeal early. *McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868 (10th Cir. 2007). In *McQueen*, the parents and the district agreed to bifurcate one due process case into two phases: a legal question about the district's Extended School Year policy, and then, an evidentiary hearing on whether the policy denied the student FAPE. *McQueen* held that the parents' premature federal appeal failed because they attempted to appeal Phase One without the completion of Phase Two. In essence, the parents attempted an "interlocutory appeal" while their own case was still midstream. *Id.* at 873–74.

Here, the parties did not agree to bifurcate one continuous proceeding into two phases. The Hearing Officer resolved Ingham ISD's status entirely, with prejudice. This dismissal ended Plaintiffs' claims against Ingham ISD with finality. Plaintiffs were not forced into interlocutory posture. The Hearing Officer rendered explicit notice to Plaintiffs regarding the 90-day time period for appeals. *McQueen* stands for the unremarkable proposition that you cannot appeal an unfinished portion of a still-pending case. Although Plaintiffs urge that you can wait past a final dismissal of one respondent in order to package that same respondent into a later appeal of a

4

different respondent, this is an incorrect interpretation of the non-binding precedent. If this were permissible, it would nullify a congressionally imposed filing deadline.

### D. The 90-day deadline in Section 1415(i)(2)(B) is jurisdictional under the Sixth Circuit

Plaintiffs argue that the 90-day limit in Section 1415(i)(2)(B) is not jurisdictional because the statute allows states to adopt their own timelines. It is prudent to note that Michigan also has a 90-day rule governing appeals. Mich. Admin. Code R. 340.1724f(4). Plaintiffs rely on non-binding precedent such as *Wall. Wall Twp. Bd. of Educ. v. C.M.*, 534 F. Supp. 2d 487 (D.N.J. 2008). This precedent fails under controlling Sixth Circuit precedent and law.

In *Bowles v. Russell*, 551 U.S. 205, 209–13 (2007), the Supreme Court reaffirmed when Congress sets a filing deadline by statute, compliance with that deadline is "mandatory and jurisdictional." *Bowles* held that missing a statutory notice-of-appeal deadline "deprived the Court of Appeals of jurisdiction." *Id.* at 213. The Court drew a sharp line between (a) purely court-created deadlines, which are "claims-processing" rules, and (b) deadlines Congress itself imposed by statute, which are jurisdictional. *Id.* at 210–11. Section 1415(i)(2)(B) is statutory, stating that the appealing party "shall have 90 days from the date of the decision of the hearing officer to bring such an action." 20 U.S.C. § 1415(i)(2)(B) (emphasis added).

Post-*Bowles*, the Sixth Circuit repeatedly confirmed statutory appeal deadlines are jurisdictional. In *Nat'l Ecological Found. v. Alexander*, decided after *Bowles*, the Sixth Circuit explained that because the filing deadline at issue was "set forth in a statute," the failure to comply was jurisdictional. 496 F.3d 466, 474–75 (6th Cir. 2007). The Sixth Circuit recently reiterated that "rule-based deadlines are jurisdictional when they implement an appeal deadline created by Congress." *In re Tennial*, 978 F.3d 1022, 1026 (6th Cir. 2020) (citing *Bowles*). Similarly, Section 1415(i)(2)(B) establishes a congressionally mandated 90-day appeal deadline, matching

5

Michigan's 90-day rule. Mich. Admin. Code R. 340.1724f(4). Under *Bowles*, *Alexander*, *Tennial*, and *Cleveland Heights*, Plaintiff's election to deliberately file after the imposed deadline deprives the Court of jurisdiction.

