# STATE OF MICHIGAN
## MICHIGAN OFFICE OF ADMINISTRATIVE HEARINGS AND RULES

| | |
|---|---|
| CHRISTI HENKE and RICH HENKE o/b/o P.H., | Case No. 1:25-cv-680 |
| Plaintiff/Appellants/Petitioners, | Hon. Hala Y. Jarbou |
| vs. | |
| EAST LANSING PUBLIC SCHOOLS and INGHAM INTERMEDIATE SCHOOL DISTRICT, | **DEFENDANT INGHAM INTERMEDIATE SCHOOL DISTRICT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** |
| Defendants/Appellees/Respondents. | |

Elizabeth K. Abdnour (P78203)
Megan N. Mitchell (P87213)
Jacquelyn Kmetz (P83575)
ABDNOUR WEIKER LLP
*Attorneys for Plaintiffs*
325 E. Grand River Ave., Suite 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
megan@education-rights.com
jacquelyn@education-rights.com

Jordan M. Bullinger (P72441)
CLARK HILL PLC
*Attorneys for Defendant Ingham ISD*
200 Ottawa Avenue NW, Suite 500
Grand Rapids, MI 49503
(616) 608-1146
jbullinger@clarkhill.com

Erin H. Walz (P55484)
THRUN LAW FIRM, P.C.
*Attorneys for Defendant*
*East Lansing Public Schools*
2900 West Rd., Suite 400
P.O. Box 2575
East Lansing, MI 48826-2575
(517) 374-8830
ewalz@thrunlaw.com

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................. 1

II.     STANDARD OF REVIEW .................................................................................. 1

III.    FACTUAL AND PROCEDURAL BACKGROUND........................................ 2

IV.     LEGAL ANALYSIS ........................................................................................... 3

      A.    Plaintiff's Claims Against the IISD are Untimely and Must Be Dismissed. ................ 3

            1.    Plaintiffs had clear notice of the separate IISD action....................................... 3

            2.    Rule 54(b) does not apply. ................................................................................ 5

            3.    No equitable basis excuses Plaintiffs' untimely filing....................................... 5

      B.    The IISD is Not Liable for the Alleged Denial of FAPE.............................................. 8

V.      CONCLUSION ................................................................................................. 12

i

# INDEX OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................................... 2

*Cf. Sidney Coal Co. v. Soc. Sec. Admin.*, 98 F. App'x 378, 380 (6th Cir. 2004) ........................... 5

*D.L., et al. v. Michigan Department of Education*, Case No. 22-cv-838 (W.D. Mich., Sept. 24, 2025) ................................................................................................................................ 9, 10

*Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541-548-49 (2019) ....................................................... 6

*Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 955 (4th Cir. 1997) ........................................... 13

*Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 739 (W.D. Mich. 2014) .......................................... 6

*Jackson v. United States*, 751 F.3d 712, 719-20 (6th Cir. 2014) ................................................... 7

*L.G. obo G.G. v Kelloggsville Public Schools*, 1:24-cv-833, (W.D. Mich. March 16, 2026) (Jonker) (ECF No. 76) .............................................................................. 3, 6, 7, 8, 10, 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ............................ 1

*Mcqueen v. Colorado Springs School District No. 11*, 488 F.3d 868, 870 (10th Cir. 2007) .......... 7

*Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993) ................................................. 2

*Northport Pub. Sch. v. Woods*, No. 1:11-CV-982, 2013 WL 435962, at *2 (W.D. Mich. Feb. 4, 2013) ............................................................................................................................. 6

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) ............................................ 1

*Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025) ................... 8, 9, 10, 12

**Statutes**

1751(b) ...................................................................................................................................... 10

370.1711(1)(a) .......................................................................................................................... 10

380.1711(i) ................................................................................................................................ 10

380.1751(a)(b) .......................................................................................................................... 10

Mich. Comp. Laws. § 380.1751 ................................................................................................. 10

**Other Authorities**

20 U.S.C. § 1401(5) .................................................................................................................... 1

