## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHRISTINE HENKE and RICH HENKE
o/b/o P.H.,

                Plaintiffs/Appellants,

v.

EAST LANSING PUBLIC SCHOOLS and,
INGHAM INTERMEDIATE SCHOOL
DISTRICT,

                Defendants/Respondents.

Case No:     1:25-cv-680

Hon. Hala Y. Jarbou

_____/

Elizabeth K. Abdnour (P78203)
Megan N. Mitchell (P87213)
Jacquelyn N. Kmetz (P83575)
Abdnour Weiker, LLP
*Attorneys for Plaintiffs*
325 E. Grand River Ave., Ste. 250
East Lansing, MI  48823
(517) 994-1776
liz@education-rights.com
megan@education-rights.com
jacquelyn@education-rights.com

Michele R. Eaddy (P41871)
Erin H. Walz (P55484)
Thrun Law Firm, P.C.
*Attorneys for Defendant East Lansing P.S.*
2900 West Road, Ste. 400
P.O. Box 2575
East Lansing, Michigan 48826-2575
(517) 484-8000
meaddy@thrunlaw.com
ewalz@thrunlaw.com

Jordan Bullinger (P72441)
Maddison Moser (P86518)
Clark Hill, PLC
*Attorneys for Defendant Ingham ISD*
200 Ottawa Ave NW, Suite 500
Grand Rapids, MI 49503-2426
(616) 608-1146
jbullinger@clarkhill.com
mmoser@clarkhill.com

_____/

<u>DEFENDANT EAST LANSING PUBLIC SCHOOLS'</u>
<u>MOTION FOR SUMMARY JUDGMENT &</u>
<u>BRIEF IN SUPPORT  [IDEA APPEAL]</u>

THRUN
LAW FIRM, P.C.

# TABLE OF CONTENTS

I.      Introduction ...................................................................................................... 2

II.     Statement of Facts ............................................................................................ 2

III.    Procedural Background ..................................................................................... 8

IV.     Issues on Appeal .............................................................................................. 9

V.      Standard of Review ........................................................................................ 10

VI.     Legal Argument .............................................................................................. 11

  A.    The District Provided Student with a FAPE. .............................................. 11

    1.    The District Provided Student With the Supports Listed in His IEPs. ........ 11

  B.    The District Educated Student in the LRE. ................................................. 17

  C.    Respondent Appropriately Used Seclusion One Time for the Safety of Student and in Accord with Michigan Law. ................................................. 20

  D.    Plaintiffs Failed to Preserve Disagreement with the ALJ's Identification or Clarification of Hearing Issues. ................................................................. 22

  E.    The Decision is Supported by a Preponderance of the Evidence. ................ 27

  F.    The Decision Properly Interpreted and Relied on Relevant Law. ................ 27

VII.    Conclusion ..................................................................................................... 29

THRUN
LAW FIRM, P.C.

# INDEX OF AUTHORITIES

**Cases**

*Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) ................................26

*Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005) ...............................26

*Bd. of Ed. v Rowley*, 458 U.S. 176, 188-89 (1982) ................................................ 27, 28, 29

*C. K. v Sylvania City Sch. Dist.*, 2022 U. S. App. LEXIS 25360, *35 (6th Cir., 2022).....10

*Deal v Hamilton County Board of Education*, 792 F.3d 840 (6th Cir. 2004)......... 27, 28, 29

*Endrew F. v Douglas Co. Sch. Dist.*, 137 S. Ct. 988 (2017).............................................28, 29

*Endrew F. v Douglas County School District*, 580 U.S. 386 (2017).......................................27

*L. H. v Hamilton Cnty. Dep't of Educ.*, 900 F. 3d 778, 790 (6th Cir., 2018) ....................10

*Letter to Dempsey*, 13 FAB 32 (FPCO 2009) ........................................................................15

*Letter to Thomas* (FPCO 1986) ...............................................................................................15

*Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1299 (6th Cir. 1992).........................................26

*Owasso Indep. Sch. Dist. No. 1-011 v. Falvo*, 122 S. Ct. 934 (2002)....................................16

*McKay v. Sch. Bd. of Avoyelles Parish*, 2015 WL 9236989 (W.D. LA 2015) ......................16

*Somberg v Utica Cmty. Schs.*, 908 F. 3d 162, 172 (6th Cir., 2018) .....................................10

**Regulations**

34 C.F.R. §300.516(c)................................................................................................................10

34 CFR § 300.611(b) .................................................................................................................16

34 CFR § 99.3.............................................................................................................................16

34 CFR 500.11(d) ......................................................................................................................27

## **<u>DEFENDANT EAST LANSING PUBLIC SCHOOLS'</u>**

## **<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant East Lansing Public Schools moves this Court for summary judgment pursuant to the Individuals with Disabilities Education Act (IDEA), Federal Rule of Civil Procedure 56, and Local Rules of the United States District Court for the Eastern District of Michigan, Rule 7.1. This Motion is supported by the following Statement of Facts, Brief in Support, and administrative record.

<u>**DEFENDANT EAST LANSING PUBLIC SCHOOLS'**</u>

<u>**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**I.      Introduction**

Defendant East Lansing Public Schools ("District") moves this Court for summary judgment in this IDEA appeal. The administrative record before the Court evidences that the law and the preponderance of the evidence support affirming the March 24, 2025 Decision and Order ("Decision") of the administrative agency in the underlying due process, which held for the District on all claims.

