**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHRISTI HENKE and RICH HENKE
o/b/o P.H.,

      Plaintiff/Appellants/Petitioners,

vs.

EAST LANSING PUBLIC SCHOOLS and
INGHAM INTERMEDIATE SCHOOL
DISTRICT,

      Defendants/Appellees/Respondents.

Case No. 1:25-cv-680

Hon. Hala Y. Jarbou

**<u>DEFENDANT INGHAM
INTERMEDIATE SCHOOL
DISTRICT'S RESPONSE IN
OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT</u>**

Elizabeth K. Abdnour (P78203)
Megan N. Mitchell (P87213)
Jacquelyn Kmetz (P83575)
ABDNOUR WEIKER LLP
*Attorneys for Plaintiffs*
325 E. Grand River Ave., Suite 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
megan@education-rights.com
jacquelyn@education-rights.com

Jordan M. Bullinger (P72441)
CLARK HILL PLC
*Attorneys for Defendant Ingham ISD*
200 Ottawa Avenue NW, Suite 500
Grand Rapids, MI 49503
(616) 608-1146
jbullinger@clarkhill.com

Erin H. Walz (P55484)
THRUN LAW FIRM, P.C.
*Attorneys for Defendant*
*East Lansing Public Schools*
2900 West Rd., Suite 400
P.O. Box 2575
East Lansing, MI 48826-2575
(517) 374-8830
ewalz@thrunlaw.com

CLARKHILL\19511\1007360\287995726.v2-5/26/26

**TABLE OF CONTENTS**

I.    **INTRODUCTION**................................................................................................................ 1

II.   **STANDARD OF REVIEW** ............................................................................................. 1

III.  **COUNTER-STATEMENT OF FACTS** ........................................................................ 2

IV.  **LEGAL ANALYSIS** ....................................................................................................... 4

     A.    The ISD was properly dismissed because it was not responsible for the provision of FAPE to P.H.................................................................................................................... 4

V.    **CONCLUSION** ................................................................................................................ 8

CLARKHILL\19511\1007360\287995726.v2-5/26/26

## INDEX OF AUTHORITIES

**Cases**

*Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ............................................................. 1

*D.L., et al. v. Michigan Department of Education*, Case No. 22-cv-00838 (W.D. Mich., Sept. 24 2025) ......................................................................................................... 5, 6

*L.G. obo G.G. v Kelloggsville Public Schools*, 1:24-cv-833, (W.D. Mich. March 16, 2026) .... 6, 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)............................. 1

*Moore v. Philip Morris Cos.,* 8 F.3d 335, 339-340 (6th Cir. 1993)................................................ 2

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) ............................................ 1

*Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025)................................ 5, 6

**Statutes**

Mich. Comp. Laws § 380.1711(1)(a)............................................................................................... 4

Mich. Comp. Laws § 380.1711(1)(a), (f)......................................................................................... 3

Mich. Comp. Laws § 380.1711(1)(a), (i)......................................................................................... 3

Mich. Comp. Laws § 380.1751(1)(a), (b)...................................................................................... 3, 4

Mich. Comp. Laws 380.1751(1) ...................................................................................................... 3

**Other Authorities**

20 U.S.C. § 1401(19(A)(i) ............................................................................................................... 2

20 U.S.C. § 1401(5)(A)(i)................................................................................................................ 2

20 U.S.C. § 1414(a), (b)................................................................................................................... 3

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................................ 1

CLARKHILL\19511\1007360\287995726.v2-5/26/26

## I. INTRODUCTION

Plaintiff's motion fails because it attempts to convert participation into responsibility. Plaintiff asks this Court to treat responsibility for the provision of a free and appropriate public education ("FAPE") as both singular and shared. Plaintiff seeks to assign this obligation to East Lansing Public Schools ("ELPS") while simultaneously imposing it on the ISD based on ELPS' utilization of itinerant staff employed by the ISD. The law does not permit that result. The Individuals with Disabilities Education Act ("IDEA") and Michigan's statutory framework distinguish between who may deliver services and who is ultimately legally responsible for the provision of FAPE.

The undisputed record demonstrates that ELPS, as the district of residence, bore responsibility for developing and implementing P.H.'s educational program. The ISD's role, by contrast, was limited to service support. Plaintiff's attempt to collapse that distinction and impose coequal and concurrent liability on the ISD based on purported "active involvement" fails as a matter of law.

