**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **CHRISTI HENKE and RICH HENKE o/b/o P.H.**<br><br>        Plaintiffs,<br><br>v.<br><br>**EAST LANSING PUBLIC SCHOOLS and INGHAM INTERMEDIATE SCHOOL DISTRICT,**<br><br>        Defendants. | Case No.: 1:25-cv-680<br><br>Hon. Hala Y. Jarbou<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT EAST LANSING PUBLIC SCHOOLS' MOTION FOR SUMMARY JUDGMENT** |

| | |
|---|---|
| Elizabeth K. Abdnour (P78203)<br>Megan N. Mitchell (P87213)<br>Jacquelyn Kmetz (P83575)<br>ABDNOUR WEIKER, LLP<br>325 E. Grand River Ave., Suite 250<br>East Lansing, MI 48823<br>(517) 994-1776<br>liz@education-rights.com<br>megan@education-rights.com<br>jacquelyn@education-rights.com<br>*Attorneys for Plaintiffs* | Erin H. Walz (P55484)<br>THRUN LAW FIRM, P.C.<br>2900 West Rd., Suite 400<br>P.O. Box 2575<br>East Lansing, MI 48826-2575<br>(517) 374-8830<br>ewalz@thrunlaw.com<br>*Attorneys for Defendant*<br>*East Lansing Public Schools*<br><br>Jordan M. Bullinger (P72441)<br>CLARK HILL, PLC<br>200 Ottawa Ave NW, Suite 500<br>Grand Rapids, MI 49503<br>(616) 608-1146<br>jbullinger@clarkhill.com<br>*Attorneys for Defendant*<br>*Ingham Intermediate School District* |

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT**
**EAST LANSING PUBLIC SCHOOLS' MOTION FOR**
**SUMMARY JUDGMENT**

1

# TABLE OF CONTENTS

COUNTER STATEMENT OF FACTS ................................................................................. 3

STANDARD OF REVIEW ............................................................................................... 11

ARGUMENT .................................................................................................................. 12

   I.    The ALJ Improperly Narrowed the Issues ................................................ 12

      *A.*   *Plaintiffs properly preserved their objection to the ALJ's improper narrowing of the issues* ......................................................................................................... 12

      *B.*   *Even if Plaintiffs failed to preserve this claim, Plaintiffs' allegation that P.H. was not properly evaluated should have been part of the ALJ's consideration of P.H.'s least restrictive environment (LRE).* ............................................................... 18

   II.    ELPS Failed to Educate P.H. in the LRE ................................................. 20

   III.   ELPS Failed to Provide P.H. with a FAPE ............................................. 24

CONCLUSION AND REQUEST FOR RELIEF .................................................................. 26

<u>**COUNTER STATEMENT OF FACTS**</u>

Plaintiffs C.H. and R.H. are the parents and legal guardians of P.H. Amended Complaint, ECF 8, PageID.209 at ¶ 1. P.H. is a 9-year-old child with qualifying disabilities under the IDEA and is therefore entitled to receive special education and related services under the IDEA. Amended Complaint and Request for a Due Process Hearing, ECF 8-1, PageID.248 at ¶ 5. P.H. was enrolled in East Lansing Public Schools (ELPS) from August 2023 to April 2024. *Id.* at ¶ 6. ELPS was the primary school district in which Plaintiffs and P.H. resided at all times relevant to the Amended Complaint. *Id.* at ¶ 26.

In August 2024, Plaintiffs met with ELPS staff regarding P.H. and a potential return to ELPS, after attending a different school district for the 2023-2024 school year. *Id.* at PageID.367-368 at ¶¶ 8-15. Specifically, Petitioners shared P.H.'s traumatic experiences with seclusion and restraint at his previous school and, in response, ELPS assured Plaintiffs there was no seclusion room at ELPS. *Id.* at ¶¶ 8, 13. Following the meeting, Plaintiffs enrolled P.H. at Marble Elementary school for the 2024-2025 school year, and P.H. was immediately placed on a shortened school day. *Id.* at PageID.368 at ¶ 15, PageID.368 at ¶ 20. An IEP team meeting was held three weeks into the school year, on September 13, 2023. Petitioners Offered and Admitted Exhibits 1-62, ECF 28-3, PageID.2356. P.H.'s areas of need included reading, socio-emotional behavior, speech and language, and fine motor skills, similar to his previous IEP. *Compare* Petitioners Offered and Admitted Exhibits 1-62, ECF 28-3, PageID.2340-2342 *to* PageID.2358-2359. However, despite carrying over the same areas of need, the IEP inexplicably cut P.H.'s social work services, eliminated many of his supplementary aids and services, and failed to provide a behavior plan or positive behavioral intervention supports (PBIS) to address P.H.'s significant socio-emotional needs. *Compare Id.* at PageID.2344-2345 *to* PageID.2360, PageID.2365.

For the first half of the 2023-2024 school year, while P.H. was physically present, he began showing increasing signs of school avoidance and increased socio-emotional behaviors following the IEP meeting. March 24, 2025 Decision and Order, ECF 8-4, PageID.351; Respondent's Offered and Admitted Exhibits A-X, ECF 28-2 at PageID.2269-2271, PageID.2273; February 12, 2025 Hearing Transcript Volume III, ECF 27-11, PageID.1693 at l 5-25; February 13, 2025 Hearing Transcript Volume IV, ECF 27-9, PageID.1459 at Tr 851 at l 13-25; February 14, 2025 Hearing Transcript Volume V, ECF 27-5, PageID.1391 at Tr 884 at l 3-25. P.H. began spending less time with peers, exhibiting increased anxiety, taking more frequent walking breaks, and, most noticeably, spending an increasing amount of time spent in the bathroom. March 24, 2025 Decision and Order, ECF 8-4, PageID.399 at ¶¶ 429-436; February 10, 2025 Hearing Transcript Volume I, ECF 27-13, PageID.1999 at Tr 48 at l 11-15, PageID.2002 at Tr 57 at l 22 - Tr 58 at l 1; February 11, 2025 Hearing Transcript Volume II, ECF 27-12, PageID.1924 at l 6 – PageID.1925 at l 8; February 12, 2025 Hearing Transcript Volume III, ECF 27-11, PageID.1692 at l 16-22, PageID.1720 at l 22 – PageID.1721 at l 22, PageID.1722 at l 3-13; February 14, 2025 Hearing Transcript Volume V, ECF 27-5, PageID.1390-1391 at Tr 880-882, PageID.1391 at Tr 884 at l 8-19; Petitioners Offered and Admitted Exhibits 1-62, ECF 28-8, PageID.2909, PageID.2914-2915, PageID.2917. On at least one occasion, P.H. fell asleep in the bathroom and by November 2023, he was requesting to use the bathroom at least 2-3 times an hour of an already significantly shortened school day. February 10, 2025 Hearing Transcript Volume I, ECF 27-15, PageID.2023 at Tr 141 at l 7-11; February 12, 2025 Hearing Transcript Volume III, ECF 27-11, PageID.1721 at l 12-14; February 14, 2025 Hearing Transcript Volume 5, ECF 27-6, PageID.1407 at Tr 949 at l 18-21.

