**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **CHRISTI HENKE and**<br>**RICH HENKE o/b/o P.H.**<br><br>        Plaintiff,<br><br>v.<br><br>**EAST LANSING PUBLIC SCHOOLS**<br>**and INGHAM INTERMEDIATE**<br>**SCHOOL DISTRICT,**<br><br>        Defendants. | Case No.: 1:25-cv-680<br><br>Hon. Hala Y. Jarbou<br><br>**PLAINTIFFS' BRIEF IN RESPONSE TO**<br>**DEFENDANT IISD'S MOTION FOR**<br>**SUMMARY JUDGMENT** |

| | |
|---|---|
| Elizabeth K. Abdnour (P78203)<br>Megan N. Mitchell (P87213)<br>Jacquelyn Kmetz (P83575)<br>ABDNOUR WEIKER, LLP<br>325 E. Grand River Ave., Suite 250<br>East Lansing, MI 48823<br>(517) 994-1776<br>liz@education-rights.com<br>megan@education-rights.com<br>jacquelyn@education-rights.com<br>*Attorneys for Plaintiffs* | Erin H. Walz (P55484)<br>THRUN LAW FIRM, P.C.<br>2900 West Rd., Suite 400<br>P.O. Box 2575<br>East Lansing, MI 48826-2575<br>(517) 374-8830<br>ewalz@thrunlaw.com<br>*Attorneys for Defendant*<br>*East Lansing Public Schools*<br><br>Jordan M. Bullinger (P72441)<br>CLARK HILL, PLC<br>200 Ottawa Ave NW, Suite 500<br>Grand Rapids, MI 49503<br>(616) 608-1146<br>jbullinger@clarkhill.com<br>*Attorneys for Defendant*<br>*Ingham Intermediate School District* |

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT**
**INGHAM INTERMEDIATE SCHOOL DISTRICT'S**
**MOTION FOR SUMMARY JUDGMENT**

1

## TABLE OF CONTENTS

COUNTER STATEMENT OF FACTS ....................................................................................... 3

STANDARD OF REVIEW ...................................................................................................... 10

ARGUMENT .........................................................................................................................11

   I.    Plaintiffs' Appeal was Timely ...........................................................................11

     A.   Plaintiffs filed their appeal within 90 days of a final decision .....................................11

     B.   Facts exist to apply equitable tolling and allow Plaintiffs' claims to proceed ............. 14

   II.    IISD should not have been dismissed from the due process proceeding................ 19

CONCLUSION AND REQUEST FOR RELIEF ....................................................................... 24

### COUNTER STATEMENT OF FACTS

Plaintiffs C.H. and R.H. are the parents and legal guardians of P.H. Appeal, ECF 8, PageID.209 at ¶ 1. P.H. is a 9-year-old child with qualifying disabilities under the IDEA and is therefore entitled to receive special education and related services under the IDEA. Am. Compl., ECF 8-1, PageID.248 at ¶ 5. P.H. was enrolled in East Lansing Public Schools (ELPS) from August 2023 to April 2024. *Id.* at ¶ 6. Ingham Intermediate School District (IISD) is the regional intermediate school district in which Plaintiffs and P.H. resided at all times relevant to this complaint. *Id.* at PageID.247 at ¶ 7, PageID.248 at ¶7d. ELPS and IISD worked in conjunction to develop and provide P.H. FAPE. Respondent's Offered and Admitted Exhibits A-X, ECF 28-2, PageID.2307-2311; Petitioners' Offered and Admitted Exhibits 1-62, ECF 28-3, PageID.2356, PageID.2374, PageID.2387-2424; Petitioners' Offered and Admitted Exhibits 1-62, ECF 28-4, PageID.2557, PageID.2560-2561.

As the Intermediate School District, IISD worked with ELPS to additionally provide P.H. special education services and supports. Respondent's Offered and Admitted Exhibits A-X, ECF 28-2, PageID.2307-2311; Petitioners Offered and Admitted Exhibits 1-62, ECF 28-3, PageID.2356, PageID.2360, PageID.2365, PageID.2374, PageID.2379, PageID.2383, PageID.2387-2424; Petitioners Offered and Admitted Exhibits 1-62, ECF 28-4, PageID.2557, PageID.2560-2561. *See also* March 24, 2025 Decision and Order, ECF 8-4, PageID.388-392 at ¶¶ 290-341. Specifically, IISD employed both an occupational therapist and an autism consultant that both worked with P.H. and his ELPS service providers. March 24, 2025 Decision and Order, ECF 8-4, PageID.388-392 at ¶¶ 290-341.

Plaintiffs enrolled P.H. at Marble Elementary school for the 2024-2025 school year, and P.H. was immediately placed on a shortened school day. *Id.* at PageID.368 at ¶ 15, PageID.368 at ¶ 20. An IEP team meeting was held three weeks into the school year, on September 13, 2023.

3

Petitioners Offered and Admitted Exhibits 1-62, ECF 28-3, PageID.2356. P.H.'s areas of need included reading, socio-emotional behavior, speech and language, and fine motor skills, similar to his previous IEP. *Compare* Petitioners Offered and Admitted Exhibits 1-62, ECF 28-3, PageID.2340-2342 *to* PageID.2358-2359. However, despite carrying over the same areas of need, the IEP inexplicably cut P.H.'s social work services, eliminated many of his supplementary aids and services, and failed to provide a behavior plan or positive behavioral intervention supports (PBIS) to address P.H.'s significant socio-emotional needs. *Compare id.* at PageID.2344-2345 *to* PageID.2360, PageID.2365.

For the first half of the 2023-2024 school year, while P.H. was physically present, he began showing increasing signs of school avoidance and increased socio-emotional behaviors following the IEP meeting. March 24, 2025 Decision and Order, ECF 8-4, PageID.351; Respondent's Offered and Admitted Exhibits A-X, ECF 28-2 at PageID.2269-2271, PageID.2273; February 12, 2025 Hearing Transcript Volume III, ECF 27-11, PageID.1693 at l 5-25; February 13, 2025 Hearing Transcript Volume IV, ECF 27-9, PageID.1459 at Tr 851 at l 13-25; February 14, 2025 Hearing Transcript Volume V, ECF 27-5, PageID.1391 at Tr 884 at l 3-25. P.H. began spending less time with peers, exhibiting increased anxiety, taking more frequent walking breaks, and, most noticeably, spending an increasing amount of time spent in the bathroom. March 24, 2025 Decision and Order, ECF 8-4, PageID.399 at ¶¶ 429-436; February 10, 2025 Hearing Transcript Volume I, ECF 27-13, PageID.1999 at Tr 48 at l 11-15, PageID.2002 at Tr 57 at l 22 - Tr 58 at l 1; February 11, 2025 Hearing Transcript Volume II, ECF 27-12, PageID.1924 at l 6 – PageID.1925 at l 8; February 12, 2025 Hearing Transcript Volume III, ECF 27-11, PageID.1692 at l 16-22, PageID.1720 at l 22 – PageID.1721 at l 22, PageID.1722 at l 3-13; February 14, 2025 Hearing Transcript Volume V, ECF 27-5, PageID.1390-1391 at Tr 880-882, PageID.1391 at Tr 884 at l 8-

4

19; Petitioners Offered and Admitted Exhibits 1-62, ECF 28-8, PageID.2909, PageID.2914-2915, PageID.2917. P.H.'s behavior only worsened after the winter break. March 24, 2025 Decision and Order, ECF 8-4, PageID.351-352, PageID.361, PageID.368 at ¶ 25, PageID.369 at ¶ 34, 36; Petitioners Offered and Admitted Exhibits 1-62, ECF 28-8 at PageID.2928;  February 10, 2025 Hearing Transcript Volume I, ECF 27-13, PageID.2003 at Tr 64 at l 12-19. Other IEP team members, including P.H.'s occupational therapist from the IISD, acknowledged the noticeable change in behaviors. February 12, 2025 Hearing Transcript Volume III, ECF 27-11, PageID.1516 at l 13-21, PageID.1593 at l 23 – PageID.1595 at l 11. P.H. even went so far as to pretend he was dead to avoid an occupational therapy session with IISD occupational therapist, Stacy Turke. February 12, 2025 Hearing Transcript Volume III, ECF 27-11, PageID.1594 at l 20-25. Ms. Turke even requested Plaintiff C.H. wait outside her classroom in case she needed to intervene for P.H.'s behaviors. February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2006 at Tr 76 at l 10-17. Due to P.H.'s increasing socio-emotional needs and inability to participate in learning activities, he was not making any progress toward his IEP goals or the general education curriculum, particularly in reading, and Plaintiff C.H. was attending with him daily just to get him into the building. February 10, 2025 Hearing Transcript Volume I, ECF 27-13, PageID.2002 at Tr 59 at l 4-9, PageID.2004 at Tr 65 l 23 – Tr 67 at l 10; February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2005 at Tr 69 at l 23 – Tr 72 at l 22, PageID.2006 at Tr 75 at l 1-20. Yet, despite all these clear changes in P.H.'s behavior, Defendant IISD never took any action to amend P.H.'s IEP services, whether via a meeting or an amendment, nor to conduct a functional behavior assessment (FBA) or other relevant evaluations to address these increasing needs and lack of progress. February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2008 at Tr 82 at l 16 – PageID.2009 at Tr 85 at l 23, PageID.2009 at Tr 86 at l 8.

Even worse than failing to amend P.H.'s services or conduct evaluations, Defendants then began further disrupting P.H.'s shortened school day by changing his schedule daily, based solely on the availability of Ms. Miller-Hogan (ELPS School Social Worker), Kristen Casby (ELPS special education teacher), Stacy Turke (IISD OT), and P.H.'s paraprofessionals, versus P.H. and his individual needs. February 10, 2025 Hearing Transcript Volume I, ECF 27-13, PageID.2004 at Tr 68 at l 7-23. Although Plaintiffs specifically requested P.H. be transferred to an ASD classroom, to work with the reading intervention teacher, and to have Plaintiff C.H. attend with P.H. in the general education classroom or otherwise engage with his peers, these requests were inexplicably denied with no alternatives offered. February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2007 at Tr 80 at l 14-19, PageID.2009 at Tr 87 at l 4-9. Without any increase or modifications to his special education services or supports, and with the added unpredictability of his daily schedule and increasing isolation from his peers, unsurprisingly, P.H.'s behaviors continued to exponentially worsen throughout February and March 2024. *Id.* at PageID.2009 at Tr 88 at l 19-24, PageID.2011 at Tr 96 at l 24 – PageID.2012 at Tr 97 at l 23.

On February 9, 2024, while attending an occupational therapy session with Ms. Turke, P.H. ran away as Ms. Turke was attempting to take P.H. back to the office and transition him to the next service provider. *Id.* at PageID.2007 at Tr 77 at l 9-25. Both Ms. Turke and Ms. Miller-Hogan had to search the school for P.H., before ultimately finding him in the unoccupied STEM classroom, hiding between cabinets. *Id.* On February 27, 2024, P.H. managed to elope out of the building in an attempt to run home, getting as far as the middle of one of the busiest intersections in East Lansing until Plaintiff C.H. was able to catch up with him and bring him safely back to the school building. *Id.* at PageID.2012 at Tr 97 at l 24 – PageID.2013 at Tr 101 at l 25; February 10, 2025 Hearing Transcript Volume I, ECF 27-16, PageID.2050 at Tr 249 at l 21 - Tr 250 at l 12.

P.H.'s increasing needs and behaviors reached a peak on March 4, 2024, with a significant behavioral incident involving property disruption. February 10, 2025 Hearing Transcript Volume I, ECF 27-14, PageID.2010 at Tr 89 at l 1-12. Defendants convened an IEP meeting on March 5, 2024, to discuss the incident and finally made any changes to P.H.'s IEP. *Compare* Petitioners Offered and Admitted Exhibits 1-62, ECF 28-3, PageID.2356-2367 *to* PageID.2371-2384. The changes to the present levels of academic achievement and functional performance section of P.H.'s IEP unequivocally indicated a clear increase in P.H.'s behavioral needs over the preceding six months. *Compare Id.* at PageID.2356-2359 *to* PageID.2371-2378. However, despite documenting such regression, the only change to P.H.'s supplementary aids and services was to add a medical plan. *Compare Id.* at PageID.2360 *to* PageID.2379. Relatedly, although P.H.'s social work services were nominally increased from 20-35 minutes, 1-2 times a week, to 20-50 minutes, 1-5 times a week, there were no changes to his occupational therapy services and his speech and language therapy was *reduced*. *Compare Id.* at PageID.2365 *to* PageID.2383. There were also no changes made to P.H.'s ASD teacher consultant services, as the ASD teacher consultant, Kelsey Kujawa, was not invited to the meeting. February 12, 2025 Hearing Transcript Volume III, ECF 27-11, PageID.1649 at l 2-9. Equally concerning, the revised IEP continued to claim P.H. was spending the majority of the day in the general education setting, despite Defendants' having denied P.H. any access to his general education peers for months. Petitioners Offered and Admitted Exhibits 1-62, ECF 28-3, PageID.2383. At the conclusion of the meeting, Plaintiffs raised their concerns about P.H.'s safety, due to his aggression and elopement, but Defendants failed to develop a safety plan or otherwise present any clear plan to address P.H.'s safety needs, and expressly denied Plaintiffs' request to move P.H. to an ASD classroom. February 10, 2025 Hearing Transcript

Volume I, ECF 27-14, PageID.2011 at Tr 94 at l 23 – Tr 95 at l 16, PageID.2013 at Tr 102 at l 3 - Tr 103 at l 22.

The following day, March 6, P.H. had another significant behavioral incident. *Id.* at PageID.2013 at Tr 104 at l 24 – PageID.2014 at Tr 105 at l 2.

Following the March 6 incident, Plaintiffs attempted to work with Defendants to develop an appropriate IEP and safety plan that would allow P.H. to safely and effectively access his education and make appropriate progress. *Id.* at PageID.2017 at Tr 120 at l 2 – PageID.2018 at Tr 121 at l 23, PageID.2019 at Tr 126 at l 2 – Tr 127 at l 9. Unfortunately, these efforts were to no avail and Plaintiffs ultimately disenrolled P.H. from Marble Elementary on May 8, 2024. *Id.* at PageID.2019 at Tr 127 at l 10-19; Respondent's Offered and Admitted Exhibits A-X, ECF 28-2, PageID.2233. On December 2, 2024, Plaintiffs filed a due process complaint against ELPS and IISD. Amended Complaint and Request for a Due Process Hearing, ECF 8-1, PageID.246. On December 13, 2024, IISD filed a Motion to Dismiss the DPC. December 13, 2024 IISD Motion to Dismiss, ECF 26-11, PageID.1068. IISD argued that it was not responsible for the identification, placement, or provision of FAPE to P.H. because it was not a LEA. *Id.* at PageID.1070-1074. In support of its Motion, IISD attached five opinions attached by MOAHR administrative law judges ("ALJs") serving as special education due process Hearing Officers, all of which blindly concluded that ISDs are not LEAs and therefore are not responsible for providing FAPE to students on IEPs. *Id.* at PageID.1073-1074, PageID.1077-1145.  On January 30, 2025 the Hearing Officer issued an order (the January 30 order) erroneously dismissing IISD as a party to the due process hearing based on incorrect legal arguments and wrongly analyzed prior caselaw cited by IISD in its Motion to Dismiss. January 30, 2025 Order Granting IISD's Mot. to Dismiss, ECF 8-2, PageID.286-292. The January 30 order wrongly held that Plaintiffs' only claims against IISD were related to its

8

supervisory responsibilities. *Id.* at PageID.290. However, in reaching that conclusion, the hearing office failed to consider Plaintiffs' actual claims related to the IISD's direct denial of P.H.'s FAPE. *Compare Id.* at PageID.286-292 Am. Compl., ECF 8-1, PageID.281-282 at ¶¶ 146-147. In doing so, the hearing officer failed to consider that the IISD *had* taken on direct responsibility for the education of a disabled student as multiple ISD faculty members provided related services to P.H. via their occupational therapist, Stacy Turke, and ASD Teacher Consultant, Kelsey Kujawa, both of whom also regularly participated in P.H.'s IEP meetings to develop *and deliver* the offer of FAPE that was formally extended by ELPS. Am. Compl., ECF 8-1, PageID.258 at ¶ 51, 71; *See also* Amended Complaint, ECF 8, PageID.237 at ¶ 179d, PageID.238 at ¶ 179h; Petitioners Offered and Admitted Exhibits 1-62, ECF 28-3, PageID.2356, PageID.2369, PageID.2374; December 17, 2025 Opinion Denying IISD's Motion to Dismiss, ECF 9, PageID.716.

Immediately prior to the IISD's dismissal, on January 10, 2025, Plaintiffs filed an Amended Due Process Complaint against ELPS and IISD, clarifying the issues for hearing. Amended Complaint, ECF 8, PageID.219 at ¶ 61, 62. The due process hearing took February 10-14, 2025, regarding Plaintiffs' claims against ELPS only. *Id.* at PageID.220 at ¶ 66. As demonstrated during the hearing by testimony and supporting exhibits, ELPS and the IISD repeatedly failed to implement P.H.'s IEP as written, failed to amend P.H.'s IEP to address his increasing disability-related behaviors and lack of progress, and, instead, repeatedly subjected to inappropriate uses of restraint and seclusion, all of which contributed to his denial of FAPE. *Id.* at PageID.230-241 at ¶¶ 123-197. On March 24, 2025, the Hearing Officer issued a final decision and order (the March 24 order) finding that ELPS had not violated IDEA. *Id.* at PageID.221 at ¶ 75. P.H. timely filed an appeal of that final order.

## STANDARD OF REVIEW

Summary judgment should be granted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment "in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

The standard of review for IDEA appeals in the Sixth Circuit is "modified de novo." *See Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir. 2005); *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001). Under this standard, this Court is required to conduct an independent review of the entire record, including the administrative record and any additional evidence requested to be heard by a party, and then make an independent decision based on a preponderance of the evidence. *Deal*, 392 F.3d at 849. In reaching its decision, the Court must also give due weight to the determinations made during the state administrative proceedings. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).

However, reviewing courts must not "simply adopt the state administrative findings without an independent re-examination of the evidence." *Doe ex rel. Doe v. Metro. Nashville Pub. Schs.*, 133 F.3d 384, 387 (6th Cir. 1998). "The modified de novo standard requires the Court to 'make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings.'" *B.S. v.*

10

*Rochester Comm. Schs.*, No. 5:06-cv-53 at *9 (W.D. Mich. Oct. 2, 2006), citing *McLaughlin v. Holt Pub. Schs. Bd.*, 320 F.3d 663, 669 (6th Cir. 2003) (quoting *Knable*, 238 F.3d at 764). Further, "[t]he amount of weight due to administrative findings depends on whether the finding is based on educational expertise." *McLaughlin*, 320 F.3d at 669. "Under the 'due weight' framework, '[l]ess weight is due to an agency's determinations on matters which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation.'" *Rochester*, No. 5:06-cv-53 at *9 (quoting *McLaughlin*, 320 F.3d at 669).

## ARGUMENT

### I. Plaintiffs' Appeal was Timely

#### A. *Plaintiffs filed their appeal within 90 days of a final decision*

Defendant asserts that Plaintiffs' appeal challenging the administrative decision on Plaintiffs' IDEA claim against IISD is untimely and therefore should be dismissed under Fed. R. Civ. P. 56 due to no genuine issue of material fact. Def. IISD's Brief in Support for Motion for Summary Judgment, ECF 33, PageID.3522. Plaintiffs filed a due process complaint ("DPC") against East Lansing Public Schools (ELPS) and IISD on December 2, 2024. Am. Compl., ECF 8-1, PageID.246. On December 13, 2024, IISD filed a Motion to Dismiss the DPC. ECF 26-11, PageID.1068. The Hearing Officer issued a decision granting IISD's motion to dismiss on January 30, 2025. January 30, 2025 Order Granting IISD's Mot. to Dismiss, ECF 8-2, PageID.292.. The ALJ issued a final opinion as to Plaintiffs' remaining claims against ELPS on March 24, 2025. March 24, 2025 Decision and Order, ECF 8-4.

Prior to the Hearing Officer's final opinion, Plaintiffs had not yet satisfied the IDEA's exhaustion requirement, and thus the statutory deadline to appeal had not yet begun to run. 20 U.S.C. § 1415(i)(2)(A), (B). Pursuant to 34 C.F.R. § 300.516:

11

**(a) General.** Any party aggrieved by the findings and decision made under §§ 300.507 through 300.513 or §§ 300.530 through 300.534 who does not have the right to an appeal under § 300.514(b), and any party aggrieved by the findings and decision under § 300.514(b), has the right to bring a civil action with respect to the due process complaint notice requesting a due process hearing under § 300.507 or §§ 300.530 through 300.532. The action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

**(b) Time limitation.** The party bringing the action shall have 90 days from the date of the decision of the hearing officer or, if applicable, the decision of the State review official, to file a civil action, or, if the State has an explicit time limitation for bringing civil actions under Part B of the Act, in the time allowed by that State law.

The Hearing Officer's final decision was issued on March 24, 2025. March 24, 2025 Decision and Order, ECF 8-4, PageID.340. Plaintiffs filed their appeal on June 20, 2025. See Compl., ECF 1, PageID.30. Thus, the instant civil action was timely filed as to Plaintiffs' IDEA claims against IISD. Plaintiffs' DPC against IISD and ELPS (filed as a single complaint) involved overlapping and joint action taken by both entities with respect to their failure to provide a FAPE to P.H. Am. Compl., ECF 8-1, PageID.247-278. Accordingly, Plaintiffs waited until the completion of the administrative process as to both entities before filing suit to avoid dismissal based on failure to exhaust and ripeness challenges. 20 U.S.C. § 1415(i)(2)(A).

In their Motion for Summary Judgment, Defendant makes much of the ALJ's docketing of Plaintiffs' claims.  ECF 33, PageID.3524-3529. Although the proceedings against ELPS and IISD were given two separate docket numbers, the allegations were based on the same underlying facts and harms and were alleged in a single complaint filed by Plaintiff. Am. Compl., ECF 8-1, PageID.246-285. *See also* Compl., ECF 29-13, PageID.3459-3481; ECF 29-14, PageID.3482-3508 As noted in Plaintiffs' Opposition to Defendant IISD's Motion to Dismiss, in *Fry v. Napoleon*

12

*Community Schools*, 197 L.Ed.2d 46, 137 S.Ct. 74 (2015), the "Supreme Court held that, when seeking relief in federal court, plaintiffs must first exhaust the administrative procedure when the 'gravamen' of their complaint alleges a violation of FAPE." Plaintiffs' Opp. to Def. IISD's Mot. to Dismiss, ECF 17, PageID.678 (citing *Fry* at 755).

Defendant also relies on Judge Jonker's decision in *L.G. o/b/o Kelloggsville Public Schools, et al.*, 1:24-cv-833 (W.D. Mich. March 16, 2026) (Jonker) (ECF 76), for why this court should find Plaintiffs were untimely in filing their appeal against IISD. In *L.G.*, Judge Jonker found that Plaintiff's appeal of her claims against the ISD were untimely because they were filed more than 90 days after the ALJ's decision dismissing the ISD from the due process proceedings. In doing so, Judge Jonker relied solely on the bifurcated docket numbers given by the ALJ to the respective defendants. *Id.* at *7-8. Even when claiming to address Petitioners' argument that the ALJ failed to provide a decision on the merits of whether P.H. was denied FAPE, the ALJ again referred to the individual docket numbers while simultaneously acknowledging that the gravamen of Plaintiff's complaint had not been addressed. *Id.* ("True, Plaintiff was claiming Kent ISD had colluded with KPS to deny G.G. placement at Pine Grove, and Pine Grove was still at issue in the case when the ALJ made her decision in the bifurcated case involving KPS. But the ALJ made the decision on KPS and Pine Grove on grounds that did not require consideration of any possible role by Kent ISD. Accordingly, there was no determination in the later KPS case that Kent ISD had, or had not, denied G.G. a FAPE." *Id.* at *8).

Contrary to IISD's claims and Judge Jonker's findings, Plaintiffs' due process complaint was not comprised of "distinct actions" or a "separate proceeding" against the respective defendants, nor was there only "one party" in the complaint against IISD. Def. IISD Brief in Support for Mot. for Summary Judgment, ECF 33, PageID.3522, 3524, 3526; *Kelloggsville*, 1:24-

13

cv-833, at *8. Rather, this was a single action against two parties, comprised of overlapping facts, witnesses, and documentation, alleging that both IISD and ELPS had denied P.H. FAPE. Am. Compl., ECF 8-1, PageID.246-285. Thus, as noted in Plaintiffs' Opposition to Defendant IISD's Motion to Dismiss, the ALJ's dismissal of IISD as a party to that due process complaint "did not resolve the overriding issue of whether P.H. had been provided a FAPE." ECF 17, PageID.678. Had Plaintiffs' claims against Defendant IISD proceeded, given the overlapping facts and joint action taken by Defendant IISD and ELPS, there would have been only one due process hearing and one decision issued following that hearing. In dismissing IISD prior to a due process hearing, the ALJ failed to address the gravamen of the Plaintiffs' complaint or consider any of the facts of the matter, despite later making numerous findings in the summary of the testimony related to the IISD's significant involvement. Therefore, Plaintiffs were correct in waiting until the ALJ's final order on March 24, 2025 before preparing and filing their appeal against both IISD and ELPS, as IDEA's exhaustion requirement had not been met. *See* 20 U.S.C. § 1415(i)(2)(A), (B).

B. *Facts exist to apply equitable tolling and allow Plaintiffs' claims to proceed*

As this court previously found in its Opinion Denying Defendant IISD's Motion to Dismiss:

> For over twenty years, the Supreme Court has encouraged lower federal courts to refrain from the "less than meticulous" labeling of time prescriptions and other preconditions to suit as limits on the courts' subject-matter jurisdiction….
>
> What sets jurisdictional rules apart is that they determine the very authority of a court to adjudicate a dispute. "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" Labeling a statutory condition on the invocation of a claim as jurisdictional can therefore have "harsh consequences," not least of which is foreclosing waiver of the condition if equity so demands. Consequently, the Court has prescribed that rules "not involving the timebound transfer of

14

adjudicatory authority from one Article III court to another" be interpreted as limits on jurisdiction only if they "clearly state[]" so.

Interpreting section 1415(i)(2)(B) using the "traditional tools of statutory construction makes mincemeat of the suggestion that Congress intended to "imbue[]" the provision "with jurisdictional consequences." The word "jurisdiction" appears nowhere in subsection (i)(2)(B). The provision simply directs a party "aggrieved by the findings and decision" in a due process hearing, 20 U.S.C. § 1415(i)(2)(A), to "bring[] the action" raising those grievances no later than ninety days "from the date of the decision of the hearing officer," id. § 1415(i)(2)(B). This "mundane" language "says only what every time bar, by definition, must: that after a certain time a claim is barred." Wilkins, 598 U.S. at 159 (cleaned up). That subsection (i)(2)(B) bears the heading "Limitation," the sort of label one would expect to encounter affixed to a normal time bar, reinforces the provision's ordinary meaning. Confirmation that subsection (i)(2)(B) is nonjurisdictional is supplied by the fact that a neighboring provision, titled "Jurisdiction of district courts," explicitly confers subject-matter jurisdiction without "condition[ing] the jurisdictional grant on the limitations period" or "otherwise link[ing] those separate provisions."

The text and immediate context of subsection (i)(2)(B) make it more than plausible that it imposes a "run-of-the-mill filing deadline." It follows that subsection (i)(2)(B) does not clearly impose a jurisdictional restriction. Consequently, subsection (i)(2)(B)'s time bar is an ordinary claim-processing rule, and its transgression does not oust a court of jurisdiction over an IDEA action.

ECF 23, PageID.711-713 (internal citations omitted). In his opinion dismissing the ISD in *Kelloggsville*, Judge Jonker similarly agreed that "the IDEA's exhaustion requirement is not a jurisdictional prerequisite under the IDEA." No. 1:24-cv-833 at *9.

Thus, even if this Court were to determine Plaintiffs' appeal against Defendant IISD is untimely, facts do exist here to apply equitable tolling and allow Plaintiffs' claims to proceed. As explained at length in Plaintiffs' Opposition to Defendant IISD's Motion to Dismiss, "because Michigan law—not Congress—establishes the applicable deadline for parties to file an action in federal court under the IDEA, the deadline cannot be considered jurisdictional." ECF 17,

15

PageID.680; *see also id*. at 678-680. As such, Plaintiffs are entitled to equitable tolling if they can show "(1) that they have diligently pursued their rights and (2) some extraordinary circumstances prevented timely filing." *Id.* at 681 (citing *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010)). As noted by Defendant IISD, courts examine five factors when considering whether or not to apply equitable tolling, "(1) plaintiff's lack of notice of the filing requirement; (2) plaintiff's lack of constructive knowledge of the filing requirement; (3) plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) plaintiff's reasonableness in remaining ignorant of the particular legal requirement." ECF 33, PageID.3527-2528 (citing *Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 738 (W.D. Mich. 2014)). Plaintiffs do not need to prove all five factors for the Court to apply equitable tolling. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). "Rather, '[t]he propriety of equitable tolling must necessarily be determined on a case-by-case basis.'" *Id.* at 561 (citing *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)).

Here, Plaintiffs' arguments from their Opposition to Defendant IISD's Motion to Dismiss remain applicable here, demonstrating Plaintiff's diligence in pursuing her rights:

> Plaintiffs diligently pursued their IDEA claims against IISD and waited to file the instant civil complaint until their claims against both IISD and ELPS were fully exhausted in order to comply with the IDEA's exhaustion requirement. As discussed at length above, Plaintiffs filed a single due process complaint alleging denial of FAPE by the joint action of IISD and ELPS, thus, as a result of the ALJ's bifurcation of the claims against IISD and ELPS, Plaintiffs were prevented from filing a civil action until the ALJ's second ruling on their remaining claims against ELPS. In this case, mechanical application of the 90-day limit to the ALJ's first ruling on IISD's motion to dismiss would contravene the IDEA's exhaustion requirement and would improperly penalize Plaintiffs for diligently seeking to comply with this statutory requirement. Were the court to interpret the 90-day deadline as non-jurisdictional and were Defendant to later raise an affirmative defense asserting

16

that Plaintiffs' civil action was untimely filed as to their IDEA claims, Plaintiffs would be entitled to equitable estoppel.

Plaintiffs' Opposition to Defendant IISD's Motion to Dismiss, ECF 17, PageID.681. The ALJ's case management decision to give Plaintiffs' single complaint multiple docket numbers is of little significance as the gravamen of the complaint was the same– whether the joint actions of Defendant IISD and ELPS denied P.H. FAPE. As such, Plaintiffs were prevented from filing any appeals prior to the ALJ's final May 15 order.

Plaintiffs' attorney was not negligent in waiting to appeal the ALJ's dismissal of IISD as a party to the due process proceedings. Rather, the decision to wait until the final May 15 order was a reasonable interpretation of the legal requirement. As noted in Plaintiffs' Opposition to Defendant IISD's Motion to Dismiss, had Plaintiffs filed their appeal sooner, recent court decisions clearly indicated that their appeal would have been dismissed based on failure to exhaust and ripeness challenges. ECF 17, PageID.677-678. In *McQueen v. Colorado Springs Sch. Dist. No. 11*, the Tenth Circuit found the plaintiffs' IDEA claim not yet exhausted where the plaintiffs had attempted to appeal a decision by the ALJ on a bifurcated issue. 488 F.3d 868, 874 (10th Cir. 2007). Similarly, in an August 2024 opinion authored by Judge Jonker, this Court dismissed an appeal against the Michigan Department of Education (MDE), finding that the claim was not ripe as the appeal against the LEA was still proceeding. *See T.M. v. Michigan Dep't. of Educ.*, No. 1:23-cv-762 (W.D. Mich. Aug. 20, 2024).

In its Motion for Summary Judgment, Defendant IISD relies on Judge Jonker's opinion distinguishing *McQueen* from the issue of whether Plaintiffs were reasonable in waiting to file their appeal until the proceedings against the District had resolved. Def. IISD's Brief in Support for Motion for Summary Judgment, ECF 33, PageID.3528-3529. However, the reasoning of both

17

Defendant IISD and Judge Jonker's Opinion are problematic, as despite any factual differences, the reasoning of the *McQueen* court is applicable here for the following reasons:

- As noted by the *McQueen* court, in the initial decision the state agency "addressed only an abstract question of law: 'whether the CDE guidelines for determining ESY services and the [District's] ESY policy violate the IDEA by limiting required ESY services to maintaining learned skills rather than developing new skills.'" *McQueen*, 488 F.3d at 874. Relatedly here, the ALJ's initial decision addressed only an abstract question of law: whether the ISD was an appropriate party to a due process proceeding, not whether P.H. was actually denied FAPE by the IISD and/or ELPS. January 30, 2025 Order Granting IISD's Mot. to Dismiss, ECF 8-2, PageID.287.

- In *McQueen*, the student's single due process complaint "sought determinations that he was entitled to additional ESY services during the summer of 2003 and that his parents should be reimbursed for expenses incurred in paying for those services." *McQueen*, 488 F.3d at 874. Similarly here, Plaintiffs' single due process complaint sought determinations that P.H. was denied FAPE and was entitled to compensatory education and related services and that his parents should be reimbursed for expenses incurred due to that denial of FAPE. Am. Compl., ECF 8-1, PageID.282-283.

- Accordingly, in *McQueen*, the Court found that "still to be decided was whether [Joshua's IEP] as implemented during the school year or extended school year provided a [FAPE] . . . the IDEA does not provide for judicial review of such an interlocutory determination before resolution of the entire administrative complaint." *McQueen*, 488 F.3d at 874 (internal citations omitted). Similarly here, still to be decided was whether P.H. had been denied FAPE and IDEA does not provide for judicial review of such an interlocutory

18

determination (here, whether IISD was an appropriate party to the due process complaint) before resolution of the entire administrative complaint.

As discussed at length above, Plaintiffs' claims against IISD were not a distinct proceeding that were then "fully resolved upon entry of the January 30, 2025 Order Def. IISD's Brief in Support for Motion for Summary Judgment, ECF 33, PageID.3529. *See also Kelloggsville*, 1:24-cv-833, at *10. Rather, at the time IISD was dismissed as a party, the overriding issue of whether P.H. had received FAPE was still to be resolved and any interlocutory appeal regarding the legal question of the IISD's appropriateness as a party would have been dismissed for due to ripeness challenges.

**II.     IISD should not have been dismissed from the due process proceeding**

Defendant IISD argues that, based on the Sixth Circuit's recent decision in *Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025), as well as *D.L., et al v. Michigan Department of Education*, No. 1:22-cv-00838 (W.D. Mich. Sep. 24, 2025), it cannot be held liable for IDEA violations because it is a supervisory entity, like MDE. Def. IISD's Brief in Support for Motion for Summary Judgment, ECF 33, PageID.3529-3531. Both its argument and reliance on *Y.A. and D.L.* are misplaced. As Defendant IISD acknowledges, both of those cases looked specifically at MDE's role as the state educational agency, responsible for overseeing special education throughout the state. *Id.* at PageID.3531. However, unlike MDE's passive supervisory role, under both federal and state law, ISDs can, and often do, have a direct role in providing and ensuring FAPE to students within the constituent districts. That is the case here, where Plaintiffs' claims against IISD focus on its role as an LEA, providing direct services to P.H. and playing an integral role in the development of his IEP. *See* Pet.'s Brief in Resp. to Mot. for Summary Disp., ECF 36, PageID.3587-3588.

The IDEA is clear that its provisions apply to ISDs:

19

**Applicability of this part to State and local agencies.**

(a) *States.* This part applies to each State that receives payments under Part B of the Act, as defined in § 300.4.

(b) *Public agencies within the State.* The provisions of this part—

    (1) Apply to all political subdivisions of the State that are involved in the education of children with disabilities, including:

        (i) The State educational agency (SEA).
        (ii) Local educational agencies (LEAs), educational service agencies (ESAs), and public charter schools that are not otherwise included as LEAs or ESAs and are not a school of an LEA or ESA.

        (iii) Other State agencies and schools (such as Departments of Mental Health and Welfare and State schools for children with deafness or children with blindness).

        (iv) State and local juvenile and adult correctional facilities; and

    (2) Are binding on each public agency in the State that provides special education and related services to children with disabilities, regardless of whether that agency is receiving funds under Part B of the Act.

34 C.F.R. § 300.2 (emphasis in original). Further, Michigan Administrative Rules for Special Education (MARSE) provides for reimbursement for special education programs and services in compliance with the MARSE and the ISD Plan approved by MDE. MARSE R. 340.1809. Among an ISD's responsibilities are maintaining a "record of…the special education programs or services in which the student with a disability is participating…," M.C.L. 380.1711(1)(f), having "the authority to place in appropriate special education programs or services a student with a disability for whom a constituent district is required to provide special education programs or services…," M.C.L. 380.1711(1)(g), and operating "the special education programs or services or contract for

20

the delivery of special education programs or services by local school district boards, in accordance with section 1702, as if a local school district under section 1751," M.C.L. 380.1711(1)(i). Per MDE's Guidance for the Development of Intermediate School District Plan for the Delivery of Special Education Programs and Services in Catamaran, ISDs must "develop and maintain an ISD Plan for the Delivery of Special Education Programs and Services" that specifically includes diagnostic and related services, such as occupational therapy or teacher consultant services, that are "provided to eligible students as part of a free appropriate public education (FAPE)." ECF 8-7, PageID.430, 434. Thus, through the structure of ISDs, in conjunction with other applicable state and federal statutes and implementing regulations, Michigan has explicitly placed the burden of IDEA compliance upon both individual school districts and ISDs when they voluntarily assume responsibility for a student's FAPE. Applying that standard here, under the applicable laws and regulations, IISD was a proper party to Plaintiffs' initial due process complaint.

Contrary to IISDs previous claims, P.H.'s educational records make clear that P.H. was part of IISD's resident district and he was participating within the IISD's programs and services. At all relevant times, P.H. attended ELPS' Marble Elementary School, which is directly within IISD's jurisdiction. Am. Compl., ECF 8-1, PageID.254 at ¶ 26. More importantly, as demonstrated by P.H.'s IEPs, at all relevant times he received occupational therapy from IISD's occupational therapist (OT) and ASD teacher consultant services from the IISD's ASD teacher consultant. March 24, 2025 Decision and Order, ECF 8-4, PageID.388 at ¶¶ 290, 293-294, 296, and 299, PageID.389 at ¶ 308, PageID.390 at ¶ 325, PageID.391 at ¶¶ 329-330, 332, 337. Within those respective roles, IISD was in the room, guiding the IEP team decisions and then providing direct services to P.H., thereby voluntarily accepting responsibility for the provision of FAPE to P.H. *Id.*

21

In prematurely dismissing IISD as a party to the due process complaint, the ALJ repeatedly made general, sweeping statements about IISD not being responsible without ever applying the facts. January 30, 2025 Order Granting IISD's Mot. to Dismiss, ECF 8-2, PageID.289-292. The ALJ's decision to dismiss the IISD also relied on the idea that the complaint's only allegation against the IISD was failure to train. *Id.* at 290. However, as noted in the Amended Complaint, and as later acknowledged in the ALJ's March 24, 2025 final order, the IISD *was* providing direct services to P.H. via the OT and the ASD teacher consultant. Those facts could have led to a preliminary finding that the IISD was an LEA in the way that the ALJ's decision to dismiss (and IDEA) articulates "an ISD can be an LEA but only if they have 'administrative control or direction of or … perform a service function for … schools …'" *Id.* (citing 34 C.F.R. § 303.23). Instead, the ALJ focused solely on structural issues that informed his decision to dismiss. Not once in his order dismissing IISD did the ALJ make any reference to IISD's provision of services to P.H. via their OT and ASD teacher consultant, or the other repeated interactions P.H. was having with the OT. *Id.* at PageID.286-292. Yet, as clearly demonstrated by the ALJ's March 24, 2025 Decision and Order, the ALJ made numerous findings detailing IISD's responsibility to provide P.H. FAPE in his summary of the IISD providers' testimony. March 24, 2025 Decision and Order, ECF 8-4, PageID.388-392. Both the OT and the ASD teacher consultant played a consistent and direct role in developing his offer of FAPE via his IEP and progress monitoring. *Id.* at PageID.388 at ¶¶ 295, 297-298, PageID.389 at ¶¶ 304, 307, PageID.390 at ¶¶ 314-315, 320-321, PageID.391 at ¶¶ 329-330, 332. Both staff also testified at length regarding their direct involvement with and observation of P.H. as part of their service delivery. *Id.* at PageID.388-392. Thus, given the level of the occupational therapist's direct involvement in P.H.'s development and receipt of FAPE, it is clear

he was participating in one of the IISD's programs and services – the provision of occupational therapy.

Contrary to Defendant IISD's claim that, "responsibility for the provision of FAPE cannot exist in two places at the same time," the law and the record in this matter that it can and it does. Def. IISD's Brief in Support for Motion for Summary Judgment, ECF 33, PageID.3533. As this Court previously noted in Judge Jarbou's Opinion Denying Defendant IISD's Motion to Dismiss, "The Sixth Circuit has suggested its agreement with the view that 'either or both' a state educational agency and a local educational agency 'may be held liable for the failure to provide a free appropriate public education.' If both a state and a local educational agency can be proper defendants in the same IDEA lawsuit, then the same may hold true for educational service agencies…." ECF 23, PageID.717. Here, in addition to both the OT and ASD teacher consultant's participation in the IEP meetings and provision of services, the OT's active role in regularly supervising P.H. during his shortened school days, even more clearly demonstrates that Defendants ELPS and IISD were working in conjunction to develop, provide, and implement P.H.'s offer of FAPE. February 10, 2025 Hearing Transcript, ECF 27-13, PageID.2002 at Tr 60 at l 17-24, PageID.2004 at Tr 68 at l 7-9. Due to the ALJ's premature dismissal of IISD from the due process proceedings, the actual extent of the collaboration is unknown, but MCL 380.1751(b)[1] clearly indicates that at least some contract was in place allowing the ISD to provide those occupational

---

[1] The board of a local school district shall provide special education programs and services designed to meet the individual needs of each student with a disability in its district on record under section 1711 for whom an appropriate educational or training program can be provided in accordance with the intermediate school district special education plan, in either of the following ways or a combination thereof . . . (b) Contract with its intermediate school board, another intermediate school board, another local school district board, an adjacent school district board in a bordering state, the Michigan schools for the deaf and blind, the department of health and human services, or any combination thereof, for delivery of the special education programs or services, or with an agency approved by the superintendent of public instruction for delivery of an ancillary professional special education service. The intermediate school district of which the local school district is constituent shall be a party to each contract even if the intermediate school district does not participate in the delivery of the program or services. M.C.L. 380.1751(1)(b).

therapy and teacher consultant services. This collaboration between the two entities thus makes them both responsible for P.H.'s FAPE.

Here, because IISD was in some respect responsible for providing P.H. with FAPE, IISD's alleged shortcomings in providing that education are reviewable by this Court. Defendant IISD is not just a "supervisory entity," but is a local educational agency responsible for the provision of FAPE to P.H. The ALJ failed to consider IISD's active involvement in P.H.'s FAPE instead dismissing them simply based on prior, inapplicable decisions with no further consideration of the merits.  Defendant IISD played an active and material role in the development and delivery of P.H.'s offer of FAPE, even if that offer technically came from ELPS personnel, located in an ELPS building. As such, for the reasons outlined above, IISD is a proper party to a due process complaint and Defendant IISD's Motion for Summary Judgment should be denied.

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons set forth above, as well as those outlined in Plaintiffs' Brief in Support of Motion for Summary Judgment, ECF 36, Plaintiffs request that this Court issue an order denying Defendant IISD summary judgment under Federal Rule of Civil Procedure 56, granting Plaintiffs' Motion for Summary Judgment, and granting Plaintiffs the following relief:

A. Order Defendants, jointly and severally, to provide P.H. with a compensatory education and related services bank of 400 hours, with no expiration date, for academic and related services, including but not limited to academic tutoring, speech and language therapy, occupational therapy, social-emotional support, and behavioral therapy, to be delivered by providers of Plaintiffs' choosing at their normal and customary rates;

24

B.  Order Defendants, jointly and severally, to provide financing for a 3-6 month ABA therapy program, local to P.H., to address his ASD-related behavioral and academic needs, to be delivered by providers of Plaintiffs' choosing at their normal and customary rates;

C.  Order Defendants, jointly and severally, to reimburse Plaintiffs for tutoring evaluation and services for P.H. during the 2023-2024 school year in the amount of $1,300;

D.  Order Defendants, jointly and severally, to reimburse Plaintiffs for lost income, moving expenses, and increased household expenses necessitated by Defendants' failure to provide P.H. with FAPE;

E.  Find that Plaintiffs are the prevailing party;

F.  Order attorney fees to be awarded to Plaintiffs as the prevailing party; and

G.  Order any such further relief as the Court deems just and appropriate.

Respectfully submitted,
ABDNOUR WEIKER LLP

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour (P78203)
Megan Mitchell (P87312)
Jacquelyn Kmetz (P83575)
325 E. Grand River Ave., Ste. 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
megan@education-rights.com
jacquelyn@education-rights.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the limits set forth in LCivR 7.2(b)(i). Further, based on the Word Count function of Microsoft Word for Mac word processing software, applied

25

to include all include headings, footnotes, citations and quotations, but not to include the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, I certify that this Brief contains 7,468 words.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I filed this document by use of this Court's ECF system, which will serve copies to the Clerk of Courts and all counsel of record.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour