**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| CHRISTI HENKE and RICH HENKE o/b/o P.H., | Case No. 1:25-cv-680 |
| Plaintiff/Appellants/Petitioners, | Hon. Hala Y. Jarbou |
| vs. | |
| EAST LANSING PUBLIC SCHOOLS and INGHAM INTERMEDIATE SCHOOL DISTRICT, | **DEFENDANT INGHAM INTERMEDIATE SCHOOL DISTRICT'S BRIEF IN REPLY TO PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT INGHAM INTERMEDIATE SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants/Appellees/Respondents. | |

Elizabeth K. Abdnour (P78203)
Megan N. Mitchell (P87213)
Jacquelyn Kmetz (P83575)
ABDNOUR WEIKER LLP
*Attorneys for Plaintiffs*
325 E. Grand River Ave., Suite 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
megan@education-rights.com
jacquelyn@education-rights.com

Jordan M. Bullinger (P72441)
CLARK HILL PLC
*Attorneys for Defendant Ingham ISD*
200 Ottawa Avenue NW, Suite 500
Grand Rapids, MI 49503
(616) 608-1146
jbullinger@clarkhill.com

Erin H. Walz (P55484)
THRUN LAW FIRM, P.C.
*Attorneys for Defendant*
*East Lansing Public Schools*
2900 West Rd., Suite 400
P.O. Box 2575
East Lansing, MI 48826-2575
(517) 374-8830
ewalz@thrunlaw.com

## TABLE OF CONTENTS

I.    STATEMENT OF FACTS..................................................................................................... 1

    A.    Plaintiff's IDEA Claim is Untimely .............................................................. 1

        1.    Plaintiffs' Claims Must be Dismissed Because they are Untimely ................... 1

        2.    Equitable Tolling is Inapplicable to Plaintiffs' Claims...................................... 4

    B.    Ingham ISD was not the Entity Responsible for Providing P.H. with FAPE............... 5

III.    CONCLUSION ............................................................................................................... 10

CLARKHILL\19511\1007360\288158810.v2-6/8/26

# INDEX OF AUTHORITIES

**Cases**

*D.L., et al. v. Michigan Department of Education*, Case No. 22-cv-838 (W.D. Mich., Sept. 24, 2025) ..................................................................................................................... 5, 6

*Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754–55 (2017) ........................................................ 1

*Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 739 (W.D. Mich. 2014) ......................................... 4

*L.G. obo G.G. v Kelloggsville Public Schools,* 1:24-cv-833, at *5 (W.D. Mich. March 16, 2026) .................................................................................................................... 3, 4, 5, 7, 8, 9

*McQueen v. Colorado Springs School District No. 11*, 488 F.3d 868, 870 (10th Cir. 2007)......... 4

*Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.,* 615 F.3d 622, 625 (6th Cir. 2010) .......................................................................................................................... 6

**Statutes**

MCL 380.1702 ............................................................................................................................ 8

MCL 380.1711(1) ..................................................................................................................... 8, 9

MCL 380.1711(1)(a), (f).......................................................................................................... 5, 6

MCL 380.1711(1)(i) ................................................................................................................... 8

MCL 380.1751 ........................................................................................................................... 7

**Other Authorities**

20 U.S.C. § 1414(b)-(d) ............................................................................................................. 6

20 U.S.C. § 1415(i) .................................................................................................................... 6

20 U.S.C. § 1415(i)(2)(A), (B) ............................................................................................... 1, 2

20 U.S.C. § 1415(o) ................................................................................................................... 3

MARSE R. 340.1831 ........................................................................................................... 5, 6, 8, 9

MARSE R. 340.1839 ........................................................................................................... 5, 6, 8, 9

## I.    STATEMENT OF FACTS

NOW COMES Defendant, Ingham Intermediate School District, by and through its attorneys, Clark Hill PLC, and hereby submits this Brief in Reply to Plaintiff's Brief in Response to Defendant Ingham Intermediate School District's Motion for Summary Judgment:

### A.    Plaintiff's IDEA Claim is Untimely

Defendant relies on the relevant underlying facts discussed within its Brief in Support of its Motion for Summary Judgment. ECF No. 33, PageID.3523-3524. Procedurally, Administrative Law Judge St. John ("ALJ St. John" or "Hearing Officer"), dismissed Ingham Intermediate School District ("Ingham ISD" or "IISD") from the due process proceeding against it on January 30, 2025. Plaintiffs did not file this civil action naming Ingham ISD until June 20, 2025, 141 days after the January 30, 2025, dismissal order and 51 days past the April 30, 2025, deadline. 20 U.S.C. § 1415(i)(2)(A), (B).

### 1.  *Plaintiffs' Claims Must be Dismissed Because they are Untimely*

On January 30, 2025, ALJ St. John granted the IISD's motion to dismiss because the ISD was not the entity responsible for identifying, evaluating, placing, or providing FAPE to P.H. ECF No. 8-2, PageID.286-293. The Order stated Plaintiffs "may seek judicial review by filing an action in a court of competent jurisdiction within 90 days *of the date of this order*." ECF No. 8-2, PageID.292 (emphasis added).  As of January 30, 2025, Plaintiffs were "aggrieved by the findings and decision of the hearing officer," and Section 1415(i)(2)(B) allowed 90 days "from the date of the decision of the hearing officer to bring such an action." 20 U.S.C. § 1415(i)(2)(A), (B).

Exhaustion under the IDEA is a prerequisite to bringing a civil action. *Fry* holds that a plaintiff must exhaust IDEA administrative procedures before suing where the gravamen of the claim is denial of FAPE. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754–55 (2017). Plaintiffs claim that prior to the Hearing Officer's final opinion being issued, they had not yet satisfied the

exhaustion requirement. ECF No. 39, PageID.3656-3657. Plaintiffs attempt to reference the date of the final decision of the underlying hearing, March 24, 2025, to assert they timely filed an appeal, but provide no precedent or statutory support for their assertion that the final decision of the underlying hearing against the last remaining original respondent starts the 90 day clock for an appeal, rather than the Order dismissing the IISD from the hearing. Plaintiffs openly acknowledge waiting until the completion of the administrative process against all underlying Respondents before filing suit in order to avoid dismissal, however, the completion of the administrative process overall is not the standard for determining whether exhaustion took place, but rather, the party who is "aggrieved by the findings and decision of the hearing officer," is allowed 90 days *from the date of the decision of the hearing officer* to bring such an action." 20 U.S.C. § 1415(i)(2)(A), (B)(emphasis added); *see also* ECF No. 39, PageID.3656-3657.

The Order of Dismissal resolved, with prejudice, the only question relevant to the IISD: Whether Ingham ISD was the entity legally responsible for P.H.'s FAPE. ALJ St. John dismissed Plaintiff's claim against Ingham ISD on January 30, 2025. ECF No. 8-2, PageID.286-293. This determination left no other matters related to the IISD to be decided. The final decision of the ALJ on March 24, 2025, as against East Lansing Public Schools, does not revive jurisdiction over the IISD or reopen its dismissal with prejudice. Similarly, Plaintiffs contend that the allegations were based on the same underlying facts, however, the proceedings were treated as entirely separate between each underlying Respondent. ECF No. 39, PageID.3657. The proceedings received separate docket numbers and the IISD received a separate order dismissing them entirely, starting Plaintiff's 90-day clock as established under 20 U.S.C. § 1415(i)(2)(A),(B).

Plaintiffs argue that the Judge in *Kelloggsville* solely relied upon separate docket numbers to determine whether the claims against the ISD in that matter were timely, but this assertion is

CLARKHILL\19511\1007360\288158810.v2-6/8/26

untrue. Judge Jonker emphasized that the IDEA concerns the "core guarantee of a 'free appropriate public education' to children in public schools with certain physical or intellectual disabilities." *L.G. obo G.G. v Kelloggsville Public Schools,* 1:24-cv-833, at *5 (W.D. Mich. March 16, 2026) (Jonker). Judge Jonker also highlighted that in the underlying hearing, the ALJ not only gave each case a separate docket number, but set and decided each case on a separate track where the proceedings against the ISD reached a conclusion at the time the ALJ granted the ISD's motion to dismiss. *Kelloggsville*, 1:24-cv-833, at *7-8 (W.D. Mich. March 16, 2026) (Jonker). The IDEA permits separate hearings for this reason under 20 U.S.C. § 1415(o). Similarly to Plaintiffs here, plaintiffs in *Kelloggsville* also claimed that both the local and the ISD denied the Student FAPE. Though Plaintiffs maintain that the gravamen of their complaint has not yet been addressed, it has. ALJ St. John determined that the IISD should be dismissed because it was not statutorily required to provide FAPE to P.H. ECF No. 8-2, PageID.292. Simply because Plaintiffs are dissatisfied with the outcome does not mean that the gravamen of their complaint was not addressed.

Plaintiffs in *Kelloggsville* endured a similar fate. In *Kelloggsville*, while there was no analysis as to whether the underlying ISD had, or had not denied the student a FAPE, this analysis was unnecessary to perform because proceedings as to that issue concluded when the underlying ISD was dismissed because the ALJ determined the ISD was not responsible for providing FAPE. *Kelloggsville*, 1:24-cv-833, at *8 (W.D. Mich. March 16, 2026) (Jonker). Judge Jonker explained that at the moment of the ISD's dismissal, L.G.'s claims against the ISD were exhausted and the 90-day clock to appeal started. *Id.* This same analysis applies here. Plaintiffs assert that there were not separate proceedings against the IISD and East Lansing Public Schools ("ELPS"), but the record blatantly demonstrates otherwise. ECF No. 39, PageID.3658. ALJ St. John's Order Granting the IISD's Motion to Dismiss only lists one Respondent, Ingham Intermediate School

3

District. ECF No. 8-2, PageID.286. The January 30, 2025, Order does not list ELPS, or any other initially named Respondent. Plaintiffs' contention that exhaustion did not occur until the final hearing involving an initially named respondent was resolved is unsupported and rejected by law.

### 2.   *Equitable Tolling is Inapplicable to Plaintiffs' Claims*

Plaintiffs ask for equitable tolling to remedy their mistake. ECF No. 39, PageID.3659-3660. *Kelloggsville* held that a plaintiff's decision not to raise an appeal within the 90-day deadline does not justify any sort of equitable relief. *Kelloggsville*, 1:24-cv-833, at \*10 (W.D. Mich. March 16, 2026) (Jonker). Plaintiffs argue that the facts of the underlying case indicate that equitable tolling is appropriate. Equitable tolling is narrowly applied, granted thinly, and does not extend to "a garden variety claim of excusable neglect." *Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 737–38 (W.D. Mich. 2014). (internal citations omitted). Plaintiffs declare that the five factors to consider when determining whether tolling applies lean in their favor by stating that Plaintiffs were diligent in pursuing their rights by citing to their own opposition to the District's Motion to Dismiss and alleging that they were unable to file an appeal prior to the conclusion of the underlying hearing. ECF No. 39, PageID.3662. Plaintiffs assert that the facts of *McQueen v. Colorado Springs School District No. 11*, 488 F.3d 868, 870 (10th Cir. 2007), similarly apply here; ECF No. 39, PageID.3663. *Kelloggsville* analyzed this same claim thoroughly. Judge Jonker was not persuaded. *Kelloggsville*, 1:24-cv-833, at \*10 (W.D. Mich. March 16, 2026) (Jonker).

Judge Jonker explained that in *McQueen*, there were bifurcated issues, not parties. *Id.* The underlying ALJ in *Kelloggsville* resolved the case against the ISD in its entirety with the order dismissing it. *Id.* Here, similarly to *Kelloggsville*, ALJ St. John separated the initially named Respondents into separate proceedings, ultimately resulting in the IISD's dismissal. ECF No. 8-2, PageID.292. The Order dismissing the IISD plainly stated that Plaintiffs "may seek judicial review by filing an action in a court of competent jurisdiction *within 90 days of the date of this order*."

4

ECF No. 8-2, PageID.292. On the caption of the Order of Dismissal was one Respondent: the IISD. ALJ St. John did not just bifurcate issues, he separated the proceedings against Respondents entirely. Plaintiffs were able to file an appeal prior to the conclusion of the 90-day period when the IISD was dismissed, but simply chose not to. Plaintiffs intentionally waited to appeal in an effort to bundle Ingham ISD and ELPS into one suit after the conclusion of its case against ELPS on March 24, 2025. It is prudent to note that mistake does not warrant equitable relief. Strategic missteps do not qualify as extraordinary circumstances. *Kelloggsville*, 1:24-cv-833, at *10-11 (W.D. Mich. March 16, 2026) (Jonker).

**B.      Ingham ISD was not the Entity Responsible for Providing P.H. with FAPE**

Plaintiffs argue that *Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025) and *D.L., et al. v. Michigan Department of Education*, Case No. 22-cv-838 (W.D. Mich., Sept. 24, 2025) are inapplicable here due to the Michigan Department of Education's ("MDE") role as oversight of special education throughout Michigan. This assertion is also incorrect.

In *Y.A. by Alzandani*, the Sixth Circuit affirmed the IISD's position that local school districts, rather than supervisory entities, are responsible for providing services to students with disabilities. *Y.A. by Alzandani*, 137 F.4th at 870. The Court further emphasized the separation of local school district's by highlighting that they are separate political entities due to their responsibilities to their local electorates by operating local schools "largely as they see fit[.]" *Id.* The Court analyzed the plaintiffs' argument and explicitly rejected the premise that the MDE was responsible for a school's failures holding that "oversight alone does not transform a local school into a state school." *Id.* This logic follows here with the IISD. The IISD is highly supervisory in nature. MCL 380.1711(1)(a), (f); MARSE R. 340.1831; MARSE R. 340.1839. Similarly analyzed in *D.L., et al.*, the plaintiffs asserted that the MDE was liable under the IDEA, ADA and § 504 for the purported violations of those Acts by local school districts. In *D.L., et al. v. Michigan*

5

*Department of Education*, the Court held that an action under 20 U.S.C. § 1415(i) (permitting a civil action from an adverse due process decision) "would have to allege and establish something more than IDEA noncompliance on the part of the local education agency." Case No. 22-cv-838 (W.D. Mich., Sept. 24, 2025) (ECF No. 103; PageID. 2773). "Otherwise, the state would become liable for every failure by the local or intermediate school district in particular IDEA cases. That would effectively impose exactly the kind of *respondeat superior* liability on the State that the Sixth Circuit has been keen to avoid in *Hamtramck*." *Id.*

Section 1711 of the Revised School Code confirms that intermediate school districts have supervisory, planning, recordkeeping, and monitoring responsibilities: they "develop[]" an ISD-wide plan, "maintain[] a record of all students who are eligible," "investigat[e] complaints," and "implement monitoring procedures" developed by the MDE. MCL 380.1711(1)(a), (f); MARSE R. 340.1831; MARSE R. 340.1839. These duties are separate and distinct from ELPS's legally obligated responsibility to identify, evaluate, place, and directly provide FAPE to a student in a local district classroom. Plaintiffs state that MDE has a passive, supervisory role whereas ISDs *can* have a direct role in providing and ensuring FAPE to students within LEAs. ECF No. 39, PageID.3664. However, the facts here do not support Plaintiffs' assertions regarding the same.

Responsibility for providing FAPE is not as free flowing as Plaintiffs attempt to make it appear. The offer of FAPE provided by the local school district creates an individual educational program ("IEP") addressing each disabled child's special needs. 20 U.S.C. § 1414(b)-(d). *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.,* 615 F.3d 622, 625 (6th Cir. 2010). Here, the IISD was never once responsible for providing FAPE, as ELPS was the entity responsible for providing an offer of FAPE to the Student and implementing the Student's IEP. The IISD merely provided support was needed and oversaw the offer of FAPE set forth by ELPS, as all ISDs

6

do. Plaintiffs attempt to shoestring together miscellaneous citations regarding an ISD's responsibilities fail to successfully demonstrate that the IISD was tasked with providing FAPE to P.H. While the core of the IDEA is cooperation between parents and schools, the vehicle for collaboration is the IEP process, which ELPS was solely in charge of. Plaintiffs flatly allege that P.H. was part of the resident district and that P.H. "attended ELPS' Marble Elementary School, which is directly within IISD's jurisdiction." ECF No. 39, PageID.3666. The law does not necessitate the conclusion that simply because an elementary school operated by a local school district is geographically located within an ISD that the ISD is now responsible for the offer of FAPE received. Plaintiffs also allege that IISD staff members' participation in IEP meetings and supervision of P.H. show that ELPS and the IISD were working in conjunction to provide and implement P.H.'s offer of FAPE. ECF No. 39, PageID.3666. The law does not support this.

Michigan law emphatically states that "The *board of a local school district* shall provide special education programs and services designed to develop the maximum potential of each student with a disability in its district of record." MCL 380.1751 (emphasis added). In order to provide those services, the local district either operates the special education program or service, or contracts with other entities, which may include the ISD as it did here. *Id*. Plaintiffs openly admit that the actual extent of the collaboration between the ELPS and the IISD is unknown, yet allege that the IISD played a direct role in providing P.H. with FAPE. ECF No. 39, PageID.3668. Plaintiffs also maintain that because "at least some contract" was in place for the IISD to provide services to P.H. that that collaboration makes ELPS and the IISD responsible for the Student's FAPE. ECF No. 39, PageID.3669. The court in *Kelloggsville* examines similar unsuccessful arguments related to the obligation to provide FAPE. *Kelloggsville*, 1:24-cv-833, at \*11 (W.D. Mich. March 16, 2026) (Jonker). If Plaintiffs' logic is accepted, *any organization* that supplies

7

service providers to ELPS would be equally responsible for providing FAPE to P.H. As explored under *Kelloggsville*, this is not what the IDEA concludes, nor intends. *Kelloggsville*, 1:24-cv-833, at \*11-12 (W.D. Mich. March 16, 2026) (Jonker). MCL 380.1751 tasks the local district of residence with providing special education programs and services to eligible students, either directly or by contracting for those services. The ISD's role is to supervise, coordinate, and monitor. This includes developing the ISD plan, maintaining records, investigating complaints, assisting with general supervision and compliance, and ensuring member districts are meeting their FAPE obligations. MCL 380.1711(1); MARSE R. 340.1831; MARSE R. 340.1839. *Kelloggsville* analyzed that:

> The ISD has the statutory responsibility to "develop, establish, and continually evaluate and modify in cooperation with its constituent districts, a plan for special education that provides for the delivery of special education programs and services designed to meet the individual needs of each student with a disability." *Id.* at § 370.1711(1)(a). **But the local school districts are the entities that actually implement this plan and actually provide special education services, either on their own or under contract with an ISD**. *Id* at §§ 380.1711(i); 1751(b). [*Kelloggsville*, 1:24-cv-833, at \*12 (W.D. Mich. March 16, 2026) (Jonker)(emphasis added).]

While there are limited instances in which an ISD can operate special education programs or services or contract for the delivery of services under MCL 380.1711(1)(i), this takes place in minimal circumstances explicitly stated under Section 1702 where "the local school district is unable to provide such programs or services due to a financial emergency" and the State Board directs the ISD to assume direct provision of services. MCL 380.1702; MCL 380.1711(1)(i). Plaintiffs are required to set forth specific facts to satisfy the above-mentioned authorities, but they do not. Plaintiffs do not establish any facts whatsoever that ELPS was under a financial emergency, that the State Board ordered Ingham ISD to assume direct FAPE responsibility, or that Ingham ISD became P.H.'s operating district of placement. Simply put, while "an ISD may have some

8

supervisory authority and responsibility for their assigned LEA local school districts, the entity with administrative control and direction and that is performing the service function for special education students is the **local school district itself**." ECF No. 8-2, PageID.291(emphasis added).

Plaintiffs assert that the ALJ made numerous findings detailing the IISD's responsibility to provide P.H. FAPE by referencing the involvement of the occupational therapist and the ASD teacher consultant. ECF No. 39, PageID.3667. This grossly mischaracterizes ALJ St. John's findings. The ALJ made many distinctions when analyzing both staff members' involvement. The ALJ found that the occupational therapist works for the IISD, but has been assigned to ELPS since 1994. ECF No. 8-4, PageID.388. The ASD teacher consultant was similarly employed by the IISD, but was also assigned to ELPS and another school district. ECF No. 8-4, PageID.390. Plaintiff's attempt to emphasize the involvement of two staff members by discussing their involvement with and observation of P.H. However, assisting with general supervision and compliance, contracting for services with ELPS, and ensuring member districts are meeting their FAPE obligations is part of the IISD's role. MCL 380.1711(1); MARSE R. 340.1831; MARSE R. 340.1839. This does not necessitate that the IISD automatically assumes the same role and obligations to provide FAPE as ELPS. Plaintiffs further allege that the IISD is a local education agency responsible for the provision of FAPE to P.H., but then admit that the offer of FAPE was provided by ELPS personnel and P.H. attended school at an ELPS building. ECF No. 39, PageID.3669. If we adopt Plaintiff's argument as true, it will undo the ISD's established role in the three-tier educational system in Michigan that reflects the ISD does not, in the usual course, directly provide special education services. *Kelloggsville*, 1:24-cv-833, at *11-12 (W.D. Mich. March 16, 2026) (Jonker). Plaintiff's analysis further undermines the well-established authority that the local school district is the entity

9

charged with implementing the student's educational program, rather than the ISD. ECF 20-1, MDE Memo, March 6, 2025.

### III.    CONCLUSION

As to Ingham ISD, Plaintiffs' appeal is untimely under Section 1415(i)(2)(B) and controlling Sixth Circuit precedent. Plaintiffs did not allege that Ingham ISD, as opposed to ELPS, is the entity responsible for providing P.H. with a FAPE. For these reasons, and for those stated in Ingham ISD's brief, summary judgment in favor of the IISD on Count I is required.

Respectfully submitted,

CLARK HILL PLC

Dated: June 8, 2026                         By: _____
                                                 Jordan M. Bullinger (P72441)
                                                 *Attorney for Petitioner*

### CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the type-volume limitations of L.Civ. R. 7.2(b)(ii). The motion and brief were prepared in Microsoft Word 365, using a Times New Roman 12 pt. font. Microsoft Word 365 has a function that calculates the number of words in a document. According to that function, there are 3624 words in the motion and brief.

### CERTIFICATE OF SERVICE

The undersigned certifies that he electronically filed the foregoing document with the clerk using the Court's Electronic Filing System on June 8, 2026, which will send notification of such filing to all parties and/or attorneys of record; and a courtesy copy was mailed to Judge Jarbou.

|   X    | U.S. Mail  | _____ | Facsimile       |
|--------|------------|----------|-----------------|
|   X    | E-Filing   | _____ | Hand Delivery   |
| _____ | E-Mail     | _____ | Federal Express |

CLARK HILL PLC

Dated: June 8, 2026                         By: _____
                                                 Jordan M. Bullinger (P72441)
                                                 *Attorney for Petitioner*

CLARKHILL\19511\1007360\288158810.v2-6/8/26