Sixth Circuit district courts also treat section 1415(i)(2)(B) deadlines as jurisdictional, even after *Bowles* and after out-of-circuit courts experimented with non-jurisdictional interpretations. See, e.g., *Children's Ctr. for Developmental Enrichment v. Machle*, No. 2:08-CV-817, 2009 WL 585817, at *3 (S.D. Ohio Mar. 6, 2009), aff'd, 612 F.3d 518 (6th Cir. 2010) (holding that an appeal filed 169 days late was dismissed by citing to *Cleveland Heights* and enforcing the deadline as jurisdictional); *Horen v. Bd. of Educ. of Toledo Pub. Sch. Dist.*, No. 3:12CV00187, 2012 WL 3808902, at *2 (N.D. Ohio Aug. 8, 2012) (stating that a 45-day IDEA appeal window is a firm deadline under which the court cannot grant reprieve); *Loper v. Cleveland Metro. Sch. Dist.*, No. 1:16CV1384, 2017 WL 745741, at *3–4 (N.D. Ohio Feb. 6, 2017), report and recommendation adopted, 2017 WL 734907 (N.D. Ohio Feb. 24, 2017) (explaining that deadlines imposed under the IDEA are not flexible). In the United State District Court in the Western District, *Woods* reached the same conclusion: "[I]f a party does not comply with the applicable deadlines for filing an IDEA appeal, then the district court must dismiss the case for lack of subject-matter jurisdiction." *Woods*, 2013 WL 435962, at *4 (relying on *Cleveland Heights*). This precedent is binding and is fatal to Plaintiffs' claims.

    **E.    Equitable tolling is both unavailable and unwarranted**

Aware that they missed the statutory deadline, Plaintiffs seek equitable tolling to remedy their mistake. That request fails twice. First, this Court has already refused to graft equitable tolling on IDEA time limits. In *Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 735–38 (W.D. Mich. 2014), Judge Neff held that a due process plaintiff could not invoke equitable tolling to cure an untimely filing under Section 1415(f)(3)(C). The Court found "wholly unpersuasive" that *Holland v.*

6

*Florida* mandates equitable tolling of IDEA limitations and emphasized equitable tolling is not a remedy for neglect. *Holden*, 28 F. Supp. 3d at 737; *see also* 560 U.S. 631 (2010). The Sixth Circuit has similarly declined to apply tolling where parents filed after the deadline. See *Ruhl v. Ohio Dep't of Health*, 725 F. App'x 324, 336 (6th Cir. 2018) (rejecting tolling of IDEA/Part C two-year limit). Holden's reasoning applies with equal persuasive force to Section 1415(i)(2)(B). Courts within the Sixth Circuit have continued to enforce Section 1415(i)(2)(B)'s deadline strictly and without flexibility. See *Machle*, 2009 WL 585817, at *3 (affirmed at 612 F.3d 518); *Loper*, 2017 WL 745741, at *3–4; *Horen*, 2012 WL 3808902, at *2.

Second, assuming *arguendo* that tolling was available to Plaintiffs, equitable tolling in the Sixth Circuit requires Plaintiffs to prove both (1) that they diligently pursued their rights, and (2) that "some extraordinary circumstance" prevented timely filing. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). Equitable tolling is narrowly applied, granted sparingly, and does not extend to "a garden variety claim of excusable neglect." *Holden*, 28 F. Supp. 3d at 737–38 (internal citations omitted).

Here, Plaintiffs offer no extraordinary circumstance. The Order explicitly advised Plaintiffs that on January 30, 2025, Plaintiffs had 90 days to seek review of Ingham ISD's dismissal. Notably, Plaintiffs do not claim lack of notice, concealment, incapacity, fraud, or impossibility. By their own admission, Plaintiffs waited to appeal because they preferred to package Ingham ISD and ELPS into one suit after March 24, 2025. Plaintiff's election to delay as against Ingham ISD is not an extraordinary circumstance. *See Robertson*, 624 F.3d at 784; *Ruhl*, 725 F. App'x at 336 (explaining that parents' own decision to file late defeated tolling).

Far from diligence, Plaintiffs' approach shows the opposite. The IDEA gave Plaintiffs 90 days to appeal Ingham ISD's dismissal. Plaintiffs now ask the Court to ignore that timeline. This would prejudice Ingham ISD, which was entitled to rely on Plaintiffs' inaction as final, and would

7

nullify the finality that Section 1415(i)(2)(B) and Michigan's matching 90-day rule are designed to create. See Mich. Admin. Code R. 340.1724f(4) (party aggrieved "may appeal…within 90 days"). Because Section 1415(i)(2)(B) is jurisdictional in this Circuit, Plaintiffs' challenge to the January 30, 2025, Order is untimely, and equitable tolling is both unavailable and unwarranted, the Court lacks subject-matter jurisdiction over Plaintiffs' claims against Ingham ISD. Therefore, dismissal under Rule 12(b)(1) is required.

## II.  Even if the Court reached Rule 12(b)(6), Plaintiffs have not pled that Ingham ISD was the entity responsible for providing P.H. with FAPE

### A.  The duty to identify, evaluate, place, and provide FAPE is on the local district of residence

Michigan law states, "The *board of a local school district* shall provide special education programs and services designed to develop the maximum potential of each student with a disability in its district of record." MCL 380.1751 (emphasis added). Further, the local district either operates the special education program or service, or contracts with other entities — which can include the ISD. *Id*. In other words, the local district, ELPS, is the LEA with the primary statutory obligation to provide FAPE. The ISD is, at most, a service provider if the local district contracts for those services.

Section 1711 of the Revised School Code confirms that intermediate school districts have supervisory, planning, recordkeeping, and monitoring responsibilities: they "develop[]" an ISD-wide plan, "maintain[] a record of all students who are eligible," "investigat[e] complaints," and "implement monitoring procedures" developed by the Michigan Department of Education. MCL 380.1711(1)(a), (f); MARSE R. 340.1831; R. 340.1839. Those responsibilities are administrative and supervisory. They are not the same as being the LEA legally obligated to identify, evaluate, place, and directly provide FAPE to a particular student in a particular local district classroom.

8

Plaintiffs try to blur this distinction by lifting language from Section 1711(1)(i), which allows an ISD to "operat[e] the special education programs or services or contract for the delivery of special education programs or services…as if a local school district under section 1751." MCL 380.1711(1)(i). However, the statute expressly conditions that scenario on Section 1702 — where "the local school district is unable to provide such programs or services due to a financial emergency" and the State Board directs the ISD to assume direct provision of services. MCL 380.1702; MCL 380.1711(1)(i). Plaintiffs do not allege ELPS was under a Section 1702 financial emergency, that the State Board ordered Ingham ISD to assume direct FAPE responsibility, or that Ingham ISD became P.H.'s operating district of placement. Absent those allegations, Section 1711(1)(i) does not transform Ingham ISD into P.H.'s LEA. Plaintiffs did not allege, and cannot successfully allege, Ingham ISD was the entity responsible for P.H.'s identification, evaluation, placement, or provision of FAPE. Instead, Plaintiffs allege Ingham ISD should have "overseen," "monitored," or "ensured" that ELPS did so correctly. This allegation is not statutorily enforced through a due process proceeding.

**B.    The IDEA's due process framework targets the public agency responsible for the student's FAPE**

Under the IDEA, a parent may file a due process complaint "with respect to any matter relating to the identification, evaluation, or educational placement of [the] child, or the provision of [a FAPE] to such child." 20 U.S.C. § 1415(b)(6)(A). Only a "party aggrieved by the findings and decision" of the hearing officer may seek review. Section 1415(i)(2)(A). Courts have consistently recognized that the proper defendant in such an action is the local educational agency. See *Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 640 (7th Cir. 2015) (stating the "IDEA designates the 'local educational agency' as the proper defendant" in an IDEA FAPE action); *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1054 (9th Cir. 2012) (holding that judicial

9

review is available to "parents or the school district"); *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 252 (1st Cir. 2003) (explaining that judicial review is conferred on "school districts, parents, and children," i.e., the actual parties to the due process dispute); *J.S. v. N.Y. State Dep't of Corr.*, 76 F.4th 32, 43 (2d Cir. 2023) (holding that the IDEA's complaint and review provisions allow "the 'parent' and 'public agency'" responsible for FAPE to litigate).

Plaintiffs lean on 34 C.F.R. § 300.2 and § 1415(c)(2)(B)(ii) to claim that Congress "contemplates" due process complaints against entities other than LEAs. However, Section 300.2 makes clear that IDEA obligations apply to all public agencies "involved in the education of children with disabilities[.]" Nothing in Section 300.2 states that every agency is automatically the proper respondent in a due process hearing about a particular student's FAPE. Likewise, Section 1415(c)(2)(B)(ii), addressing the timing of responses to a due process complaint, does not expand substantive liability. Rather, it ensures that if a respondent other than the "local educational agency" is named, that "other party" still must answer. This language is a procedural safeguard, not a grant of substantive responsibility.

Plaintiffs' attempt to import generalized monitoring and systemic oversight duties from MARSE into an individual FAPE due process action also fails because supervisory obligations run between the State Educational Agency ("MDE") and intermediate/local districts as part of Michigan's general supervision system. MARSE R. 340.1839; 34 C.F.R. §§ 300.149, 300.600-604. Obligations are enforced through state complaint procedures and corrective action plans. See 34 C.F.R. § 300.151(a)-(b); MARSE R. 340.1854(3). Obligations are not privately enforceable through an IDEA due process complaint seeking student-specific relief against an ISD. The Hearing Officer correctly recognized that distinction and dismissed Ingham ISD in the instant matter.

### IV. Plaintiffs' reliance on Michigan Department of Education guidance is improper

Plaintiffs argue that Ingham ISD is a proper defendant because Michigan treats ISDs as LEAs, which assigns ISDs broad responsibility for FAPE, and therefore permits ISDs to be named in due process hearings alongside local districts. Plaintiffs rely upon general supervision language, alleged MARSE obligations, and an order involving Kent ISD. None of these arguments plausibly allege Ingham ISD was the entity responsible for the identification, evaluation, placement, and provision of special education programs and services to P.H.

**A.    The March 6, 2025, Michigan Department of Education memorandum confirms that ISDs "ensure" FAPE in a supervisory capacity, but that the local district is responsible for providing FAPE unless the ISD is operating the student's program**

In direct response to Plaintiff's arguments in the underlying due process hearing, on March 6, 2025, the Michigan Department of Education, Office of Special Education ("MDE OSE"), issued a memorandum entitled "Clarification on ISD Roles and Responsibilities in Due Process and IDEA Compliance." (Ex. A). The memorandum directly addresses the role of intermediate school districts as IDEA Part B subrecipients and explains when ISDs should or should not remain parties in due process hearings. This memorandum undercuts Plaintiffs' theory in two decisive ways.

First, MDE OSE expressly distinguishes between an ISD's obligation, as a subrecipient of IDEA grant funds and the obligation to provide special education programs and services to an individual student. The memorandum states:

> In their role of subrecipient of the IDEA formula grant, the ISD is responsible for *ensuring* the provision of a FAPE. Ensuring the provision of FAPE is different than the obligation for the provision of programs and services.
>
> \* \* \* \* \*
>
> The provision of programs and services is the responsibility of any public agency responsible for public education and specifically for the education of students with disabilities.

11

\* \* \* \* \*

> In this instance, the responsibility for the provision of FAPE rests with the member districts. The responsibility for the provision of FAPE rests with the ISDs only when they are functioning as the operating district. (Ex. A, MDE Memo, Mar. 6, 2025) (emphasis in original).

In short, MDE affirmed the analysis adopted by the Hearing Officer on January 30, 2025, when dismissing Ingham ISD. MCL 380.1751 tasks the local district of residence with providing special education programs and services to eligible students, either directly or by contracting for those services. The ISD's role is to supervise, coordinate, and monitor. This includes developing the ISD plan, maintaining records, investigating complaints, assisting with general supervision and compliance, and ensuring member districts are meeting their FAPE obligations. MCL 380.1711(1); MARSE R. 340.1831; R. 340.1839.

MDE OSE's memorandum affirms that the duty to provide programs, services, placement, and IEP implementation sits with "the public agency responsible for public education," i.e., the local district, unless (and only unless) the ISD itself is "functioning as the operating district." (Ex. A). Plaintiffs plead no facts that Ingham ISD was functioning as the operating district for P.H., that P.H. was placed in an ISD-operated classroom, that Ingham ISD convened or implemented his IEP, that the State Board invoked MCL 380.1702 to assign P.H.'s direct FAPE provision to Ingham ISD due to a financial emergency, or that Ingham ISD, rather than ELPS, was providing day-to-day special education services to P.H. Absent such allegations, Plaintiffs have not pled that Ingham ISD was responsible for the provision of FAPE for this student. Plaintiffs must be denied relief under Rule 12(b)(6).

### B. The March 6, 2025, MDE memorandum expressly supports ALJs dismissing ISDs from due process hearings where both the local district and the ISD are named

It is prudent to note that the March 6, 2025, memorandum was issued in direct response to the underlying administrative hearing. In response to Plaintiff naming both ELPS and IISD and

Plaintiff's efforts to speak on behalf of MDE in suggesting a strict liability scheme of supervision across the State of Michigan, MDE expressly rejects this theory and states: "[t]he Michigan Department of Education Office of Special Education (MDE OSE) is in support of the ALJ action to dismiss the ISDs from due process hearing proceedings *when both a member district and the ISD are alleged to have failed in the provision of services*." (Ex. A) (emphasis added).

According to the state's own special education authority, when a parent sues both the LEA and the ISD over FAPE, it is proper and supported by MDE OSE for the Hearing Officer to dismiss the ISD from the proceeding. The memorandum explicitly states that due process jurisdiction is narrow and limited to the identification, evaluation, placement, and provision of FAPE to the student. The memorandum explicitly states that *student-specific obligations rest, "in this instance," with "the member districts," and that "the responsibility for the provision of FAPE rests with the ISDs only when they are functioning as the operating district."* (Ex. A)(emphasis added).

Plaintiffs now "look for a second bite of the apple" and argue that dismissal was erroneous and purport to suggest that their theory of strict liability is supported by MDE. However, the March 6, 2025, MDE memorandum issued in response to the underlying action expressly rejects the theory now put forward by Plaintiffs. Plaintiffs cannot simultaneously invoke MDE guidance to argue that ISDs are proper IDEA respondents while ignoring MDE's direct statement in response to the instant action that Hearing Officers act within their jurisdiction when they dismiss ISDs in precisely this posture, and that an ISD's role in oversight does not make them the direct provider unless they are acting as the operating district for that student, which is not the case here.

The memorandum further recognizes that ISDs often "provide staff in their member districts who oversee programs and/or deliver programs and services," and acknowledges that the lines can blur in practice. (Ex. A). However, the memorandum also highlights a bright procedural

13

line for IDEA due process respondents: "Due process hearing decisions where allegations of noncompliance are identified *will be issued to the member district. Whether staff are member district staff or ISD personnel is irrelevant to the decision.*" (Ex. A)(emphasis added).

Contrary to the position of MDE, Plaintiffs now argue that because Ingham ISD monitors, assists, provides staff, participates in planning, and receives IDEA Part B funds, the ISD can be sued under IDEA as if it were an LEA. The above memorandum rejects this theory explicitly. Plaintiffs' attempt to convert general supervision obligations into FAPE liability is inconsistent with MCL 380.1751 and 380.1711 and directly contradicted by the March 6, 2025, MDE memorandum. The memorandum illustrates the same parameters that the Hearing Officer discussed: Ensuring compliance and providing FAPE are not synonymous, and due process hearings attach liability to the entity providing FAPE to the child.

## V. CONCLUSION

As to Ingham ISD, Plaintiffs' appeal is untimely under Section 1415(i)(2)(B) and controlling Sixth Circuit precedent. Therefore, this Court lacks jurisdiction under Rule 12(b)(1). Plaintiffs did not allege that Ingham ISD, as opposed to ELPS, is the entity responsible for providing P.H. with a FAPE, which requires dismissal under Rule 12(b)(6). For these reasons, and for those stated in Ingham ISD's brief, Plaintiffs' claims against Ingham ISD should be dismissed with prejudice.

Respectfully submitted,

Dated: November 3, 2025

By: */s/ Jordan M. Bullinger*
Jordan M. Bullinger (P72441)
Clark Hill PLC
*Attorneys for Defendant Ingham ISD*

CLARKHILL\19511\1007360\284301112.v1-11/3/25