20 U.S.C. § 1415(i) ...................................................................................................................... 9

20 U.S.C. § 1415(i)(2) ........................................................................................................... 12

20 U.S.C. § 1415(i)(2)(A), (B) ................................................................................................ 6

20 U.S.C. § 1415(i)(2)(B) ...................................................................................................... 1, 3

Rules
Fed. R. Civ. P. 56(c) ............................................................................................................... 1

Rule 54(b) ............................................................................................................................... 5

ClarkHill\19511\1007360\287560282.v1-4/27/26

## I.    INTRODUCTION

Defendant/Appellee/Respondent Ingham Intermediate School District ("IISD") moves for summary judgment on Count I of Plaintiff/Appellant/Petitioner Henke's complaint. Count I is barred as a matter of law because Plaintiffs failed to initiate this civil action within the 90-day limitations period set forth in 20 U.S.C. § 1415(i)(2)(B). The administrative record confirms that Plaintiffs asserted claims against the IISD were separate and distinct from those asserted against East Lansing Public Schools ("ELPS"), yet Plaintiffs did not timely seek judicial review as to the IISD. There is no genuine dispute of material fact on this issue, and summary judgment is required.

Even if Plaintiffs' claims were timely, summary judgment in favor of the IISD remains warranted. For purposes of the IDEA, the IISD functions as an Educational Service Agency ("ESA"), defined as a "regional public multiservice agency" authorized to develop, manage, and provide programs or services to local educational agencies. 20 U.S.C. § 1401(5). The IISD does not bear responsibility for providing a free appropriate public education ("FAPE") to individual students enrolled in constituent districts. Accordingly, there is no genuine dispute of material fact as to the IISD's lack of liability for the alleged denial of FAPE to P.H. and Count I must be dismissed.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings and evidence show that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Once that burden

is met, the non-moving party must present significant probative evidence establishing a genuine issue for trial and may not rest on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993).

### III.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff minor P.H. is an eight-year-old student eligible for special education under the IDEA. (ECF No. 8, PageID.209, ¶ 2). At all relevant times, ELPS was P.H.'s district of residence and the entity responsible for providing P.H. with a FAPE. (ECF No. 8, PageID.209, ¶ 4).

Plaintiffs enrolled P.H. in ELPS on or about August 23, 2023. ELPS completed a Transfer of Student With Disability identifying itself as the resident district responsible for implementation. (ECF No. 28-1/2, Exhibit D). Subsequent IEPs dated September 13, 2023, and March 5, 2024, likewise identified ELPS as the entity responsible for implementation. (ECF No. 28-1/2, Exhibits E, F). The March 2024 IEP was not implemented because Plaintiffs unilaterally placed P.H. in a private placement. (ECF No. 27-1, Decision and Order, p. 13).

On December 2, 2024, Plaintiffs filed due process complaints against ELPS, Haslett Public Schools, and the IISD. (ECF No. 8, PageID.213, ¶ 30). These complaints were separately docketed by MOAHR under distinct case and docket numbers. (ECF No. 26-16, Order Packet).

The IISD moved to dismiss the complaint against it on December 13, 2024. (ECF No. 26-11). Plaintiffs opposed the motion and, in doing so, acknowledged the separate docketing of the IISD proceeding. (ECF No. 26-5). On January 30, 2025, the ALJ issued an order granting the IISD's motion and dismissing the IISD proceeding with prejudice. (ECF No. 26-1). The ALJ further ordered that the matter would proceed only against ELPS under its originally assigned docket.

2

ClarkHill\19511\1007360\287560282.v1-4/27/26

Following that order, all subsequent filings and proceedings were conducted solely under the ELPS docket. Plaintiffs likewise submitted separate administrative records to this Court reflecting the distinct proceedings.[1]

Plaintiffs filed this civil action on June 20, 2025 – 141 days after dismissal of the IISD proceeding. (ECF No. 1).

## IV.    LEGAL ANALYSIS

### A.    Plaintiff's Claims Against the IISD are Untimely and Must Be Dismissed.

There is no genuine dispute of material fact that Plaintiffs failed to file this action within the 90-day period required under 20 U.S.C. § 1415(i)(2)(B). The ALJ dismissed the IISD proceeding on January 30, 2025. The 90-day period expired on April 30, 2025. Plaintiffs did not file this action until June 20, 2025.

Although the Court previously characterized the 90-day deadline as a claims-processing rule, that distinction does not alter the outcome. Even when non-jurisdictional, such rules are mandatory when properly invoked and must be enforced absent a valid basis for equitable relief. As recognized in *L.G. obo G.G. v Kelloggsville Public Schools*, 1:24-cv-833, (W.D. Mich. March 16, 2026) (Jonker) (ECF No. 76), a plaintiff's failure to comply with the 90-day deadline requires dismissal where equitable tolling does not apply.

#### 1.    *Plaintiffs had clear notice of the separate IISD action.*

The record developed in this case confirms that Plaintiffs initiated three distinctly docketed actions against three different entities. First, on December 2, 2024, Plaintiffs brought distinct actions against ELPS, Haslett Public Schools and the IISD. (ECF No. 8, PageID.213, ¶ 30). The

---

[1] ECF-26 consists of the record which was developed under Docket No. 24-034589 in the action against the IISD. In contrast, ECF-27 through 29, reflects the administrative record which was developed under Docket No. 24-034587 in the action against ELPS. The action as against Haslett Public Schools was not submitted to the Court.

ClarkHill\19511\1007360\287560282.v1-4/27/26

first Order issued by MOAHR gave separate docket and case numbers to each distinct action. (ECF No. 26-16., Order Packet). After which, Plaintiffs promptly utilized the assigned docket numbers for the respective actions against ELPS, Haslett Public Schools and the IISD. (ECF No. 26-14, Petitioner Objections to Issues for Hearing).

Second, the ALJ issued an Order Regarding Timelines and an Order Scheduling Prehearing Conference which delineated the docket numbers for the respective actions against ELPS, Haslett Public Schools and the IISD. (ECF No. 26-16, Order Packet). Third, the IISD filed a motion to dismiss Plaintiff's separately docketed complaint on December 13, 2025. (ECF No. 26-11, IISD's Motion to Dismiss). On January 17, 2025, after filing an amended complaint which voluntarily dismissed the action as against Haslett Public Schools, Plaintiff filed their brief in opposition to the IISD's motion to dismiss. (ECF 26-5, Petitioner's Brief in Opposition). The caption, as filed by Plaintiff, acknowledged the distinct and separate dockets against ELPS and the IISD. *Id.*

Finally, the ALJ issued a Decision and Order Granting Respondent Ingham Intermediate School District's Motion to Dismiss ("IISD Decision") on January 30, 2025. (ECF 26-1, Order Granting Respondent IISD's Motion to Dismiss). In doing so, the ALJ expressly dismissed case 24-034589 as against the IISD. *Id.* The ALJ further ordered "…that this matter shall proceed to hearing against only Respondent East Lansing Public Schools in case 24-034587." *Id.*

Plaintiffs knew that there were three different complaints at issue – the hearing against ELPS was assigned Docket No. 24-034587 and Case No. DP-24-0100. (ECF No. 26-16, Order Packet). The hearing against Haslett Public Schools was assigned Docket No. 24-034588 and Case No. DP-0101. *Id.* The hearing against the IISD was assigned Docket No. 24-034589 and Case No. DP-0102. *Id.* This was readily recognized in the pleadings submitted by Plaintiffs' counsel

4

throughout the process and clearly evidenced after their voluntary dismissal as against Haslett

Public Schools and after entry of the Order dismissing the action as against the IISD.

Plaintiffs' acknowledgment of the distinct and separate underlying actions is further

evidenced by the submission of the administrative record by Plaintiffs before the Court. ECF-26

consists of the record which was developed under Docket No. 24-034589 in the action against the

IISD. In contrast, ECF-27 through 29 reflects the administrative record which was developed under

Docket No. 24-034587 in the action against ELPS. There is no material issue of fact that Plaintiffs

were on notice of and acknowledged the existence of three complaints against ELPS, Haslett

Public Schools and the IISD.

### 2. *Rule 54(b) does not apply.*

Rule 54(b) governs a single action involving multiple claims or multiple parties. It permits

entry of final judgment as to fewer than all claims or parties within that single action. This case,

however, involved three separately docketed administrative actions. *Cf. Sidney Coal Co. v. Soc.*

*Sec. Admin.*, 98 F. App'x 378, 380 (6th Cir. 2004) (First step in the Rule 54(b) determination is

that a "district court must expressly 'direct the entry of final judgment as to one or more but fewer

than all the … parties' in a case.").

This Rule is inapplicable here because there were three separate actions, one against ELPS,

one against Haslett Public Schools, and one against the IISD. In the action against the IISD, there

was only one party. Because the IISD proceeding was a standalone action involving only the IISD,

the ALJ's dismissal fully resolved that action. Rule 54(b) therefore has no application.

### 3. *No equitable basis excuses Plaintiffs' untimely filing.*

Plaintiffs can avoid dismissal only if equitable tolling or estoppel applies. It does not. The

IISD Decision was a final order in the separately docketed complaint against the IISD. The 90-day

window began to run following the IISD Decision issuance. IDEA permits an aggrieved party to

file a civil action within 90 days of the date of the decision. 20 U.S.C. § 1415(i)(2)(A), (B). See also *Northport Pub. Sch. v. Woods*, No. 1:11-CV-982, 2013 WL 435962, at *2 (W.D. Mich. Feb. 4, 2013). The facts in the Complaint, and the ALJ decisions, are clear that Plaintiffs failed to timely appeal the dismissal of their separately docked due process complaint against the IISD by April 30, 2025, which was the 90th day following issuance of the decision. *L.G. obo G.G. v Kelloggsville Public Schools,* 1:24-cv-833, at *8 (W.D. Mich. March 16, 2026) (Jonker) ("At that point Plaintiff's claims against the ISD were exhausted, and the ninety-day clock began running."); see also *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541-548-49 (2019) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it.") (citation omitted).

The IISD has not waived or forfeited the issue that the Plaintiff failed to timely file this civil action with respect to the IISD because it sought dismissal under 12(b) at the start of this case. Accordingly, Plaintiffs can avoid dismissal only if equitable tolling or estoppel applies. Plaintiffs asserted in their response to the IISD's motion to dismiss that "Plaintiffs were prevented from filing an appeal until the Hearing Officer's final ruling on their remaining claims against ELPS." (ECF No. 17, PageID. 681). But as explained, *supra*, there is no dispute that not only were three actions initially initiated by Plaintiffs, but that distinction was readily recognized throughout the posture of the underlying actions by Plaintiffs, up through submission of the distinct and separate administrative records before the Court.

As recently held in *Kellogsville*, in evaluating the availability of equitable reasons to excuse a late filing under these facts, the Court must engage with the five factors of equitable tolling discussed in *Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 739 (W.D. Mich. 2014). Namely,

> To determine whether equitable tolling is available to a plaintiff, a
> court considers five factors: (1) the plaintiff's lack of notice of the

6

> filing requirements; (2) the plaintiff's lack of constructive knowledge of the filing requirements; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

*Id.* (citing *Jackson v. United States*, 751 F.3d 712, 719-20 (6th Cir. 2014)). None of these factors support tolling here. Plaintiffs had actual and repeated notice of the separate IISD proceeding, actively litigated that proceeding, and received a final order expressly advising of the 90-day deadline, and MOAHR maintained a distinct and separate administrative record unique to that docket. Plaintiffs' decision to wait until completion of the separate ELPS proceeding does not constitute diligence, nor does it render their delay reasonable.

In Plaintiff's response to the IISD's motion to dismiss, Plaintiff endeavored to justify the delay by compared this case to *Mcqueen v. Colorado Springs School District No. 11*, 488 F.3d 868, 870 (10th Cir. 2007), which found the plaintiff had failed to exhaust IDEA claims by filing suit in a bifurcated proceeding before resolution of both proceedings. (ECF No. 17, PageID 677). As recently analyzed by the Court in *Kellogsville*,

> The first round of proceedings in *McQueen* involved a question of law of whether the state system at issue facially violated the IDEA. The second round focused on whether the individual student participating in that system had been denied a FAPE, an issue not addressed in the first round. Plaintiff in *McQueen* filed suit after losing the first round and without waiting for completion of the second round. The Tench Circuit Court of Appeals concluded that the plaintiffs had failed to exhaust their claims. Plaintiff concludes, therefore that had she filed against Kent ISD before the ALJ issued a decision as to whether G.G. received a FAPE, the lawsuit would have been dismissed for lack of exhaustion.

*Kelloggsville*, 1:24-cv-833, at *10 (W.D. Mich. March 16, 2026) (Jonker) (ECF No. 76). However, *McQueen* is inapposite. Unlike the bifurcated but interdependent proceedings in *McQueen*, the ALJ here assigned distinct dockets and maintained separate administrative records, only one of

which named the IISD as a party. The IISD proceeding was fully resolved upon entry of the January 30, 2025, Order.

As in *Kelloggsville*, where the ALJ resolved the case against the ISD in its entirety with entry of the Order dismissing Kent ISD, the ALJ resolved the case against the IISD when it issued its decision on January 30, 2025. (ECF 26-1, Order Granting Respondent IISD's Motion to Dismiss). Notably, the Order only identifies Plaintiffs and the IISD as parties and the only listed Docket No. 24-034587 is for the action as against the IISD. In addition, the Order concludes by noting that **"[a] party aggrieved by this decision may seek judicial review by filing an action in a court of competent jurisdiction within 90 days of the date of this order."** *Id* (emphasis in original). In sum, as in *Kelloggsville*, Plaintiffs waited too long to bring an IDEA claim against the IISD and equitable tolling does not apply based on the facts of this case.

**B.    The IISD is Not Liable for the Alleged Denial of FAPE.**

Even if Plaintiffs' claims were timely, summary judgment remains appropriate because the IISD is not responsible for providing FAPE to P.H.

In *Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025), the Sixth Circuit reaffirmed that local school districts – not supervisory entities – bear responsibility for providing educational services to students with disabilities. The Court rejected claims that the Michigan Department of Education ("MDE") could be held liable for a local school district's alleged violation of Title II of the ADA. In doing so, the Court first noted the general rule that local school districts, not the MDE, "undertake general responsibility for public education[.]" *Id.* at 870. The Court reviewed the various state statutes applicable to local school district board of education decisions. *Id.* And because they are separate political entities, local school districts are amenable to suit because they "remain responsible to their local electorates" and "operate their school largely as they see fit[.]" *Id.* (citations omitted). In *Y.A.*, plaintiffs' allegations that a local

8

school district allegedly denied certain educational services or benefits did not create a claim against MDE. *Id.*

During its analysis, the Sixth Circuit rejected the argument that MDE could be vicariously liable for a local school district's failure. *Id.*, at 871. Within the ADA context, assessing liability against another public entity would eviscerate the distinction between a state and its various local instrumentalities. *Id.* MDE's role did not make it responsible for implementing IEPs or providing services to individual students.

The Court then examined this issue of supervisory liability in the context of IDEA per the plaintiffs' argument. *Id.*, at 872. The IDEA provided that the MDE had "general supervision" over local school districts to ensure compliance with the IDEA's requirements have a remedial process for parents to assert claims against a school. *Id.* The Court rejected the plaintiffs' contention that this framework meant that the MDE was responsible for a school's failures holding that "oversight alone does not transform a local school into a state school." *Id*. (citation omitted).

The Court recently applied *Y.A.* directly in the context of IDEA claims against the MDE. In *D.L., et al. v. Michigan Department of Education*, Case No. 22-cv-838 (W.D. Mich., Sept. 24, 2025) (ECF No. 103; Exhibit 3), the plaintiffs asserted that the MDE was liable under the IDEA, ADA and § 504 for the purported violations of those Acts by local school districts. The Court held that an action under 20 U.S.C. § 1415(i) (permitting a civil action from an adverse due process decision) "would have to allege and establish something more than IDEA noncompliance on the part of the local education agency." *Id.*, PageID. 2773. "Otherwise, the state would become liable for every failure by the local or intermediate school district in particular IDEA cases. That would effectively impose exactly the kind of *respondeat superior* liability on the State that the Sixth Circuit has been keen to avoid in *Hamtramck*." *Id.*

9

ClarkHill\19511\1007360\287560282.v1-4/27/26

Both *Y.A.* and *D.L.* control the legal issue here. Each held that the general rule is that a supervisory educational agency under IDEA cannot be held responsible for a local school district's alleged failure to provide FAPE or otherwise implement IDEA. The same conclusion was reached in *Kelloggsville*, where the Court rejected efforts to impose liability on an ISD for the alleged failure of a constituent district. *Kelloggsville*, 1:24-cv-833, at *1 (W.D. Mich. March 16, 2026) (Jonker) (ECF No. 76).

In *Kelloggsville*, the Court rightfully rejected efforts to impose responsibility for the provision of FAPE onto ISDs.

> But none of the authority Plaintiff cites leads to this conclusion. To the contrary, it simply sets out the ISD's role in the three-tier educational system in Michigan that reflects the ISD does not, in the usual course, directly provide special education services. Under Michigan law, is it the local school district – here KPS – that is responsible for "provid[ing] special education programs and services designed to meet the individual needs of each student with a disability in the district." Mich. Comp. Laws. § 380.1751. The school district can either operate the special education program or service, or it may contract with an ISD to deliver those programs or services. *Id.* at § 380.1751(a)(b).
>
> The ISD has the statutory responsibility to "develop, establish and continually evaluate and modify in cooperation with its constituent districts, a plan for special education that provides for the delivery of special education programs and services designed to meet the individual needs of each student with a disability." *Id.* at § 370.1711(1)(a). But the local school districts are the entities that actually implement this plan and actually provide special education services, either on their own or under contract with an ISD. *Id.* at §§ 380.1711(i); 1751(b). It is within this context that the cooperative agreement referenced by Plaintiff arises. **Nothing here, however requires an ISD to provide special education services to an individual student.**

*Id.* at * 11-12 (emphasis added).

In the instant action, Plaintiffs do not and cannot dispute that ELPS was the entity responsible for the provision of special education services to P.H. (ECF No. 8., PageID. 209, ¶ 4).

10

Plaintiffs' theory improperly attempts to assign simultaneous and independent responsibility for the provision of FAPE to ELPS and the IISD. But IDEA's structure does not permit such a result. Responsibility for providing FAPE is not shared in the abstract – it is assigned to a specific local educational agency charged with implementing the student's educational program. "The state's local educational agencies – typically, the local school district – must create an individual educational program ("IEP") addressing each disabled child's special needs. 20 U.S.C. § 1414(b)-(d)." *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.,* 615 F.3d 622, 625 (6th Cir. 2010).

The Court has recognized that the development and implementation of the IEP, which is the responsibility of the local school district, is the core of IDEA.

> As the Supreme Court observed, "[t]he core of the statute ... is the cooperative process that it establishes between parents and schools," and the "central vehicle for this collaboration is the IEP process." *Schaffer,* 546 U.S. at 53. "State educational authorities must identify and evaluate disabled children, 20 U.S.C. §§ 1414(a)-(c), develop an IEP for each one, § 1414(d)(2), and review every IEP at least once a year, § 1414(d) (4)." *Id.*

*Woods ex rel. T.W. v. Northport Pub. Sch.*, No. 1:09-CV-243, 2011 WL 1230813, at *2 (W.D. Mich. Mar. 31, 2011), *aff'd in part, vacated in part sub nom. Woods v. Northport Pub. Sch.*, 487 F. App'x 968 (6th Cir. 2012). In the case at bar, at all relevant times, ELPS was identified as the resident district and the entity responsible for implementation of P.H.'s IEP. The IISD, by contrast, functioned only in a supervisory and support capacity. Plaintiffs' attempts to impose liability on both entities at once collapses this distinction and would effectively render every supervisory agency liable for the actions of a local district. The law, as outlined above, does not support such a result. It is for this reason that MDE asserts that "[t]he responsibility for the provision of FAPE

11

rests with the ISDS only when they are functioning as the operating district." (ECF 20-1, MDE Memo, March 6, 2025).

Put simply, responsibility for the provision of FAPE cannot exist in two places at the same time. Here, the record is not ambiguous. ELPS was identified as the resident district and the entity responsible for implementation of P.H.'s IEP. (ECF No. 28-1/2, Exhibits D, E, and F). The IISD was never identified as the operating district in any of the disputed IEPs. Plaintiffs cannot maintain a theory under which both entities are simultaneously liable when the statutory scheme assigns responsibility to one.

## V.    CONCLUSION

Plaintiffs do not and cannot dispute that they filed this action on June 20, 2025 - well beyond the April 30, 2025, deadline under 20 U.S.C. § 1415(i)(2). The administrative record reflects a separately docketed proceeding against the IISD that was fully resolved on January 30, 2025. Plaintiffs had clear notice of that disposition and the applicable deadline. No equitable basis exists to excuse their untimely filing.

Even if the Court were to excuse Plaintiffs' failure to comply with the statutory deadline, the undisputed record establishes that the IISD was not responsible for the provision of special education services to P.H. and cannot be held liable for the alleged denial of FAPE. The Sixth Circuit's decision in *Y.A.* by *Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir.), precludes a finding of supervisory liability against the IISD. And as held recently in *Kelloggsville*, "[w]hat this means for establishing liability is that a plaintiff must demonstrate the entity named as a defendant had the responsibility to actually provide the special education services to the student and failed to do so, constituting the denial of a FAPE." *Kelloggsville*, 1:24-cv-833, at *12 (W.D. Mich. March 16, 2026) (Jonker) (citing *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 955 (4th

ClarkHill\19511\1007360\287560282.v1-4/27/26

Cir. 1997). Plaintiff cannot demonstrate that the IISD was responsible to actually provide special education services to P.H. and failed to do so.

For both independent reasons, summary judgment in favor of the IISD on Count I is required.

Respectfully submitted,

CLARK HILL, PLC

Dated: April 27, 2026                    By: _____

Jordan M. Bullinger (P72441)
*Attorneys for Petitioner*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the type-volume limitations of L.Civ. R. 7.2(b)(ii). The motion and brief were prepared in Microsoft Word 365, using a Times New Roman 12 pt. font. Microsoft Word 365 has a function that calculates the number of words in a document. According to that function, there are 4,474 words in the motion and brief.

## CERTIFICATE OF SERVICE

The undersigned certifies that he electronically filed the foregoing document with the clerk using the Court's Electronic Filing System on April 27, 2026, which will send notification of such filing to all parties and/or attorneys of record; and a courtesy copy was mailed to Judge Jarbou.

|    |    |    |    |
|----|----|----|----|
| X | U.S. Mail | _____ | Facsimile |
| X | E-Filing | _____ | Hand Delivery |
| _____ | E-Mail | _____ | Federal Express |

Respectfully submitted,

CLARK HILL, PLC

Dated: April 27, 2026                    By: _____

Jordan M. Bullinger (P72441)
*Attorneys for Petitioner*

13

ClarkHill\19511\1007360\287560282.v1-4/27/26