**II.      Statement of Facts**

Plaintiffs Christine and Rich Henke ("Parents") began Student P.H. ("Student") at the District's Marble Elementary School ("Marble") in August 2023, where he attended from August 2023 – March 2024. ECF 27, Tr 174; ECF 28, Exhs W, G. Before the start of the school year, Marble's principal, Josh Robertson, and social worker, Michelle Miller-Hogan, learned that Student would be coming to Marble for the 2023-24 school year. ECF 27, Tr 34, 461-62, 894-95. They met with Parents, Student's outside ABA providers, and arranged for Student to visit Marble to become acquainted with the building and staff. *Id.*

2

Parents informed Robertson and Miller-Hogan from the first meeting that they would only allow Student to attend school a partial day at Marble, as they had him in outside ABA therapy every afternoon. ECF 27, Tr 42, 462-63, 903; ECF 28, Exh E, 2.

At the outset, Student attended school from 8:40 a.m. – 11:00 a.m. ECF 27, Tr 44. When Student "graduated" from his ABA program in November 2023, he attended school from 8:45 a.m. until 1:00 p.m. every day, still a shortened day at Parents' request. *Id.*, Tr 44-45, 835-36. The District offered Student a full-day FAPE at all times, but respected Parents' right to remove Student for their preferred outside therapy. ECF 28, Exh E, 2; Exh F, 2.

From August until December 2023, Student made progress in his educational placement. *See*, *e.g.*, ECF 27, Tr 470, 546-49, 618-21, 827-29, 915; ECF 28, Exhs I; Exh U, 3, 12; Exh V, 18. He spent part of his day in general education, participated in group and individual therapies and activities, participated in school events, and made progress on his IEP goals. *Id.*; *see also* ECF 27, Tr 468-69, 709-13.

Miller-Hogan provided Student with his social work services. ECF 27, Tr 915-19. She testified that Student engaged in his social emotional work with her, she provided the social work minutes in his IEP, and he made progress. *Id.*, Tr 905-06, 915, 918, 929-30.

Student's social work services were increased when he enrolled in the District to 1-2 times per week, 20-35 minutes per session. ECF 28, Exh E, 10. In March 2024, the District again increased Student's social work to 1-5 times per week, 20-50 minutes per session. *Id.*, Exh F, 10.

In December 2023, Parent informed Marble staff that Student had a "complete breakdown" at home, but this was not evidenced at school. ECF 27, Tr 146-47; ECF 28, Exh V, 15. At school, Student started to use the bathroom more frequently but it was not a dramatic change and he remained engaged in his education. ECF 27, Tr 730-31, 878-90, 907, 957; ECF 28, Exh U, 12.

Marble administrators had a virtual meeting with Parents about Student's use of the bathroom and how they would address it with Student. ECF 27, Tr 907, 948-50.

Marble went on winter break on December 22, 2023. ECF 28, Exh W.

When school resumed after winter break on January 8, 2024, Parent informed Marble staff that Student would not come to school and had exhibited aggressive behavior at his grandmother's house. *Id.*, Exh V, 22-23. On January 9, 2024, Parent came to school with Student and informed Marble staff she had negotiated with Student to have a short day in the Marble conference room with her to get him to school. *Id.*, Exh V, 19. Marble accommodated Parent's compromise with Student.

Parent continued to negotiate with Student for him to have shortened days in specific (non-classroom) locations with her, in her efforts to get him to school. ECF 28, Exh V, 25-28. Also around this time, Student refused to go into his general education classroom. ECF 27, Tr 744-47, 836-37, 911-13. Student balked at participating in any aspect of his education unless Parent accompanied him. *Id.*, Tr 474-75. However, Student struggled to engage in his education and knowing his mother was waiting in the hallway seemed to exacerbate this. *Id.*, Tr 474-75; ECF 28, Exh P, 18-20.

Unbeknownst to the District, as Parent walked Marble's halls with Student on February 9, 2024, Student ran from her. Parent eventually found him hidden in a STEAM classroom. Contrary to Parent's testimony, District staff were not part of this incident; it occurred entirely between Parent and Student. *See* ECF 27, Tr 77-78, 643-45.

On February 12, 2024, Robertson and Miller-Hogan informed Parent that they needed to wean Student off of her attending school with him. ECF 28, Exh P, 12. Marble staff first arranged for Student to go to his various services and check-in with his mother in the office in between. *Id.*, Exh P, 3, 18-20. With this change, the Marble team continued to work with Student and Parent at school to get Student back to the success he had prior to winter break. ECF 27, Tr 472, 798, 870, 886.

On February 27, 2024, Student was upset about choices he was given and argued with his mother. ECF 27, Tr 928-29. Student exited Marble, albeit with his mother's hands on him at all times. *Id.* Marble staff assumed positions to assist Parent in getting Student back into the building. *Id.* Miller-Hogan joined Parent and Student at the bus stop across the street from Marble, and they were eventually able to walk Student back into Marble. *Id.*

An IEP meeting was held on March 5, 2024. ECF 28, Exh F. Parents attended this meeting with their advocate, who is their attorneys' employee. ECF 27, Tr 212. District Director of Special Education, Nick Hamilton, attended this meeting to assist the team with problem-solving Student's new behaviors and discuss Parents' expressed desire to have Student placed in a self-contained autism program. *Id.*, Tr 795-97. Hamilton explained to Parents the mechanics of moving a student to a more restrictive environment. *Id.* He also told Parents that Student needed to be in school for the District to gather data for a placement change and a functional behavior assessment (FBA). *Id.*, Tr 799-802. Parents were adamant that they wanted Student moved to a self-contained program immediately. *Id.*, Tr 802.

On March 6, 2024, Student was in Miller-Hogan's office when he became escalated. ECF 27, Tr 487-89, 930-31. Student began destroying property in Miller-Hogan's office. *Id.* Parent was in the front office and aware of the events unfolding in

Miller-Hogan's office. ECF 27, Tr 489-90, 931-32. Robertson was with Student, while Miller-Hogan was in and out, trying to assist with de-escalation and advising Parent of what was happening. *Id.*, Tr 487-88, 931-32.

Student eventually started banging on a six-foot glass window to try to break it. ECF 27, Tr 931:4-6. Miller-Hogan went to see Parent and told her that she and Robertson were going to use the seclusion space to keep Student safe; Parent indicated she understood and agreed. *Id.*, Tr 931-32. Miller-Hogan and Robertson used a CPI transfer to walk Student out the back of the office to the seclusion space. *Id.*, Tr 490-91.

As Robertson entered the behavior room in which the seclusion space is located, Parent also entered the room very escalated, yelled curse words and informed Robertson that they could only keep Student in the seclusion space for two minutes. ECF 27, Tr 493. Robertson complied and at the two-minute mark informed Student he was done and leaving with his mother, which prompted Student to immediately calm and walk out with Robertson. *Id.*, Tr 494.

Following this event, Student checked in with Parent and resumed his schedule; next up was a snack. ECF 27, Tr 495. After snack, Student's special education teacher talked to him about the school work he needed to do. *Id.* Student again escalated and again began destroying property, grabbed scissors, and hit Robertson on the head. *Id.*,

7

Tr 496-97. Parent signed Student out of school and took him home at this time. *Id.*, Tr 497.

Student's last day at Marble was March 6, 2024. He has not attended school in the District since.

Evidence at hearing revealed that Parents moved to Ohio [and sought reimbursement for moving expenses as a remedy in due process] so as to enroll Student in a private autism school, The Learning Spectrum. ECF 26, Doc. 17; ECF 27, Tr 129. At The Learning Spectrum, from August to November 2024, Student was secluded at least eight times and restrained approximately 36 times. ECF 28, Exh 56.

Parents withdrew Student from The Learning Spectrum and enrolled him in an Ohio public school district where he started in December 2024. *Id.*, Exh 51, 384. Parents testified that as of the hearing in February 2025, Student was having the best two months of his school career at the Ohio school district. ECF 27, Tr 248; 268-69. Student's school day consisted of one hour in a room with three adults to manage his behavior and no peers. *Id.*, Tr 260; ECF 28, Exh 52, 413.

## III.    Procedural Background

This action originated as a due process complaint under the Individuals with Disabilities Education Act (IDEA) filed by Plaintiffs Christine Henke and Rich Henke on behalf of their minor son, P.H., against Defendant East Lansing Public Schools,

8

Haslett Public Schools, and Ingham Intermediate School District ("IISD") on December 2, 2024. Haslett Public Schools was dismissed by order of January 15, 2025, and IISD was dismissed by order of January 30, 2025. Parents and the District proceeded to hearing, which was held February 10–14, 2025. The administrative law judge (ALJ) issued the March 24, 2025 Decision.

## IV. Issues on Appeal

Plaintiffs plead the following issues on appeal to this Court:

A. Whether Defendants provided Student with a FAPE. ECF 8, ¶207.

B. Whether the Administrative Law Judge (ALJ) properly dismissed Ingham ISD from the due process case. *Id.*, ¶209.

C. Whether the ALJ improperly "modified," "clarified," and "narrowed" Plaintiffs' issues for hearing in the due process case. *Id.*, ¶210.

D. Whether the ALJ failed to consider Plaintiffs' amended due process complaint. *Id.*, ¶211.

E. Whether "[t]he March 24 order's findings are not supported by a preponderance of the evidence." *Id.*, ¶212.

F. Whether "[t]he March 24 order contains errors of law due to a failure to properly interpret the IDEA and relevant caselaw." *Id.*, ¶213.[1]

Each of these issues is addressed below.

---

[1] Plaintiffs' appeal issue of whether the Administrative Law Judge (ALJ) properly dismissed Ingham ISD from the due process case is not addressed by the District. *See*, ECF 8, ¶209.

**V.    Standard of Review**

The IDEA provides that when an "aggrieved party" appeals a final due process decision, the court:

1. Receives the records of the administrative proceedings.

2. Hears additional evidence at the request of a party.

3. Basing its decision on the preponderance of the evidence, grants the relief that the court determines appropriate.

34 C.F.R. §300.516(c).

In the Sixth Circuit Court of Appeals, federal district courts review the state administrative decision under a modified *de novo* standard, which requires the court to "make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings." *C. K. v Sylvania City Sch. Dist.*, 2022 U. S. App. LEXIS 25360, *35 (6th Cir., 2022), citing to *Somberg v Utica Cmty. Schs.*, 908 F. 3d 162, 172 (6th Cir., 2018). This Court must defer to the findings of school officials "on matters of substantive educational methodology" when "the finding is based on educational expertise." *L. H. v Hamilton Cnty. Dep't of Educ.*, 900 F. 3d 778, 790 (6th Cir., 2018).

The Court will find, upon its review of the administrative record, that the law and the evidence support the Decision.

## VI.    Legal Argument

### A. The District Provided Student with a FAPE.

The FAPE issues addressed at hearing are not the same as those Plaintiffs now seek to appeal. The FAPE hearing issues are each addressed below. As to those issues not addressed at hearing, Plaintiffs have waived those issues as discussed in Section D.

#### 1.  The District Provided Student With the Supports Listed in His IEPs.

Plaintiffs failed to meet their burden of proof as to this issue. The Decision credibly held that all evidence supported that the District provided Student with the supports and services in his IEPs. ECF 27, Doc. 1, 18. Plaintiffs offered no evidence to satisfy their burden of proof on this issue.

Student's speech language services were provided by Stephanie Francisco, a speech therapist with a master's degree in communicative sciences and disorders who had worked at the District for ten years. ECF 27, Tr 534-36.

Francisco testified that at Student's September 13, 2023 IEP meeting, she recommended direct speech therapy services for Student based on her observations and input from the classroom teacher. *Id.*, Tr 543-44. Thus the District offered Student direct speech services with 25-minute sessions 4-5 times per month. ECF 28,

11

Exh E, 10. Francisco testified that she saw Student for speech on Fridays and that he really enjoyed coming to speech. *Id.*, Tr 546, 548.

Francisco testified that she did not keep formal data sheets, but took personal notes based on her observations, which she then used to complete quarterly progress reports. *Id.*, Tr 579. Francisco provided Parents with progress reports on November 15, 2023, and again on March 1, 2024. ECF 28, Exh. I.

Francisco credibly testified that she regularly provided services to Student and that after the holiday break, she and the rest of his providers were flexible as to when they saw Student so that they could provide his services even though he was not attending school as regularly or for as long each day. ECF 27, Tr 556-57.

Between August and December, Francisco saw Student make progress in both one-on-one sessions with her and when he attended speech with a peer. *Id.*, Tr 548. After the holiday break, she saw limited progress because he presented very differently when he returned. Despite the change, Student continued to attend speech services regularly. *Id.*, Tr 556.

Student's occupational therapy services were provided by Stacy Turke, an occupational therapist with Ingham County Intermediate School District assigned to the District since 1994. She has been a school-based occupational therapist for approximately 39 years. *Id.*, Tr 602-03.

During the 2023-24 school year, Turke provided services at Mable Elementary School on Fridays. ECF 27, Tr 605. Between the beginning of the school year and the IEP meeting on September 13, 2023, Turke provided the services indicated on the transfer IEP, reviewed Student's prior school records, and determined his primary areas of need. *Id.*, Tr 606, 608. Turke testified that she focused on a skill in a need area for fall semester and Student made significant progress. ECF 28, Exh E, 7, Exh I, 2; ECF 27, Tr 610-11; 613; 618-19.

Turke testified that her general practice is to jot down notes during sessions and then input the information into the MiPSE log the same day. ECF 27, Tr 627-28. In Student's case, she also sent raw data home to Parents after each session during the fall because Student asked her to do so and was excited by the data collection. *Id.*, Tr 616-18.

Student's September 13, 2023 IEP called for three occupational therapy sessions per month. ECF 28, Exh E, 10. Turke provided occupational therapy services to Student on Fridays and entered thorough details about sessions in the MiPSE system. *Id.*, Exh 6.

Turke testified that when Student returned from the holiday break, he was very different than before break. During his first occupational therapy session in January, when she asked him to grasp a writing tool, he "became" a robot and told her that

13

[Student] was dead. ECF 27, Tr 633-36. Because of his reaction when asked to grasp a writing tool, Turke shifted her focus to working on visual motor and fine motor skills through less-academic activities, such as stringing beads, playing games, and working with Play Doh. *Id.*, Tr 640. Her testimony showed that despite a significant alteration in Student's presentation and demeanor, she found ways to make his occupational therapy meaningful. *Id.*, Tr 641. Turke also testified that she did not believe that Student had lost the writing tool skills he obtained during the fall, but rather that due to some change in his mental status, he had lost the ability to access those skills. *Id.*, Tr 651-54.

Parents offered no testimony that Student did not receive his occupational therapy services while in the District, nor that they thought he had not made progress.

The Decision appropriately found that the District provided Student with the supports and services called for in his IEP. ECF 27, Doc. 1, 18.

An issue arose at hearing as to whether the District's related service providers kept proper records and produced required records for the due process case. This was a procedural issue, which the Decision ultimately determined did not result in a substantive denial of FAPE.

The related service providers' records that were not maintained were not "education records" under the IDEA. To the extent the records were not created, this

14

may have been a procedural violation, but did not impact the provision of FAPE to Student.

Most of the records sought at hearing (by the ALJ and the Parents) were sole-possession records. "Sole possession" records are: 1) made by instructional or administrative personnel; 2) kept in the sole possession of the maker of the record; and 3) not accessible or revealed to any other person except a temporary substitute. *Letter to Thomas* (FPCO 1986); and *Letter to Dempsey*, 13 FAB 32 (FPCO 2009). "Sole possession" records are not education records, and districts need not provide them under FERPA.

None of the related service provider documents that were requested at hearing qualify as education records. IDEA uses the FERPA definition of education records, and that definition includes those records that are "maintained" by an education agency. 34 CFR § 300.611(b); 34 CFR § 99.3. The SLP's and OT's notes and service logs fall under the "sole possession" exception to the statutory definition of education records, as they were made and used only by the respective providers for their own purposes. 34 CFR § 99.3. Francisco and Turke created the records to track Student's progress, kept them as long as they needed them to report in Student's progress reports, and thereafter either destroyed or misplaced them. Whether those notes ever bore Student's name was not established at the hearing. They were created by the

providers solely to assist in the provision of instruction to Student. *See Owasso Indep. Sch. Dist. No. 1-011 v. Falvo*, 122 S. Ct. 934 (2002).

The related service providers' records had no impact on parental participation in this case. The last IEP team meeting for Student at the District occurred on March 5, 2024 and Student's last day of class at Marble was March 6, 2024. Plaintiffs chose to remove Student from Marble, move to Ohio, and enroll Student in The Learning Spectrum, where he started in August 2024. ECF 27, Tr 132. Parents' counsel first requested District records on December 16, 2024. This timeline establishes that there was no feasible claim (made or that could be made) that the related service providers records impacted parental participation.

The related service providers' record keeping had no bearing on the provision of FAPE to the Student. The hearing evidence and testimony established that Student received his related services and made progress on his goals. *See, McKay v. Sch. Bd. of Avoyelles Parish*, 2015 WL 9236989 (W.D. LA 2015) (Although data was collected incorrectly on a toileting goal, the student received academic and non-academic benefits other than toileting, so there was not a denial of FAPE.).

Parents failed to offer any evidence that Francisco or Turke *did not* provide the service minutes, thus they failed to prove by a preponderance of evidence – as they

16

THRUN
LAW FIRM, P.C.

must – any allegation that Student was denied speech or occupational therapy service minutes.

Plaintiffs offered Kurt Hulett, Ed.D., as an expert to support their claims that the District denied Student a FAPE. Upon examination by the ALJ, it became apparent that Mr. Hulett had no clue what he was talking about. He did not know that the "District" at the hearing was East Lansing Public Schools, rather than Haslett Public Schools, Student's former school district that was dismissed before hearing. For his entire direct examination, Mr. Hulett was speaking of Haslett, not East Lansing Public Schools. *See*, ECF 27, Tr 422-38; ECF 28, Exh 58. He testified to the "District's" exclusionary discipline, failure to provide direct services, and ongoing seclusion of Student – none of which pertained to East Lansing Public Schools. *See, e.g.*, ECF 28, Exh 58, 13.

The Decision held that there was no evidence of a substantive denial of FAPE and should be affirmed.

## B. The District Educated Student in the LRE.

After the hearing, Plaintiffs' least restrictive environment (LRE) claim remained unclear. *See*, ECF 27, Tr 960. On appeal, Plaintiffs contend that in January and February 2024, Student was inappropriately removed from the general education classroom and *this* was the LRE violation.

17

According to the evidence at hearing, Student had his most successful educational experience – before or since – at Marble Elementary. Parents never allowed Student to attend a full day at Marble, although that was the FAPE offer. ECF 28, Exh E, 2, Exh F, 2. Parents exercised their right to unilaterally shorten Student's day at school so he could attend ABA therapy every afternoon.

From August to December 2023, Student participated daily in the general education classroom with his peers and received his specialized instruction in the resource setting for extra help and work on his IEP goals. *See*, ECF 27, Tr 709-13, 827-29. He received related services and made progress on those goals. *Id.*, Tr 548-50, 618-21, 915-17. Even after winter break, he continued to receive education and related services, and he was regularly encouraged to reenter the general education classroom. *Id.*

On appeal, Parents allege that Student was "educated in the special education classroom or given pull out services during two hours per day he was scheduled to be at school." ECF 8, ¶189. This is not in accord with the hearing evidence, which established that:

1. From August to December 2023, Student was on a shortened day at Parent demand. ECF 27, Tr 42, 154, 462-63, 903; ECF 28, Exh E.

2. From August to December 2023, Student participated in general and special education in accord with his IEP. ECF 27, 468-70, 546-49, 618-21, 827-29, 915; ECF 28, Exhs I, U, V.

18

3. In January and February 2024, Parent attended school with Student who returned from winter break significantly different than he was before break. ECF 28, Exh V, 25-28, P, 12.

4. District staff worked with Parent and Student to accommodate Parent's requirement that she attend school and provided Student with his education and services throughout January and February 2024. ECF 27, Tr 472, 798, 870, 886.

5. Student's last day at Marble was March 6, 2024. *Id.*, Tr 172.

6. As of March 5, 2024, Parent wanted Student put in a self-contained ASD classroom. *Id.*, Tr 795-802.

The Decision correctly held that the preponderance of the evidence was that throughout Student's seven months at Marble, the District maintained him in his LRE as reflected in his relevant IEPs. ECF 1, Doc. 1, 19.

The Decision noted another point of incongruity in Plaintiffs' positions. Plaintiffs seemed to contend that the District had Student in too restrictive of an environment at Marble, while simultaneously arguing for a more restrictive placement. *Id.* The uncontradicted evidence at hearing was that upon leaving Marble, Plaintiffs enrolled him in a private school for only students with disabilities. ECF 27, Tr 175-88. When that proved unsatisfactory, Plaintiffs enrolled him in an Ohio public school district, where at the time of hearing, Student was in a room without peers and with three adults to manage his behaviors for one hour a day. *Id.*, 195-98; ECF 28, Exhs 52, 56, 57.

19

At hearing, Plaintiffs offered their own testimony, which was not credible on this issue. *See, e.g.,* ECF 27, Tr 191-193 [Parent only believed Student interacted with a peer if she was sent a picture of the interaction]. Parents did not attend school with Student August to December 2023, thus their testimony was speculative. Presumably Plaintiffs "expert" Kurt Hulett, Ed.D. would have testified on LRE, but he was so thoroughly discredited that he offered nothing on this issue. *See*, ECF 27, Tr 422-38.

The District presented extensive testimony at hearing to support its decisions as to Student, including as to LRE. The Decision correctly held that there was no LRE violation.

**C. Respondent Appropriately Used Seclusion One Time for the Safety of Student and in Accord with Michigan Law.**

The evidence at hearing was unequivocal – the District secluded Student one time for two minutes after an extended period of physical escalation which culminated in Student attempting to break a window in an office thus creating a danger to himself. ECF 27, Tr 487, 489, 494.

Plaintiffs offered no evidence of other use of seclusion, nor did they offer any evidence that the District ever restrained the Student. They did offer the testimony of an "expert," Dr. Light Shriner, who was ill-equipped to speak to the issues at hearing. ECF 27, Tr 281-287; ECF 28, Exh 59. In the Decision, the ALJ states:

20

> While Petitioner's Expert 1's testimony was mostly credible, her testimony about what constitutes seclusion was incorrect and contrary to Michigan law. Her misunderstanding of what constitutes seclusion affected her credibility particularly on the issue of whether Respondent inappropriately used seclusion, but also on other issues as well. Petitioner's Expert 1's belief that school districts must be held to the (rightfully) very high standards of using seclusion when they are not actually engaging in seclusion is a significant misunderstanding of special education standards of practice, her qualified area of expertise.

Decision, 17. The ALJ does not specify on what topics Dr. Light Shriner *was* credible, but he is very clear that she was not credible on the topic of seclusion.

Dr. Light Shriner defined student seclusion as "being out of their normal placement in an area where they don't have access to their peers and what would typically be available to a child in a learning environment. That would be seclusion." ECF 27, Tr 340-41; *see also*, *id.*, Tr 392 (Light Shriner admits she "[hasn't] seen anything written about at what point they would do [seclusion] and for – you know, for what purposes.") Light Shriner's lack of knowledge about what seclusion is and her reliance on Parents' complaint for most of her factual assumptions, rendered her testimony not credible.

> The Decision correctly found that:
> 1. The District never restrained Student. ECF 27, Doc. 1, 20;
> 2. Plaintiffs' expert did not use the correct definition of seclusion for her opinion. *Id.*
> 3. There was no hearing evidence that the District's single use of seclusion was inappropriate. *Id.*

21

4. The hearing evidence was that the District's use of seclusion was appropriate. *Id.*, 20-21.

Plaintiffs offered no credible evidence on this issue. The Decision should be affirmed.

### D. Plaintiffs Failed to Preserve Disagreement with the ALJ's Identification or Clarification of Hearing Issues.

Plaintiffs allege that the ALJ improperly narrowed their issues for hearing [ECF 8, ¶¶ 43-65] and failed to consider their amended due process complaint [*Id.*, ¶¶ 66-94]. Any issue confusion at hearing was a result of voluminous complaints, overreaching allegations, and Plaintiffs' counsel's agreement with the ALJ's three issues at hearing.

Plaintiffs' Due Process Complaint was filed on December 2, 2024. ECF 26, Doc.17. The issues for hearing in the complaint were:

a. Failing to develop an IEP reasonably calculated to allow P.H. to make appropriate progress in light of his unique circumstances in his May 2022, September 2023 and March 2024 IEPs;

b. Failing to request parent consent for and conduct comprehensive reevaluations, including a functional behavior assessment, to address P.H.'s lack of progress toward his IEP goals and in the general education curriculum, new information provided by C.H., P.H.'s anticipated academic and behavior needs, and P.H.'s ongoing behavior issues resulting in formal or informal removals from the classroom;

c. Failing to seek C.H.'s consent to conduct an FBA within 10 school days of making the request;

d. Failing to implement PBIS to support P.H.'s behavioral needs;

22

e.  Failing to educate P.H. in the least restrictive environment;

f.  Isolating P.H. from his peers;

g.  Failing to review and revise P.H.'s IEP to address his poor academic performance, ongoing and increasing behavior issues, and lack of progress toward his IEP goals and the general education curriculum; and

h.  Failing to consistently provide W.F. with services to allow him to make progress toward his IEP goals and the general education curriculum for all removals after 10 removals within a school year.

*Id.*

Following a December 10, 2024 prehearing conference, the ALJ issued an Order

Following Prehearing Conference and Notice of Hearing in which he clarified

Plaintiffs' issues as:

4. Under Michigan Administrative Hearing Rule 792.11802, the issues for hearing must be identified and clarified. During the prehearing conference, the following issues were identified:

a. Did the Respondents fail to provide the supports listed in the Student's IEPs?

b. Did the Respondents fail to educate the Student in the LRE?

c. Did the Respondents inappropriately use seclusion and restraint?

ECF 26, Doc. 15.

On January 10, 2025, Plaintiffs filed an amended due process complaint. The

issues alleged in the amended complaint were:

a.  Failing to reevaluate P.H. when his educational or related service needs, including the need for increased emotional, behavioral, and academic supports, warranted a reevaluation, thereby denying him FAPE;

b.  Failing to offer and/or provide P.H. an appropriate IEP (including, but not limited to, an appropriate program, placement, services, and

23

accommodations in the least restrictive environment), by failing to develop an IEP reasonably calculated to provide P.H. FAPE; failing to review and revise P.H. 's IBP when his educational or related service needs warranted a revision; and failing to implement P.H.'s IEP as written, thereby denying him FAPE;

c. Failing to educate P.H. in the least restrictive environment, thereby denying him FAPE.

*Id.*, Doc. 6.

The hearing occurred on February 10-14, 2025. *Id.*, Doc. 15.

On the first day of hearing, the ALJ recited the December 10, 2024 Order's three issues for hearing. ECF 27, Tr 10-11. In her opening statement, Plaintiffs' counsel reiterated and confirmed the same three issues for hearing:

As you said, Your Honor, we're here today to determine those three issues that you laid out regarding if the respondent failed to provide the supports listed in the student's IEPs, if the respondent failed to educate the student in the LRE, and if the respondent inappropriately used seclusion and restraint.

*Id.*, Tr. 15.

Upon this framework, a five-day hearing was held on *those three issues.* At the close of the hearing, the ALJ again reiterated the *three issues* for hearing, in detail as he described what he wanted from the parties' post-hearing briefs. ECF 27, Tr 959-64. Parents' counsel did not contradict the ALJ's recitation of the issues.

In their post-hearing Closing Brief, Plaintiffs' briefed an odd mix of issues:

a. Failure to reevaluate. Original due process complaint, ECF 26, Doc. 17.;

24

b. Inappropriate use of seclusion and restraint. December 10, 2024 Order, *id.*, Doc. 15;

c. Failure to provide appropriate IEP, including supports. Original due process complaint, amended due process complaint, and December 10, 2024 Order, *id.*, Docs. 6, 15, 17;

d. Failure to educate in the least restrictive environment. Original due process complaint, amended due process complaint, and December 10, 2024 Order, *id..*

The Decision addressed the conflation of issues in Plaintiffs' Closing Brief:

> Petitioner's closing brief lists four alleged violations of FAPE by Respondent: the three issues listed for hearing and additionally that Respondent "failed to reevaluate [Student] when his needs warranted a re-evaluation." Petitioner never requested to add that issue to the hearing – it first became apparent that it was an issue during the hearing when Petitioner's Expert 1 alleged that Respondent failed to reevaluate Student and was first articulated as an issue in Petitioner's post-hearing brief. Petitioner's Closing Brief Argument Section additionally lists "failing to offer and/or provide [Student] an appropriate IEP", another issue that Petitioner failed to identify until that closing brief.
>
> Petitioner never explains why they were unable to articulate this hearing issue at either the prehearing conference, at the time of their amended complaint, or even when they filed their witness and exhibit lists and copies of their exhibits. … Petitioner's argument that they are entitled to bring up any issue they desire, in contravention to the listed issues outlined at the prehearing conference is rejected as incorrect. Contrary to Petitioner's argument, 34 CFR 500.11(d) does not stand for this proposition; that regulation provides that a party may not raise issues at hearing that are not included in their complaint, not that Petitioner may raise any issue at hearing that was included in their due process complaint, regardless of whether it was identified as a hearing issue at the prehearing conference. Petitioner was welcome to list these issues at the prehearing conference (or alternatively request to add them later in the hearing process) but failed to do so. Petitioner's failure to identify these issues prior to the hearing has the potential to deprive the Respondent of the opportunity to properly defend the allegations against

25

them. It is not too onerous a burden on Petitioner to articulate their proposed issues prior to the hearing. Petitioner's failure to identify and propose additional issues beyond those articulated at the prehearing conference constitutes a waiver of those additional issues at hearing.

Decision, ECF 26, Doc. 15, 15.

In this appeal, Plaintiffs state that "they were stunned that he [ALJ] did not seem to realize that they had filed an amended complaint" and "[n]onetheless, they had to proceed with the hearing." ECF 1, ¶¶ 70-71. Plaintiffs cannot claim they were "stunned" into silence and then raise the issue on appeal. Issues not raised below are not preserved for appeal. *See*, *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005) ("It is well settled law that this court will not consider an error or issue which could have been raised below but was not." (quoting *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1299 (6th Cir. 1992)).

If Plaintiffs knew at the hearing, as they now assert, that the ALJ was not addressing an issue, it was their obligation to at least make an objection on the record. Plaintiffs did not do so; instead they echoed the tribunal's recitation of the issues, thus approving those hearing issues.  Plaintiffs are entitled to a review of the case they actually tried, not "a better case fashioned after a[n] … unfavorable order." *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (quoting *Barner*, 399 F.3d at 749).

This issue was not preserved for appeal.

26

**E.  The Decision is Supported by a Preponderance of the Evidence.**

Plaintiffs' credible hearing evidence was sparse. The incongruity between allegations and hearing testimony was startling. Plaintiffs' experts were unprepared and the testimony of both damaged Plaintiffs' case, rather than helping it.

Plaintiffs' failure to meet their burden of proof on any issue would have resulted in a directed verdict in a court. Despite this, the District provided a solid defense of extensive testimony and evidence that established District's provision of FAPE to Student in his LRE. The Decision accurately and appropriately found in favor of the District on all claims. It devoted 38 pages to summarizing each witness' testimony and provides more than a preponderance of evidence for the holdings on each issue.

**F.  The Decision Properly Interpreted and Relied on Relevant Law.**

The Decision is soundly rooted in the IDEA, its implementing regulations, and the appropriate case law. It discusses *Board of Education v Rowley*, 458 U.S. 176 (1982), *Deal v Hamilton County Board of Education*, 792 F.3d 840 (6th Cir. 2004), and *Endrew F. v Douglas County School District*, 580 U.S. 386 (2017). ECF 27, Doc. 1, pp. 4, 16, 19.

*Rowley* is the benchmark for legal analysis of the procedural and substantive mandates of the IDEA. The *Rowley* Court developed the two-prong test to determine whether the school district has provided a free appropriate public education:

> First, has the state complied with the procedures set forth in the Act?   And, second, is the individualized education program

27

> developed through the Act's procedures reasonably calculated to enable the child to receive educational benefit. If these requirements are met, the state has complied with the obligations imposed by Congress and the courts can require no more.

458 U.S. at 206-07.

In *Endrew F.*, the U.S. Supreme Court addressed *Rowley*'s second prong, IDEA's substantive requirements, and clarified that for a school district to meet its substantive obligation under the IDEA, it must offer an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* at 999.

The Sixth Circuit's pre-*Endrew F.* FAPE standard was set forth in *Deal*: "[t]he purpose of the IDEA is to give children with disabilities a free appropriate public education designed to meet their unique needs." *Deal*, 392 F.3d at 853. Thirteen years later, *Endrew F.* set a national standard akin to the Sixth Circuit's *Deal* standard: "[t]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 580 U.S. at 399. The *Endrew F.* decision did not cause the same seismic shift in the Sixth Circuit as it did in some federal circuits, as it was comparable to the *Deal* standard.

*Rowley* and *Endrew F.* are both good law and are both used to assess a public school's provision of IDEA services to children with disabilities. As there was arguably

28

a procedural claim in this case, the Decision appropriately discussed the *Rowley* two-prong analysis. Plaintiffs' argument on this issue is simply a red herring. It fails to recognize the Sixth Circuit *Deal* FAPE standard or the particular points that *Rowley*, *Deal*, and *Endrew F.* hold. Each case remains viable and appropriate for inclusion in the Decision, and the ALJ had latitude to rely on each of the cases, as he did.

## VII.  Conclusion

Plaintiffs failed to satisfy their burden of proof on any of the issues at hearing. Plaintiffs failed to preserve their appeal issue on the ALJ's handling of issues. The District prays that this Court affirm the Decision.

Respectfully submitted,

THRUN LAW FIRM, P.C.
Attorneys for Respondent East Lansing P.S.

Dated:  April 27, 2026

/s/ Erin H. Walz
Michele R. Eaddy (P41871)
Erin H. Walz (P55484)
2900 West Road
P.O. Box 2575
East Lansing, Michigan 48826-2575
meaddy@thrunlaw.com
ewalz@thrunlaw.com

29

## CERTIFICATE OF SERVICE

STATE OF MICHIGAN )

                                   )

COUNTY OF INGHAM )

I hereby certify that on April 27, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send confirmation of such filing to the following:

| | |
|---|---|
| Elizabeth K. Abdnour | liz@education-rights.com |
| Megan N. Mitchell | megan@education-rights.com |
| Jacquelyn N. Kmetz | jacquelyn@education-rights.com |
| Jordan Bullinger | jbullinger@clarkhill.com |
| Maddison Moser | mmoser@clarkhill.com |

Respectfully submitted,

THRUN LAW FIRM, P.C.
Attorneys for Respondent East Lansing P.S.

Dated:  April 27, 2026

/s/ Erin H. Walz
Michele R. Eaddy (P41871)
Erin H. Walz (P55484)
2900 West Road
P.O. Box 2575
East Lansing, Michigan 48826-2575
meaddy@thrunlaw.com
ewalz@thrunlaw.com

THRUN
LAW FIRM, P.C.

30