## II. STANDARD OF REVIEW

Summary judgment should be granted if the pleadings and evidence "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). In response, the non-moving party cannot merely rest on the pleadings. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead,

1

the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339-340 (6th Cir. 1993).

### III.    COUNTER-STATEMENT OF FACTS

The ISD may, in limited circumstances, bear direct responsibility for ensuring the provision of a free and appropriate public education ("FAPE") to a student eligible under IDEA. However, the governing federal and state framework establish that the local school district in which the student resides is generally responsible for ensuring the provision of FAPE. Only when the ISD effectively steps into the role of the local district does that responsibility shift. As recognized by the Michigan Department of Education, "[t]he responsibility for the provision of FAPE rests with the ISD only when [it is] functioning as the operating district." (ECF 20-1, MDE Memo, March 6, 2025).

Under IDEA, the ISD is properly classified as an "educational service agency" ("ESA"), defined as an entity authorized to "develop, manage and provide services or programs to [LEAs]." 20 U.S.C. § 1401(5)(A)(i). The statute is instructive not only for what it says, but for what it omits – it imposes no obligation on ESAs to provide FAPE to students, whether system-wide or on an individual basis.

A "local educational agency" ("LEA"), by contrast, is defined as "a public board of education" established under state law "for either administrative control or direction of . . . public elementary schools or secondary schools . . . ." 20 U.S.C. § 1401(19(A)(i). Although an ESA may fall within the broader statutory definition, the operative feature of an LEA is its control over the operation of a public school. The IDEA's procedural requirements confirm that allocation as it is the LEA that must conduct initial evaluations and reevaluations upon parental request and consent.

20 U.S.C. § 1414(a), (b). An ESA such as the ISD does not fulfill that function. It does not control the schools at issue, and it is not the entity charged with responding to parental evaluation requests. That responsibility rests with the resident district, the entity accountable for the student's program. This statutory structure reinforces that the responsibility for FAPE is tied to control over the student's educational program, not mere participation in it.

This conclusion is also reinforced by state law. Michigan's Revised School Code provides that a local school district, not the ISD, "shall provide special education programs and services designed to meet the individual needs of each student with a disability in its district on record under section 1711 for whom an appropriate educational or training program can be provided in accordance with the intermediate school district education plan…" Mich. Comp. Laws 380.1751(1). Accordingly, it is the resident local school district, as the operative LEA, that bears responsibility for the provision of FAPE. Here, the resident district responsible for P.H.'s program was ELPS.

The statutory scheme assigns distinct roles. The resident LEA must satisfy a student's special education needs either by directly operating the necessary programs or by contracting for their delivery through an ISD or other provider. Mich. Comp. Laws § 380.1751(1)(a),(b). The ISD, in turn, serves a supervisory role—responsible for "[d]evelop[ing], establish[ing], and continually evaluat[ing] and monitor[ing] . . . a plan" governing service delivery across constituent districts. Mich. Comp. Laws § 380.1711(1)(a),(f).

The ISD's role is defined at the systems level. Its special education plan is developed "in cooperation with its constituent districts" and determines whether services will be delivered directly by the ISD or through contracts with local districts. Mich. Comp. Laws § 380.1711(1)(a), (i). This framework governs the *means* of service delivery—not the *assignment* of responsibility

3

for FAPE. Nothing in section 380.1711 requires an ISD to directly provide services to an individual student enrolled in a local district absent a specific arrangement. By statute, that responsibility remains with the resident LEA. Mich. Comp. Laws § 380.1751(1)(a), (b). The statute distinguishes between who may deliver services and who is legally responsible for the provision of FAPE, which are not the same.

The ALJ's decision properly applied the governing statutory framework. (ECF 26-1, Order Granting Respondent IISD's Motion to Dismiss). The ALJ determined "[t]he LEA, not the ISD, is the entity responsible for creating and implementing P.H.'s IEP." *Id*. at 6. Absent a transfer of the responsibility for the provision of FAPE, the ALJ rightfully held that because the ISD "…is not required to provide FAPE to P.H., Respondent IISD must be dismissed as a party and the matter dismissed with prejudice as to Respondent IISD." *Id*. at 7.

## IV.    LEGAL ANALYSIS

### A.    The ISD was properly dismissed because it was not responsible for the provision of FAPE to P.H.

Plaintiff attempts to convert a service delivery model in which ELPS utilized select itinerant staff in meeting ELPS' obligation for the provision of FAPE as "active involvement" by the ISD, therefore creating a legal responsibility. In brief, Plaintiff asserts that Michigan law requires the ISD to be ultimately responsible for the provision of FAPE, whenever a constituent member accesses services under Mich. Comp. Laws § 380.1711(1)(a). (ECF 36, PageID.3589). However, that leap is unsupported. The regulatory scheme may require participation, coordination, and oversight, but it does not collapse those functions into a co-equal and concurrent obligation to provide FAPE by two distinct and separate entities. Recent Sixth Circuit precedent, and this Court's own application of it, reject precisely that theory and preclude holding the ISD liable for

4

the alleged conduct of ELPS. Plaintiff's argument fails because it substitutes involvement for responsibility, two concepts that the governing regulatory scheme treats as distinct.

In *Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025), the Sixth Circuit reaffirmed that the responsibility for FAPE rests with the local district and not a supervisory state entity. The court explained that local school districts "undertake general responsibility," remain accountable to their own electorates, and "operate their schools largely as they see fit." *Id.* at 870 (citations omitted). Where, as there, the alleged denial of services was attributable to the district, the plaintiff "d[id] not have a claim against the State." *Id.* That reasoning applies with equal force here.

The Sixth Circuit further declined to impose vicarious liability on MDE for a local district's alleged failures. *Id.* at 871. Doing so, the court explained, would eviscerate the distinction between the State and its local instrumentalities, a result the statutory framework does not permit. *Id.* That same principle forecloses Plaintiff's attempts to impose liability on the ISD here.

The Court then turned to supervisory liability under IDEA. *Id.* at 872. While IDEA provides for "general supervision" by MDE and a remedial framework for parents to assert claims, the Court made clear that these provisions do not shift responsibility for a district's failure to the State. *Id.* As the Court explained, "oversight alone does not transform a local school into a state school." *Id.* (citation omitted). That same reasoning applies here.

This Court recently applied *Y.A.* to foreclose the same theory Plaintiff attempts to advance here. In *D.L., et al. v. Michigan Department of Education*, Case No. 22-cv-00838 (W.D. Mich., Sept. 24 2025), plaintiff sought to hold MDE liable for alleged IDEA, ADA, and Section 504 violations committed by local school districts, based on purported deficiencies in the State's oversight and complaint processes. *Id.* This Court rejected that approach, holding that a claim

5

under Section 1415(i) requires more than demonstrating noncompliance by a local educational agency. *Id.* Otherwise, liability would attach to the State for every alleged failure by a local or intermediate district. This would effectively collapse the distinction between supervisory and responsible entities that *Y.A.* reaffirmed. *Id.*

Both *Y.A.* and *D.L.* control here and expose the flaw in Plaintiff's position. Plaintiff relies on the fact that ELPS utilized itinerant staff through the ISD Plan to provide certain services, but that reliance obfuscates a critical distinction. IDEA and Michigan law separate who may deliver services from who is ultimately legally responsible for ensuring FAPE. The use of ISD personnel to implement discrete portions of an IEP reflects a service delivery model and not a transfer of responsibility. Responsibility for FAPE attaches to the entity charged with developing and implementing the student's educational program as a whole. Here, that entity was ELPS. The record admits no genuine dispute on that point. Plaintiff's argument fails because it treats participation in service delivery as equivalent to responsibility for FAPE, two distinct concepts under the law.

Both cases reinforce the same principle: responsibility for FAPE does not attach to supervisory entities based on a local district's alleged failures. Under that framework, the ISD, whether acting as a regional ESA or a supervisory entity, cannot be held liable for the resident district's alleged noncompliance with IDEA. The law assigns responsibility to the entity that provides FAPE and not the entity that oversees it.

In *Kelloggsville*, the Court recently applied both *Y.A.* and *D.L.* to similar facts as the case at bar and rightfully rejected efforts to impose responsibility for the provision of FAPE onto ISDs. *L.G. obo G.G. v Kelloggsville Public Schools*, 1:24-cv-833, (W.D. Mich. March 16, 2026).

> But none of the authority Plaintiff cites leads to this conclusion. To the contrary, it simply sets out the ISD's role in the three-tier

CLARKHILL\19511\1007360\287995726.v2-5/26/26

educational system in Michigan that reflects the ISD does not, in the usual course, directly provide special education services. Under Michigan law, is it the local school district – here KPS – that is responsible for "provid[ing] special education programs and services designed to meet the individual needs of each student with a disability in the district." Mich. Comp. Laws. § 380.1751. The school district can either operate the special education program or service, or it may contract with an ISD to deliver those programs or services. *Id*. at § 380.1751(a)(b).

The ISD has the statutory responsibility to "develop, establish and continually evaluate and modify in cooperation with its constituent districts, a plan for special education that provides for the delivery of special education programs and services designed to meet the individual needs of each student with a disability." *Id*. at § 370.1711(1)(a). But the local school districts are the entities that actually implement this plan and actually provide special education services, either on their own or under contract with an ISD. Id. at §§ 380.1711(i); 1751(b). It is within this context that the cooperative agreement referenced by Plaintiff arises. Nothing here, however requires an ISD to provide special education services to an individual student.

*Id.* at 11-12.

Plaintiff attempts to avoid the application of *Kelloggsville* by arguing that ELPS's use of itinerant staff employed by the ISD somehow transferred responsibility for providing FAPE to the ISD. (ECF 36, PageID.3585). That argument finds no succor in the governing statutory or regulatory framework. Moreover, Plaintiff also overlooks that *Kelloggsville* addressed this precise scenario. As the Court explained, local school districts "actually implement this plan and actually provide special education services, **either on their own or under contract with an ISD**," and while such arrangements *may* involve ISD participation, "**[n]othing here…requires an ISD to provide special education services to an individual student**." *L.G. obo G.G. v Kelloggsville Public Schools*, 1:24-cv-833 (W.D. Mich. Mar. 16, 2026) (emphasis added). Simply put, ELPS' utilization of itinerant staff under an ISD plan did not, and as a matter of law cannot, transfer responsibility for the provision of FAPE from ELPS to IISD.

7

At bottom, Plaintiff's argument asks this Court to treat responsibility for FAPE as both singular and shared. Plaintiff maintains that the obligation to provide FAPE is assigned to ELPS while simultaneously imposed on the ISD based on ELPS's utilization of itinerant staff under the ISD Plan. The law does not permit that result. The statutory and regulatory framework, reinforced by controlling precedent, distinguishes between who may deliver services and who is legally responsible for ensuring the provision of FAPE. Here, the responsibility for the provision of FAPE rested with ELPS. Plaintiff's effort to blur that line fails as a matter of law and summary judgment in their favor must be denied.

## V.    CONCLUSION

There is no genuine dispute of material fact that (1) the ISD did not assume responsibility for providing IDEA services to P.H., and (2) it did not enter into any agreement transferring the resident district's legal obligations under federal or state law. Under controlling Sixth Circuit precedent and this Court's application of that authority, the ISD cannot be held liable for the resident district's alleged failure to provide FAPE under a theory of supervisory liability. The ALJ likewise reached the merits of this issue and concluded that Plaintiff failed to state a claim against the ISD. Plaintiff's motion should therefore be denied, and the ISD's motion for summary judgment (ECF Nos. 32, 33) granted.

Respectfully submitted,

CLARK HILL, PLC

Dated: May 26, 2026                    By:    _____

Jordan M. Bullinger (P72441)
*Attorneys for Petitioner*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the type-volume limitations of L.Civ. R. 7.2(b)(ii). The motion and brief were prepared in Microsoft Word 365, using a Times

CLARKHILL\19511\1007360\287995726.v2-5/26/26

New Roman 12 pt. font. Microsoft Word 365 has a function that calculates the number of words in a document. According to that function, there are 2930 words in the motion and brief.

## CERTIFICATE OF SERVICE

The undersigned certifies that he electronically filed the foregoing document with the clerk using the Court's Electronic Filing System on May 26, 2026, which will send notification of such filing to all parties and/or attorneys of record; and a courtesy copy was mailed to Judge Jarbou.

|  | | |
|---|---|---|
| __X__ U.S. Mail | _____ | Facsimile |
| __X__ E-Filing | _____ | Hand Delivery |
| _____ E-Mail | _____ | Federal Express |

Respectfully submitted,

CLARK HILL, PLC

Dated: May 26, 2026                    By:    _____

Jordan M. Bullinger (P72441)
*Attorneys for Petitioner*

9