P.H.'s behavior only worsened after the winter break. March 24, 2025 Decision and Order, ECF 8-4, PageID.351-352, PageID.361, PageID.368 at ¶ 25, PageID.369 at ¶ 34, 36; Petitioners Offered and Admitted Exhibits 1-62, ECF 28-8 at PageID.2928;   February 10, 2025 Hearing Transcript Volume I, ECF 27-13, PageID.2003 at Tr 64 at l 12-19. For the first few days after winter break, P.H. refused to enter his classroom and Plaintiff C.H. had to coax him into the room, taking him through the front door instead of the usual back door. March 24, 2025 Decision and Order, ECF 8-4, PageID.368 at ¶ 25; February 10, 2025 Hearing Transcript Volume 1, ECF 27-13, PageID.2001 at Tr 55 at l 20 - Tr 56 at l 7. Other IEP team members, including P.H.'s speech and language therapist and occupational therapist, acknowledged the noticeable change in behaviors. February 12, 2025 Hearing Transcript Volume III, ECF 27-11, PageID.1516 at l 13-21, PageID.1593 at l 23 – PageID.1595 at l 11. By the end of January, P.H. was making threats against his paraprofessional and began exhibiting additional concerning behaviors, such as counting cars, lying on the floor, and inexplicably repeating numbers. February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2005 at Tr 72 at l 7 – PageID.2006 at Tr 73 at l 16, PageID.2006 at Tr 74 at l 2-5, 13-24, PageID.2006 at Tr 75 at l 1-20; February 12, 2025 Hearing Transcript Volume III, ECF 27-11, PageID.1594 at l 11-19. Due to P.H.'s increasing socio-emotional needs and inability to participate in learning activities, he was not making any progress toward his IEP goals or the general education curriculum, particularly in reading, and Plaintiff C.H. was attending with him daily just to get him into the building. February 10, 2025 Hearing Transcript Volume I, ECF 27-13, PageID.2002 at Tr 59 at l 4-9, PageID.2004 at Tr 65 l 23 – Tr 67 at l 10; February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2005 at Tr 69 at l 23 – Tr 72 at l 22, PageID.2006 at Tr 75 at l 1-20. Yet, despite all these clear changes in P.H.'s behavior, Defendants never took any action to amend P.H.'s IEP services, whether via a meeting or an amendment, nor to conduct

5

a functional behavior assessment (FBA) or other relevant evaluations to address these increasing needs and lack of progress. February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2008 at Tr 82 at l 16 – PageID.2009 at Tr 85 at l 23, PageID.2009 at Tr 86 at l 8.

Even worse than failing to amend P.H.'s services or conduct evaluations, Defendants then began further disrupting P.H.'s shortened school day by changing his schedule daily, based solely on the availability of Ms. Miller-Hogan (ELPS School Social Worker), Kristen Casby (ELPS special education teacher), Stacy Turke (IISD OT), and P.H.'s paraprofessionals, versus P.H. and his individual needs. February 10, 2025 Hearing Transcript Volume I, ECF 27-13, PageID.2004 at Tr 68 at l 7-23. Although Plaintiffs specifically requested P.H. be transferred to an ASD classroom, to work with the reading intervention teacher, and to have Plaintiff C.H. attend with P.H. in the general education classroom or otherwise engage with his peers, these requests were inexplicably denied with no alternatives offered. February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2007 at Tr 80 at l 14-19, PageID.2009 at Tr 87 at l 4-9. Instead, Defendants only increasingly isolated P.H., denying him any access to general education peers, confining him only to the special education room, office conference room, or seclusion room. *Id.* at PageID.2005 at Tr 69 at l 21 - Tr 72 at l 1. When placed in the office due to lack of staff to supervise him, P.H. would simply sit and count cars in the parking lot. *Id.* at PageID.2006 at Tr 74 at l 13-24.

Unsurprisingly, P.H.'s behaviors continued to exponentially worsen throughout February and March 2024. *Id.* at PageID.2009 at Tr 88 at l 19-24, PageID.2011 at Tr 96 at l 24 – PageID.2012 at Tr 97 at l 23. As of early February 2024, Defendants were only allowing P.H. to attend school in the special education classroom, despite his IEP still stating he was placed in the general education classroom. *Id.* at PageID.2005 at Tr 71 at l 6-25. He also continued to be aggressive with his paraprofessional and he would require C.H.'s assistance during transitions. *Id.* at PageID.2006

at Tr 74 at l 3-8, Tr 76 at l 4-19. P.H.'s also began exhibiting increasing elopement. *Id.* at PageID.2011 at Tr 96 at l 24 – PageID.2012 at Tr 97 at l 23, PageID.2012 at Tr 99 at l 14 - Tr 100 at l 25, PageID.2013 at Tr 102 at l 1-19, Tr 103 at l 5-16. On February 9, 2024, while attending an occupational therapy session with Ms. Turke, P.H. ran away as Ms. Turke was attempting to take P.H. back to the office and transition him to the next service provider. *Id.* at PageID.2007 at Tr 77 at l 9-25. Both Ms. Turke and Ms. Miller-Hogan had to search the school for P.H., before ultimately finding him in the unoccupied STEM classroom, hiding between cabinets. *Id.* On February 27, 2024, P.H. managed to elope out of the building in an attempt to run home, getting as far as the middle of one of the busiest intersections in East Lansing until Plaintiff C.H. was able to catch up with him and bring him safely back to the school building. *Id.* at PageID.2012 at Tr 97 at l 24 – PageID.2013 at Tr 101 at l 25; February 10, 2025 Hearing Transcript Volume I, ECF 27-16, PageID.2050 at Tr 249 at l 21 – Tr 250 at l 12.

P.H.'s increasing needs and behaviors reached a peak on March 4, 2024. February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2010 at Tr 89 at l 5-9. As P.H. was working in the office conference room due to his escalated behaviors that week, P.H. began knocking down coat racks, hitting the television, crawling under the desk, and trying to dump over the mini fridge. *Id.* at PageID.2010 at Tr 89 at l 1-12. At this time, C.H. entered the room to try to assist and P.H. asked her about the "calm down room." *Id.* at Tr 89 at l 16 – Tr 90 at l 9. Recalling the initial meeting she had with Ms. Miller-Hogan and Ms. Robertson before the start of the school year, where they advised Marble Elementary did not have a seclusion room, Plaintiff C.H. told P.H. there was no calm down room, only for P.H. to insist there was and describe it with alarming specificity. *Id.* at Tr 90 at l 17-24. Only after P.H. described the room did Ms. Miller-Hogan and Ms. Robertson acknowledge its existence, despite initially continuing to deny it. *Id.* at Tr 89 at l

7

18 – Tr 91 at l 14. Throughout this interaction, P.H. remained agitated, to the extent he began suffering a panic attack, something that had only happened once before, prompting C.H. to take him home for the remainder of the day. *Id.* at Tr 90 at l 1-6, 25.

Defendants convened an IEP meeting on March 5, 2024, to discuss the incident and finally made any changes to P.H.'s IEP. *Compare* Petitioners Offered and Admitted Exhibits 1-62, ECF 28-3, PageID.2356-2367 *to* PageID.2371-2384. The changes to the present levels of academic achievement and functional performance section of P.H.'s IEP unequivocally indicated a clear increase in P.H.'s behavioral needs over the preceding six months. *Compare Id.* at PageID.2356-2359 *to* PageID.2371-2378. However, despite documenting such regression, the only change to P.H.'s supplementary aids and services was to add a medical plan. *Compare Id.* at PageID.2360 *to* PageID.2379. Relatedly, although P.H.'s social work services were nominally increased from 20-35 minutes, 1-2 times a week, to 20-50 minutes, 1-5 times a week, there were no changes to his occupational therapy services, and his speech and language therapy was *reduced*. *Compare id.* at PageID.2365 *to* PageID.2383. There were also no changes made to P.H.'s ASD teacher consultant services, as the ASD teacher consultant, Kelsey Kujawa, was not invited to the meeting. February 12, 2025 Hearing Transcript Volume III, ECF 27-11, PageID.1649 at l 2-9. Equally concerning, the revised IEP continued to claim P.H. was spending most of the day in the general education setting, despite Defendants' having denied P.H. any access to his general education peers for months. Petitioners Offered and Admitted Exhibits 1-62, ECF 28-3, PageID.2383. At the conclusion of the meeting, Plaintiffs raised their concerns about P.H.'s safety, due to his aggression and elopement, but Defendants failed to develop a safety plan or otherwise present any clear plan to address P.H.'s safety needs and expressly denied Plaintiffs' request to move P.H. to an ASD

8

classroom. February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2011 at Tr 94 at l 23 – Tr 95 at l 16, PageID.2013 at Tr 102 at l 3 – Tr 103 at l 22.

The following day, March 6, P.H. had another significant behavioral incident. *Id.* at PageID.2013 at Tr 104 at l 24 – PageID.2014 at Tr 105 at l 2. While in the main office, P.H. began tearing things off the wall, attempting to shatter a window, ripping books and papers, and hitting and kicking staff members who attempted to get close to try to deescalate him. Petitioners Offered and Admitted Exhibits 1-62, ECF 28-4, PageID.2455. Ms. Miller-Hogan and Ms. Robertson were ultimately able to reach P.H. and physically transport him to the seclusion, "calm down," room, with P.H. screaming the entire time, begging not to be taken there. February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2013 at Tr 104 at l 24 – PageID.2014 at Tr 108 at l 25. Although Ms. Miller-Hogan had only approved a two-minute seclusion, C.H. had to personally request Ms. Robertson release P.H. as more than two minutes had elapsed. *Id.* at PageID.2014 at Tr 105 at l 21 – Tr 106 at l 2, PageID.2014 at Tr 108 at l 19 – PageID.2015 at Tr 109 at l 4. C.H. then walked P.H. back to the main office, stopping for a brief bathroom break, only for P.H. to suffer another behavioral episode almost immediately thereafter. *Id.* at PageID.109 at l 11-21. *See also* February 11, 2025 Hearing Transcript Volume II, ECF 27-12, PageID.1954 at l 7-11. P.H. destroyed hundreds of papers, destroyed numerous personal items, including picture frames, and hit Ms. Robertson with a closed fist. February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2015 at Tr 109 at l 20-23; February 11, 2025 Hearing Transcript Volume II, ECF 27-12, PageID.1954 at l 7 – PageID.1955 at l 17. Although C.H. requested to take P.H. home, as he was clearly severely escalated, Ms. Robertson refused, saying they could not let P.H. "win." February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2015 at Tr 109 at l 24 - Tr 110 at l 2. It

9

wasn't until 40 minutes elapsed that ELPS finally allowed C.H. to take P.H. home. *Id.* at Tr 110 at l 9-15.

Following the March 6 incident, Plaintiffs attempted to work with the District to develop an appropriate IEP and safety plan that would allow P.H. to safely and effectively access his education and make appropriate progress. *Id.* at PageID.2017 at Tr 120 at l 2 – PageID.2018 at Tr 121 at l 23, PageID.2019 at Tr 126 at l 2 – Tr 127 at l 9. Unfortunately, these efforts were to no avail and Plaintiffs ultimately disenrolled P.H. from Marble Elementary on May 8, 2024. *Id.* at PageID.2019 at Tr 127 at l 10-19; Respondent's Offered and Admitted Exhibits A-X, ECF 28-2, PageID.2233. Plaintiffs then filed a state complaint, alleging Defendant ELPS failed to provide P.H. with FAPE and received a favorable decision on August 30, 2024. Petitioners Offered and Admitted Exhibits 1-62, ECF 28-4, PageID.2484-2504. Shortly thereafter, on December 2, 2024, Plaintiffs filed a due process complaint against ELPS and IISD. Amended Complaint and Request for a Due Process Hearing, ECF No. 8-1, PageID.246. On January 10, 2025, Plaintiffs filed an Amended Due Process Complaint against ELPS and IISD, clarifying the issues for hearing. Amended Complaint, ECF 8, PageID.219 at ¶ 61, 62. The due process hearing took place February 10-14, 2025, regarding Plaintiffs' claims against Defendant ELPS only. *Id.* at PageID.220 at ¶ 66. As demonstrated during the hearing by testimony and supporting exhibits, Defendants repeatedly failed to implement P.H.'s IEP as written, failed to amend P.H.'s IEP to address his increasing disability-related behaviors and lack of progress, and, instead, repeatedly subjected to inappropriate uses of restraint and seclusion, all of which contributed to his denial of FAPE. *Id.* at PageID.230-241 at ¶¶ 123-197. On March 24, 2025, the Hearing Officer issued a final decision and order (the March 24 order) finding that ELPS had not violated IDEA. *Id.* at PageID.221 at ¶ 75.

In doing so, the Hearing Officer failed to properly analyze the issues for hearing, failed to apply the *Endrew F.* standard for determining the reasonableness of a District's offer of FAPE, ignored ample evidence regarding Defendant ELPS' violations of IDEA by a preponderance of the evidence, and contradicted his own statements made during the hearing. *Id.* at PageID.220-241 at ¶¶ 69-201. P.H. timely filed this appeal of that final order.

<u>**STANDARD OF REVIEW**</u>

Summary judgment should be granted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment "in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

The standard of review for IDEA appeals in the Sixth Circuit is "modified de novo." *See Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir. 2005); *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001). Under this standard, this Court is required to conduct an independent review of the entire record, including the administrative record and any additional evidence requested to be heard by a party, and then make an independent decision based on a preponderance of the evidence. *Deal*, 392 F.3d at 849. In reaching its decision, the Court must

11

also give due weight to the determinations made during the state administrative proceedings. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).

However, reviewing courts must not "simply adopt the state administrative findings without an independent re-examination of the evidence." *Doe ex rel. Doe v. Metro. Nashville Pub. Schs.*, 133 F.3d 384, 387 (6th Cir. 1998). "The modified de novo standard requires the Court to 'make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings.'" *B.S. v. Rochester Comm. Schs.*, No. 5:06-cv-53 at *9 (W.D. Mich. Oct. 2, 2006), citing *McLaughlin v. Holt Pub. Schs. Bd.*, 320 F.3d 663, 669 (6th Cir. 2003) (quoting *Knable*, 238 F.3d at 764). Further, "[t]he amount of weight due to administrative findings depends on whether the finding is based on educational expertise." *McLaughlin*, 320 F.3d at 669. "Under the 'due weight' framework, '[l]ess weight is due to an agency's determinations on matters which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation.'" *Rochester*, No. 5:06-cv-53 at *9 (quoting *McLaughlin*, 320 F.3d at 669).

## ARGUMENT

### I. The ALJ Improperly Narrowed the Issues

#### A. *Plaintiffs properly preserved their objection to the ALJ's improper narrowing of the issues*

Defendant ELPS' claim that Plaintiffs failed to preserve their objection to the ALJ's narrowing of the issues is without merit. The cases cited by Defendant ELPS can easily be distinguished. In *Barner v. Pilkington North America, Inc.*, the court dealt with an evidentiary concern related to "a district court's decision to admit or exclude evidence." 399 F.3d 745, 748 (6th Cir. 2005). The appellant's argument for admitting the evidence was not raised *at all* at the district court level. *Id.* The court's decision relied upon the maxim that, "[i]t is well settled law that

12

this court will not consider an error or issue which could have been raised below but was not." *Id.* at 749 (citing *Niecko v. Emro Marketing Co.*, 973 F.2d 1296, 1299 (6th Cir. 1992)). In *Armstrong v. City of Melvindale*, the Sixth Circuit was asked to determine the constitutional validity of a search warrant. 432 F.3d 695, 699 (6th Cir. 2006). The court then relied on *Barner* in rejecting one of Defendant's supporting arguments that had not been raised prior to its appeal. *Id.* at 700. Neither of these cases, or their fact patterns, aligns with Plaintiffs' case or the presentation of their issues for hearing. Plaintiffs did not present a claim regarding evidentiary concerns the constitutionality of a search warrant but rather presented a claim that Defendant ELPS (along with Defendant IISD) denied P.H. FAPE.

In *U.S. v Tucker Truck Lines*, the Supreme Court established a basic principle for courts reviewing objections to administrative proceedings: "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." 344 U.S. 33, 37 (1952). This principle has been repeatedly upheld by the Sixth Circuit. *See Bannum Place of Saginaw, LLC v. Nat'l Labor Relations Bd.,* 41 F.4th 518 (6th Cir. 2022), *Joseph Forrester Trucking v. Dir., Office of Workers' Comp. Programs*, 987 F.3d 581 (6th Cir. 2021). Here, Plaintiffs raised their objection timely, using the appropriate method.

Initially, Plaintiffs filed a due process complaint and request for hearing on December 2, 2024, outlining the issues for hearing. Am. Compl., ECF 8, PageID.213 at ¶ 30. When the ALJ unilaterally narrowed those issues at the December 10, 2024, prehearing conference, Plaintiffs appropriately objected on the record, citing the legal basis for that objection. *Id.* at PageID.217 at ¶¶ 51, 52. Over Plaintiffs' objection, the ALJ issued an order limiting the issues for hearing from

13

Plaintiffs' initial eight issues to only four limited issues. *See id.* at PageID.217-218 at ¶¶ 50, 53. Upon receipt of that order, Plaintiffs appropriately renewed their objection to the ALJ unilaterally changing and narrowing Plaintiffs' issue for hearing, again citing the legal basis for that objection. *Id.* at PageID.218 at ¶ 55-56. The ALJ never ruled on Plaintiffs' objection. *Id.* at ¶ 57. Plaintiffs then properly filed an amended due process complaint on January 10, 2025, pursuant to the same December 10 order, outlining the issues for hearing.  The ALJ did not set a second prehearing conference to discuss and confirm the issues. Am. Compl., ECF 8, PageID.220. Defendant ELPS never notified either Plaintiffs or the ALJ they felt the Amended Complaint, including the amended issues, failed to meet the requirements of IDEA. *Id.* Nor did Defendant ELPS ever claim they never received a copy of the Amended Complaint. Thus, going into the due process hearing, Plaintiffs had no reason to suspect that the issues outlined in their Amended Complaint were *not* the operative issues for the hearing. After the ALJ announced at the hearing he was still proceeding under his narrowed issues from the December 10, 2024 Order, Plaintiffs then reiterated their objection in their closing brief and the legal basis for that objection, noting:

> The administrative law judge shall exercise the following authority when appropriate: … (k) Direct the parties to appear or confer, or both, to *consider* clarification of issues, stipulations of facts, stipulations of law, settlement, and other related matters." R 792.10106 (emphasis added). ALJs may only direct the parties to consider clarifying issues. They may not order parents to limit their claims in any way. The IDEA specifically states that parents may file on any matter "relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to a child." 34 CFR 300.507(a)(1) (emphasis added). The complaint need only include, as relevant, "a description of the nature of the problem . . . including facts relating to the problem" (Id. at (b)(5)) and it "must be deemed sufficient unless the party receiving the due process complaint notifies the hearing officer and the other party in writing, within 15 days of receipt of the due process complaint." Id. at (d)(1). To the extent that the Michigan

14

> Administrative Code conflicts with the IDEA, the IDEA preempts the Michigan Administrative Code.[1]

Pet. Closing Brief., ECF 27-4, PageID.1329-1330.

In addition to timely and appropriately objecting to the ALJ's narrowing of the issues, Plaintiffs then proceeded to present evidence supporting their claims as outlined in the Amended Complaint at the due process hearing. *See also* Am. Compl., ECF 8, PageID.219 at ¶¶ 59, 61; Pet. Closing Brief, ECF 27-4, PageID.1330-1371. As the complainant, Plaintiffs are "master of the claim," *Fry v. Napoleon Sch. Dist.*, 137 S. Ct. 743, 755 (citing *Caterpillar Inc v. Williams*, 482 U.S. 386, 392 and n.7 (1987)). Once presented, Plaintiffs' claim can be argued in several ways. "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido, CA*, 503 U.S. 519, 534 (1992) (citing *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 78, n. 2, (1988); *Illinois v. Gates*, 462 U.S. 213, 219-220 (1983); *Dewey v. Des Moines*, 173 U.S. 193, 197-198, (1899)).

Here, Plaintiffs properly presented a claim in the Amended Complaint that Defendant ELPS denied PH a FAPE, supported by three specific arguments: failing to reevaluate P.H., failing to offer and/or provide P.H. an appropriate IEP, and failing to educate P.H. in the least restrictive environment. *See* Pet. Am. Due Process Compl., ECF 8-1, PageID.281-282 at ¶ 146. These

---

[1] "[F]ederal law can impliedly preempt state law even when it does not do so expressly. Like its express preemption decisions, the Supreme Court's implied preemption cases focus on Congress's intent. The Supreme Court has recognized two general forms of implied preemption: field preemption and conflict preemption…. Conflict preemption occurs when state law interferes with federal goals." CONGRESSIONAL RESEARCH SERVICE, *Federal Preemption: A Legal Primer* (May 18, 2023), p. 17, https://www.congress.gov/crs-product/R45825 (internal citations omitted). "The Supreme Court has identified two subcategories of conflict preemption. First, federal law impliedly preempts state law when it is impossible for regulated parties to comply with both sets of laws (impossibility preemption). Second, federal law impliedly preempts state laws that pose an obstacle to the 'full purposes and objectives' of Congress (obstacle preemption)." *Id*. at 23 (internal citations omitted). "Federal law also impliedly preempts state laws that pose an 'obstacle' to the 'full' purposes and objectives" of Congress. In its obstacle preemption cases, the Supreme Court has held that state law can interfere with federal goals…impeding the vindication of a federal right." *Id*. at 25 (internal citations omitted). "The Supreme Court has also held that state law can pose an obstacle to federal goals where it impedes the vindication of federal rights." *Id*. at 27.

arguments were not distinct, individual claims themselves, but subsidiary questions to help identify why P.H. was not provided a FAPE, as clearly acknowledged by the ALJ in his request for information about P.H.'s FBA related to his narrowed second issue, discussed further in the next section of this Brief. *See also* Am. Compl., ECF 8, PageID.281-282 at ¶ 146 (ending each subsidiary question for hearing with the claim, "thereby denying P.H. FAPE"). That the ALJ unilaterally chose to narrow the issues for his own procedural convenience does nothing to limit Plaintiffs from arguing their claims as presented in the Amended Complaint. During the hearing, Plaintiffs presented evidence supporting a finding against ELPS with respect to each of the issues outlined in the amended Complaint. *See* Pet. Closing Brief, ECF 27-4, PageID.1335-1366.

Contrary to Defendant ELPS' claim that Plaintiffs "briefed an odd mix of issues" following the due process hearing, and its resuscitation of the ALJ's comments addressing Plaintiffs' objection to the hearing issues as including an issue that was "never requested" and an attempt to "bring up any issue they desire" (Def. ELPS Mot. for Summary Judgment and Brief in Support, ECF 34, PageID.3563, 3564), Plaintiffs were doing nothing more than reiterating the issues of which ELPS and the ALJ had been placed on notice via the Amended Complaint, filed *after* the December 10 prehearing conference call and at the ALJ's request. *Compare* Pet. Amended Due Process Compl., ECF 8-1, PageID.281-282 *to* Pet. Closing Brief, ECF 27-4, PageID.1335-1366. Plaintiffs then summarized the evidence they had already presented at the due process hearing in support of their arguments as to why Defendant ELPS had denied P.H. FAPE. *See* Pet. Closing Brief, ECF 27-4, PageID.1335-1366.

In *Hormel v. Helvering*, the Supreme Court provided a general framework for analyzing issues raised first on appeal, focusing on the evidence provided at the hearing, noting, "parties should have an opportunity to offer evidence on the general issues involved in the less formal

16

proceedings before administrative agencies entrusted with the responsibility of fact finding." 312 U.S. 552, 556-57 (1941). In *Singleton v. Wulff*, the Supreme Court affirmed *Hormel*'s general framework, further noting, "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." 428 U.S. 106, 121 (1976).

As the Sixth Circuit has held, "The Court has discretion to resolve an issue that was not raised before the district court 'where the proper resolution is beyond any doubt, or where injustice might otherwise result.'" *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 428 (6th Cir. 2002) (citing *Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 261 (6th Cir. 1996)). In reaching its decision in *Chao*, the court relied on *Smith v. CMTA-IAM Pension Trust*, 654 F.2d 650 (9th Cir. 1981), finding:

> In *Smith*, the parties conducted themselves before the district court as though there were an ERISA claim as well as another state law claim. *See id.* at 654 n. 2. However, these claims were never presented to the district court. *See id.* Consequently, the "Appellees argue[d] that the ERISA claim [could not] be raised ... because it was not properly before the district court." *See id.* The Ninth Circuit disagreed, stating: Although [the] complaint was never technically amended to include either the ERISA or the state claim, both were fully argued in the parties' pre-hearing memoranda as well as at the motions hearing. While we do not approve of appellant's failure to adhere strictly to the procedures for amendment mandated by Fed.R.Civ.P. 15(a), where both parties have fully argued a claim below, we will treat the pleadings as though they have been amended for purposes of appellate review.

*Id.* at 427-428 (citing *Smith*, 654 F.2d at 654 n. 2). This reasoning is directly applicable here. First, as a key point of distinction, Plaintiff did not raise their claims for the first time on appeal, but rather properly raised them in the Amended Complaint. Second, ELPS will suffer no injustice by this Court considering Plaintiff's objection to the ALJ's narrowing of the issues because 1) Defendant ELPS was aware of Plaintiffs' objection to the narrowing of issues and the legal basis

17

for that objection following the ALJ's order at the December 10, 2024 prehearing conference; 2) ELPS received notice of the issues for hearing via Plaintiffs' Amended Complaint, filed on January 10, 2025, and failed to object to those issues; 3) both parties presented evidence related to Defendant ELPS' failure to provide P.H. FAPE; and 4) Defendant ELPS was given the opportunity to directly respond to Plaintiffs' arguments in its response to Plaintiffs' closing brief following the due process hearing. Therefore, like the parties in *Smith*, as affirmed by the Sixth Circuit in *Chao*, the parties here have fully argued the claims, and they are preserved for appellate review.

Thus, by including these issues in the Amended Complaint, providing proper notice of these issues to the ALJ and Defendant ELPS, presenting evidence at the due process hearing, and identifying the ALJ's failure to properly consider the claims identified in the Amended Complaint in their closing brief, Petitioners properly preserved the issue for appeal.

B. *Even if Plaintiffs failed to preserve this claim, Plaintiffs' allegation that P.H. was not properly evaluated should have been part of the ALJ's consideration of P.H.'s least restrictive environment (LRE).*

Even if this Court finds that Plaintiffs failed to preserve their claim objecting to the ALJ's narrowing of the issues, Plaintiffs' allegation that P.H. was not properly evaluated should still have been properly considered under the ALJ's determination of whether P.H. was educated in the least restrictive environment. As the ALJ stated at the close of the hearing, when advising the parties what information he was seeking clarification on for his decision in the closing briefs:

> So in terms of the Respondent's – Issue B, which is Respondent's failure to educate the student in the least restrictive environment . . . there was a lot of discussion about the FBA and when it – when it was required specifically. So thoughts on that from each side, and then what is shown, what it – you know, what the – what was the rationale, what was the reasoning and what would it have shown, what could or should have been done differently and would it have made a – would it have made a difference, a substantial difference here.

18

February 14, 2025 Hearing Transcript Vol. V, ECF 27-6, PageID.1410-1411 at Tr 960, l 19-21, Tr 961 at l 25 – Tr 962 at l 8. Plaintiffs clearly presented evidence on Respondent's failure to evaluate P.H. in their closing brief that responded directly to the ALJ's request for information pursuant to issue two, which he was going to be ruling on. *See* Pet. Closing Brief, ECF 27-4, PageID.1335-1351. Specifically, as it relates to the ALJ's inquiry on when the FBA should have been done, the rationale, and what could or should have been done differently, Plaintiffs dedicated an entire subsection of their brief titled, "An FBA was necessary for P.H. beginning in the Fall 2023 semester, and certainly before March 2024." *Id.* at PageID.1342; *see also id.* at PageID.1342-1348. Plaintiffs' immediately preceding subsection, "Signs that reevaluation was warranted began during the Fall 2023," also addressed the question of when an FBA should have been done. *See id.* at PageID.1337-1342. Later in Plaintiffs' closing brief, when addressing Defendant ELPS' failure to provide FAPE, Plaintiffs then directly responded to the ALJ's question of what an FBA would have shown and if it would have made a difference, stating:

> As explained previously, Respondent failed to conduct the evaluations necessary to determine why P.H. was not making educational progress appropriate to his circumstances and was continuously regressing behaviorally. Not performing comprehensive evaluations is unconscionable and entirely at odds with the letter and spirit of IDEA. The law requires evaluations to identify both the student's eligibility and their educational needs. See 34 CFR 300.304(b)(1). See also 34 CFR 300.301(2); 34 CFR 300.303(a)(1). Due to its own failure to investigate and perform evaluations so routine as an FBA, Respondent failed to appropriately identify P.H.'s educational and related needs sufficient to provide him with an IEP reasonably calculated to provide him with FAPE and failed to review and revise his IEP when his educational or related service needs warranted a revision, thus denying him FAPE.

Thus, as the ALJ alluded, this evidence should all be considered as part of the assessment of whether P.H. was educated in the least restrictive environment.

19

Defendant ELPS is correct that, "Plaintiffs are entitled to a review of the case they actually tried, not 'a better case fashioned after a[n] ... unfavorable order.' *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (quoting *Barner*, 399 F.3d at 749)." Def. ELPS Mot. for Summary Judgment and Brief in Support, ECF 34, PageID.3564. That is exactly what Plaintiffs are requesting here—for a review of the proper, operative issues Plaintiffs presented in their Amended Complaint, based on the evidence Plaintiffs presented at the February 2025 due process hearing and summarized in their closing brief. For these reasons, Plaintiffs properly preserved this issue for appeal.

## II.    ELPS Failed to Educate P.H. in the LRE

The ALJ's purported confusion regarding Petitioner's argument that P.H. was not educated in the least restrictive environment while simultaneously pushing for, or placing P.H. in, a "more restrictive" setting reflects a deep misunderstanding and misapplication of the least restrictive environment standard. *See* February 14, 2025 Hearing Transcript Vol. V, ECF 27-6, PageID.1410 at Tr 960, l 22 – Tr 961, l 6.

"IDEA's least restrictive environment requirement (LRE) cannot be divorced from the FAPE requirement." *S.P. ex rel. M.P. v. Knox Cnty. Bd. of Educ.*, 388 F.Supp.3d 947, 953 (E.D. Tenn. 2019) (citing *L.H. v. Hamilton Cnty. Dep't of Educ.*, 900 F.3d 779, 788 (6th Cir. 2018)). *See also L.H. v. Hamilton Cnty. Dep't of Educ.*, Case No. 1:14-CV-00126 at *24 (E.D. Tenn. Nov. 4, 2016) ("As a technical matter, the least-restrictive-environment mandate is probably best conceived as a subcategory of the *Rowley-Deal* FAPE analysis."). As noted by the Sixth Circuit in *L.H.*, "A FAPE has two requirements that are relevant here: the school must prepare an 'individualized education program' (IEP) for the disabled student, § 1414(d)(1)(A); *and* that IEP must provide the FAPE so as to educate the disabled student in the 'least restrictive environment'

20

(LRE) possible, § 1412(a)(1), (5)." 900 F.3d at 788. "The IEP is 'the centerpiece of the [IDEA]'s education delivery system for disabled children.' *Honig v. Doe*, 484 U.S. 305, 311 (1988) . . . The LRE is a non-academic restriction or control on the IEP—separate and different from the measure of substantive educational benefits—that facilitates the IDEA's strong 'preference for 'mainstreaming' handicapped children.'" *Id.* at 788, 789 (citing *Rowley*, 458 U.S. at 181 n.4). The Sixth Circuit established three categories of children where a segregated setting may be appropriate: "(1) where the child would not receive a benefit from mainstreaming; (2) where any marginal benefits of mainstreaming would be far outweighed by the benefits of a separate setting that could not feasibly be provided in a non-segregated setting; or (3) where the child would be a disruptive force in the non-segregated setting." *Id.* at 789 (citing *Roncker on Behalf of Roncker v. Walter*, 700 F.2d 1058, 1063 (6th Cir. 1983)). The *Roncker* court also noted, "In a case where the segregated facility is considered superior, the court should determine whether the services which make that placement superior could be feasibly provided in a non-segregated setting." *Roncker*, 700 F.2d at 1063.

Applying this applicable case law to the instant matter, Plaintiffs' argument is quite simple, and the evidence clearly supports that P.H. was not educated in the least restrictive environment: Because ELPS failed to provide P.H. an IEP reasonably calculated to provide him with FAPE (*see* Pl. Brief in Support of Mot. for Summary Judgment, ECF 36, PageID.3590-3603), it *couldn't* (and didn't) accurately identify and educate P.H. in his least restrictive environment. On paper, P.H. was a general education placement, but really, he was given something more restrictive – an isolated setting, away from his general education peers, and without the appropriate supports or any accurate plan (e.g., the IEP) to allow him to make appropriate progress or transition back into a more inclusive general education setting. *See id.* at Pet. Closing Brief, ECF 8-3, PageID.331-332.

21

Defendant ELPS allowed P.H.'s pre- and post-winter-break behaviors to restrict his educational experience to the principal's office or a nearby conference room, even if Defendant ELPS did not follow suit by adjusting his IEP placement to reflect that new reality. *See* February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2005 at Tr 69 at l 21 – Tr 72 at l 1. Defendant ELPS did not provide P.H. the actual placement that it put forward his IEP, nor did it consider whether the services and supports ELPS *was* providing could be implemented in a more mainstreamed setting than an office or conference room. Despite P.H.'s daily program and services not reflecting what was in his IEP, Defendant IEP never amended P.H.'s IEP to reflect these changes. In failing to amend P.H.'s IEP, or to implement it with fidelity as written, Defendant ELPS failed to ensure P.H.'s IEP was "the centerpiece of [P.H.'s] delivery system" for services. As a result, Defendant ELPS never even reached the question of what was P.H.'s least restrictive environment based on the services and supports being provided to P.H, and if such a heavily segregated setting was appropriate, while continuing to disregard IDEA's "strong preference" for mainstreaming. Thus, in requesting that P.H. be educated in the least restrictive environment, Plaintiffs wanted his placement to reflect his actual needs and meet them appropriately based on thoughtful discussion and supporting data.

In comparing the isolated setting in which P.H. was actually being educated while attending ELPS to P.H.s' placement now, the ALJ noted in his final order, "The only articulated differences between Student's January/February 2024 placement and his January/February 2025 placement are that an FBA has been/is being conducted and the presence of a BCBA." March 25, 2024 Order, ECF 8-4, PageID.359. But this difference is not meaningless; it is precisely this difference that makes the difference between receiving FAPE in the least restrictive environment and not. Had Defendant ELPS conducted an FBA, particularly with the oversight of a BCBA, in

22

January/February 2024, Defendant ELPS would have had the necessary information to develop and implement a plan that allowed P.H. to access his promised placement in the general education setting, alongside his non-disabled peers. If Defendant ELPS would have evaluated P.H. using an FBA in January or February 2024, then it could have determined the function of his behavior and built an appropriate behavior plan around replacing his difficult behaviors with more prosocial behaviors for the remainder of the semester. Alternatively, P.H. could have been formally placed in an appropriate setting that gave him access to at least some peers and provided him the necessary supports to make progress towards his IEP goals and possibly work towards a more inclusive setting. Instead, Defendant ELPS informally whittled away at P.H.'s general education time, allowing his behaviors to exponentially worsen as P.H. became increasingly aggressive in his isolation, creating the very conditions laid out in *Roncker* that unfortunately support a more restrictive and segregated setting. As such, even though P.H. is still on a shortened school day, by receiving an FBA and services from a BCBA, that shortened school day is now intentional and structured in a way that allows him to make progress towards his education and increasing his time in the educational setting. *See* February 10, 2024 Hearing Transcript Vol. I, ECF 27-14, PageID.2020 at Tr 130, l 1-3 ("And now, you know, he's doing much better, and they're working on building his day to a day that will work for him."). *See also id.* at Tr 129, l 10 – Tr 130, l 16; PageID.2036 at Tr 196, l 3 – PageID.2037 at Tr 198, l 20.

While the services P.H. is receiving now theoretically could have been implemented at ELPS, ELPS failed to take the necessary steps to identify and implement them to ensure P.H.'s receipt of FAPE in the least restrictive environment. Instead, Defendant ELPS inappropriately kept P.H. in the kind of limbo that does no favors to students who have a hard time regulating themselves—a general education placement on paper without appropriate supports to access that placement, while

23

denying him the opportunity to try the more specialized, segregated placement, while keeping him in one, *de facto*, without the specialized supports typical of such a placement. In short, P.H. received all the downsides of a restricted setting with none of the typical benefits, all the while never receiving FAPE. For these reasons, Defendant ELPS failed to educate P.H. in the least restrictive environment.

## III.    ELPS Failed to Provide P.H. with a FAPE

As discussed at length in Plaintiffs' Brief in Support of Motion for Summary Judgment, a modified de novo review of the administrative record clearly shows Defendant ELPS failed to provide P.H. with FAPE. *See* Pl. Brief in Support of Mot. for Summary Judgment, ECF 36, PageID.3590-3603. ELPS failed to properly and timely evaluate P.H. to understand appropriate supports, failed to have appropriate supports in place for the purported general education placement, failed to develop and implement a plan to return P.H. to a full day at school, and further failed to document the services that were provided. *See id.* Contrary to Defendant ELPS' claims, and contrary to the ALJs March 25 order, Plaintiffs did not unilaterally "choose" to keep P.H. on a shortened school day. Even if they had, Defendant ELPS' claim that they were simply "honoring" Plaintiffs' alleged decision completely ignores clear guidance from the Michigan Department of Education (MDE). *Compare* Def. ELPS Brief in Support of Mot. for Summary Judgment, ECF 34, PageID.3541 *to* MICH. DEP'T OF EDUC., OFFICE OF SPECIAL EDUC., *Guidance: Shortened School Day* (Sept. 2022), https://www.michigan.gov/-/media/Project/Websites/mde/specialeducation/discipline/ShortenedSchoolDay.pdf. Per MDE's guidance, schools are not required to shorten a school day upon parent request and, if a parent makes such a request, the District "must respond to the parent's request by providing written notice, consistent with 34 C.F.R. §300.503(a)(b)." *Id*. As further noted by MDE, "The only time it is appropriate to shorten the school day for a student with a disability is when the student's IEP

24

Team determines a shortened day is required to address the student's unique disability-related needs. This decision must be reflected in the student's IEP, including documenting the reasons for the shortened day *and providing a plan for returning to a full school day*." *Id.* (emphasis added). Yet, Defendant ELPS never developed a plan for returning P.H. to a full school day at school. These failures impacted every phase of the iterative cycle contemplated by IDEA — (1) full initial evaluation, (2) plan for appropriate supports and measurable based on results of full initial evaluation, (3) implementation of supports and services and the collection and reporting of accurate data to understand progress based on current plan, and (4) reassess based on data received and any development requiring additional evaluation. As a result, P.H. did not receive a FAPE.

As Dr. Cheryl Light Shriner testified at the hearing, to provide P.H. with a FAPE, ELPS should have maintained additional documentation and gathered data surrounding P.H.'s behaviors, mainly because he had behavioral goals on his IEP. *See* February 10, 2024 Hearing Transcript Vol. I, ECF No. 27-12, PageID.1764-1765. Dr. Light Shriner explained that an FBA would have been necessary at the very least by the time P.H.'s behaviors escalated, but another concern she had was that the supportive services already in place under P.H.'s IEP needed to be implemented with fidelity. *Id.* at PageID.1763-1767. Dr. Light Shriner explained that, while there may have been a honeymoon period in the early parts of the Fall 2023 semester as P.H. adjusted to the new school, there were clear signs that he was struggling later in the Fall 2023 semester. *Id.* Despite this and the fact that P.H.'s IEP included a self-regulation goal, ELPS failed to document any behavior or information relating to his self-regulation goal—even positive information. *Id.* Still, Dr. Light Shriner testified that she felt even the limited documentation available about P.H. clearly supported conducting an FBA. *Id.* at PageID.1785, l 18-25. Dr. Light Shriner also testified that ELPS should have conducted an FBA when C.H. and R.H. requested it. *Id.* at PageID.1786, l 23- PageID.1787,

25

1 1. Dr. Light Shriner further explained that, due to the absence of data and documentation surrounding P.H.'s behaviors at school and the implementation of his IEP services, she was unable to determine exactly when an FBA should have been conducted, but at the very latest it should have been when his behaviors escalated in December 2023. *Id*. at PageID.1788, l 2-15. It was Dr. Light Shriner's expert conclusion that ELPS failed to properly document P.H.'s behaviors—whether positive or negative—and his escalations and failed to conduct an FBA. *Id*. at PageID.1790-1791.  These failures violated P.H.'s right to a FAPE.

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons set forth above, as well as those outlined in Plaintiffs' Brief in Support of Motion for Summary Judgment, ECF 36, Plaintiffs request that this Court issue an order denying Defendant ELPS summary judgment under Federal Rule of Civil Procedure 56, granting Plaintiffs' Motion for Summary Judgment, and granting Plaintiffs the following relief:

A. Order Defendants, jointly and severally, to provide P.H. with a compensatory education and related services bank of 400 hours, with no expiration date, for academic and related services, including but not limited to academic tutoring, speech and language therapy, occupational therapy, social-emotional support, and behavioral therapy, to be delivered by providers of Plaintiffs' choosing at their normal and customary rates;

B. Order Defendants, jointly and severally, to provide financing for a 3-6 month ABA therapy program, local to P.H., to address his ASD-related behavioral and academic needs, to be delivered by providers of Plaintiffs' choosing at their normal and customary rates;

C. Order Defendants, jointly and severally, to reimburse Plaintiffs for tutoring evaluation and services for P.H. during the 2023-2024 school year in the amount of $1,300;

26

D.  Order Defendants, jointly and severally, to reimburse Plaintiffs for lost income, moving expenses, and increased household expenses necessitated by Defendants' failure to provide P.H. with FAPE;

E.  Find that Plaintiffs are the prevailing party;

F.  Order attorney fees to be awarded to Plaintiffs as the prevailing party; and

G.  Order any such further relief as the Court deems just and appropriate.

Respectfully submitted,
ABDNOUR WEIKER LLP

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour (P78203)
Megan Mitchell (P87312)
Jacquelyn Kmetz (P83575)
325 E. Grand River Ave., Ste. 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
megan@education-rights.com
jacquelyn@education-rights.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the limits set forth in LCivR 7.2(b)(i). Further, based on the Word Count function of Microsoft Word for Mac word processing software, applied to include all include headings, footnotes, citations and quotations, but not to include the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, I certify that this Brief contains 8,392 words.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour

27

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I filed this document by use of this Court's ECF system, which will serve copies to the Clerk of Courts and all counsel of record.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour
